## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, Derivatively on Behalf of FIRSTENERGY CORP., <br><br> Plaintiff, <br><br> v. <br><br> CHARLES E. JONES, MICHAEL J. ANDERSON, STEVEN J. DEMETRIOU, JULIA L. JOHNSON, DONALD T. MISHEFF, THOMAS N. MITCHELL, JAMES F. O'NEIL, III, CHRISTOPHER D. PAPPAS, SANDRA PIANALTO, LUIS A. REYES, LESLIE M. TURNER, PAUL T. ADDISON, JERRY SUE THORNTON, WILLIAM T. COTTLE, GEORGE M. SMART, JUSTIN BILTZ, MICHAEL J. DOWLING, JAMES F. PEARSON, STEVEN E. STRAH, K. JON TAYLOR, ROBERT REFFNER, and EBONY YEBOAH-AMANKWAH, <br><br> Defendants, <br><br> and <br><br> FIRSTENERGY CORP., <br><br> Nominal Defendant. | Case No.: 2:20-cv-04813-ALM-CMV <br><br><br><br><br> ORAL ARGUMENT REQUESTED |

*Captions continued on next page.*

## MOTION OF THE INSTITUTIONAL INVESTORS TO CONSOLIDATE RELATED DERIVATIVE ACTIONS, APPOINT CO-LEAD PLAINTIFFS, AND APPOINT CO-LEAD COUNSEL

| | |
|---|---|
| ELECTRICAL WORKERS PENSION FUND, LOCAL 103, I.B.E.W., | Case No. 2:20-cv-5128-SDM-EPD |
| Plaintiff, | |
| v. | |
| MICHAEL J. ANDERSON, STEVEN J. DEMETRIOU, JULIA L. JOHNSON, CHARLES E. JONES, DONALD T. MISHEFF, THOMAS N. MITCHELL, JAMES F. O'NEIL, III, CHRISTOPHER D. PAPPAS, SANDRA PIANALTO, LUIS A. REYES, LESLIE M. TURNER, JAMES F. PEARSON, STEVEN E. STRAH, and K. JON TAYLOR, | |
| Defendants, | |
| and | |
| FIRSTENERGY CORP., | |
| Nominal Defendant. | |

Plaintiffs Employees Retirement System of the City of St. Louis ("St. Louis Employees") and Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Local 103" and, together with St. Louis Employees, the "Institutional Investors") hereby move this Court for entry of an Order: (i) consolidating the Derivative Actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)");[1] (ii) appointing the Institutional Investors as Co-Lead Plaintiffs; (iii) appointing Saxena White P.A. ("Saxena White") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Co-Lead Counsel; (iv) appointing the Law Offices of John C. Camillus LLC ("Camillus") as Liaison Counsel; and (v) granting such other and further relief as the Court may deem just and proper.

Pursuant to Rule 42(a), the Derivative Actions should be consolidated because they involve substantially identical questions of law and fact and consolidation will promote judicial efficiency and avoid duplication and inconsistent rulings. The Court also should appoint lead plaintiffs and lead counsel to ensure the orderly and efficient prosecution of the consolidated action.

The Institutional Investors submit that they are best suited to lead the consolidated action and should be appointed Co-Lead Plaintiffs. The Institutional Investors oversaw the investigation and preparation of comprehensive pleadings that are more likely to survive Defendants' expected motions to dismiss. The Institutional Investors are also sophisticated, well-resourced, institutional investors with a large financial stake in FirstEnergy Corp. and experience leading significant stockholder representative actions—including derivative actions.

---

[1] The Derivative Actions are *Bloom, v. Anderson*, No. 2:20-cv-04534-ALM-KAJ (S.D. Ohio), *Stavely v. Anderson*, No. 2:20-cv-04598-EAS-CMV (S.D. Ohio.), *Employees Retirement System of the City of St. Louis v. Jones*, No. 2:20-cv-04813-ALM-CMV (S.D. Ohio), *Beck v. Anderson*, No. 2:20-cv-05020-SDM-EPD (S.D. Ohio), *Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Anderson*, No. 2:20-cv-05128-SDM-EPD (S.D. Ohio), and *Sarnelli v. Anderson*, No. 2:20-cv-05192-SDM-KAJ (S.D. Ohio).

The Institutional Investors also submit that their chosen counsel should be appointed to lead the consolidated action.  The Institutional Investors and their chosen counsel have demonstrated their ability to secure significant monetary recoveries in major shareholder cases. The Institutional Investors' counsel are an experienced, diverse, and highly-qualified group of lawyers with decades of experience prosecuting major cases in Ohio.  For the reasons set forth in the accompanying Memorandum of Law, the Institutional Investors' choice of counsel, Saxena White and Bernstein Litowitz, stand out from the pack in terms of their unparalleled experience and success prosecuting the most significant shareholder litigations in history.  Here, consistent with their track records, they have prepared the pleadings with the greatest chance of success.  The Institutional Investors' proposed Liaison Counsel, Camillus, is also well-qualified to serve in this action.  FirstEnergy and its public shareholders will be best served by the Institutional Investors' and their counsel's appointment to lead the consolidated action.

The Institutional Investors hereby respectfully request oral argument on the instant motion. The Institutional Investors believe that oral argument may assist the Court in adjudicating the instant motion.

This Motion is supported by the accompanying Memorandum of Law, the Declaration of John C. Camillus and exhibits annexed thereto, the pleadings and other filings herein, and such other written or oral argument as may be permitted by the Court.

WHEREFORE, the Institutional Investors respectfully request that the Court: (i) consolidate the Derivative Actions; (ii) appoint the Institutional Investors as Co-Lead Plaintiffs; (iii) appoint Saxena White and Bernstein Litowitz as Co-Lead Counsel; (iv) appoint Camillus as Liaison Counsel; (v) grant such other and further relief as the Court may deem just and proper.

Dated: October 2, 2020

Respectfully Submitted,

*/s/ John C. Camillus*
**LAW OFFICES OF JOHN C. CAMILLUS LLC**
John C. Camillus
P.O. Box 141410
Columbus, OH 43214
Phone: (614) 992-1000

*Liaison Counsel for Employees Retirement System of the City of St. Louis and Electrical Workers Pension Fund, Local 103, I.B.E.W.*

**SAXENA WHITE P.A.**
Maya Saxena (pro hac vice forthcoming)
Lester R. Hooker (pro hac vice forthcoming)
Dianne M. Pitre (pro hac vice forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33432
Phone: (561) 394-3399

- and -

**SAXENA WHITE P.A.**
Thomas Curry (pro hac vice forthcoming)
1000 N. West Street
Suite 1200, Office 1265
Wilmington, DE 19801
Phone: (302) 485-0480

*Counsel for Employees Retirement System of the City of St. Louis and Proposed Co-Lead Counsel*

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
Hannah Ross (pro hac vice forthcoming)
Jeroen van Kwawegen (pro hac vice forthcoming)
Alla Zayenchik (pro hac vice forthcoming)
Rebecca N. Kim (pro hac vice forthcoming)
Matthew Traylor (pro hac vice forthcoming)
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 554-1400

3

*Counsel for Electrical Workers Pension Fund, Local 103, I.B.E.W. and Proposed Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2020, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to all attorneys

on record.

<u>      */s/ John C. Camillus*          </u>
John C. Camillus

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, Derivatively on Behalf of FIRSTENERGY CORP., <br><br> Plaintiff, <br><br> v. <br><br> CHARLES E. JONES, MICHAEL J. ANDERSON, STEVEN J. DEMETRIOU, JULIA L. JOHNSON, DONALD T. MISHEFF, THOMAS N. MITCHELL, JAMES F. O'NEIL, III, CHRISTOPHER D. PAPPAS, SANDRA PIANALTO, LUIS A. REYES, LESLIE M. TURNER, PAUL T. ADDISON, JERRY SUE THORNTON, WILLIAM T. COTTLE, GEORGE M. SMART, JUSTIN BILTZ, MICHAEL J. DOWLING, JAMES F. PEARSON, STEVEN E. STRAH, K. JON TAYLOR, ROBERT REFFNER, and EBONY YEBOAH-AMANKWAH, <br><br> Defendants, <br><br> and <br><br> FIRSTENERGY CORP., <br><br> Nominal Defendant. | Case No.: 2:20-cv-04813-ALM-CMV |

*Captions continued on next page.*

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE**
**INSTITUTIONAL INVESTORS TO CONSOLIDATE RELATED DERIVATIVE**
**ACTIONS, APPOINT CO-LEAD PLAINTIFFS, AND APPOINT CO-LEAD COUNSEL**

| | |
|---|---|
| ELECTRICAL WORKERS PENSION FUND, LOCAL 103, I.B.E.W., | Case No. 2:20-cv-5128-SDM-EPD |
| Plaintiff, | |
| v. | |
| MICHAEL J. ANDERSON, STEVEN J. DEMETRIOU, JULIA L. JOHNSON, CHARLES E. JONES, DONALD T. MISHEFF, THOMAS N. MITCHELL, JAMES F. O'NEIL, III, CHRISTOPHER D. PAPPAS, SANDRA PIANALTO, LUIS A. REYES, LESLIE M. TURNER, JAMES F. PEARSON, STEVEN E. STRAH, and K. JON TAYLOR, | |
| Defendants, | |
| and | |
| FIRSTENERGY CORP., | |
| Nominal Defendant. | |

# **<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL HISTORY ..................................................... 5

III.   ARGUMENT ........................................................................................................ 9

      A.    The Derivative Actions Should Be Consolidated. ................................... 9

      B.    The Court Should Appoint The Institutional Investors And Their Counsel
            To Lead The Consolidated Action. ...................................................... 10

            1.    The Institutional Investors' Pleadings Are Superior To Those Filed
                  By The Individual Plaintiffs, Demonstrating Their Superior Vigor. ....... 11

            2.    The Institutional Investors Have A Significant Economic Stake In
                  FirstEnergy And Are Best Suited To Serve As Co-Lead Plaintiffs. ........ 13

            3.    The Institutional Investors' Counsel Are Best Suited To Serve As
                  Co-Lead Counsel. ................................................................................. 14

IV.   CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advey v. Celotex, Corp.*,
   962 F.2d 1177 (6th Cir. 1992) ...................................................................................9

*In re Diebold Sec. Litig.*,
   No. 5:06 CV 0233, 2006 WL 3023033 (N.D. Ohio Oct. 23, 2006)........................10

*Flynn ex. Rel Miller Energy Res., Inc. v. Miller Energy Res.*,
   No. 3:11-CV-412, 2012 WL 2499363 (E.D. Tenn. June 26, 2012) ............................9, 10, 14

*Hirt v. U.S. Timberlands Service Co., LLC*,
   No. CIV.A. 19575, 2002 WL 1558342 (Del. Ch. July, 3, 2002)............................11

*Horn v. Raines*,
   227 F.R.D. 1 (D.D.C. 2005)..........................................................................10, 14

*Kubiak v. Barbas*,
   No. 3:11-CV-141, 2011 WL 2443715 (S.D. Ohio June 14, 2011).........................19

*Lewis v. ACB Bus. Servs., Inc.*,
   135 F.3d 389 (6th Cir. 1998) ....................................................................................9

*Nayyar v. Mt. Carmel Health Sys.*,
   No. 2:12-CV-00189, 2012 WL 3929830 (S.D. Ohio Sept. 10, 2012) .....................9

*Rice v. Javitch Block & Rathbone, LLP*,
   No. 2:04-cv-00951, 2012 WL 506833 (S.D. Ohio Feb. 15, 2012) ...........................9

*In re Wendy's Co.*,
   No. 1:16-CV-1153, 2018 WL 6605394 (S.D. Ohio Dec. 17, 2018)......................2, 10, 11, 18

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
   No. 20-MD-2924, 2020 U.S. Dist. LEXIS 81742 (S.D. Fla. May 8, 2020) ...........18

OTHER AUTHORITIES

Fed. R. Civ. P. 23(g) ......................................................................................................2, 11

Fed. R. Civ. P. 42(a) ....................................................................................................1, 2, 9

Plaintiffs Employees Retirement System of the City of St. Louis ("St. Louis Employees") and Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Local 103" and, together with St. Louis Employees, the "Institutional Investors") seek an Order: (i) consolidating the above-captioned related cases pursuant to Fed. R. Civ. P. 42(a); (ii) appointing the Institutional Investors as Co-Lead Plaintiffs; (iii) appointing Saxena White P.A. ("Saxena White") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Co-Lead Counsel; (iv) appointing the Law Offices of John C. Camillus LLC ("Camillus") as Liaison Counsel; and (v) granting such other and further relief as the Court may deem just and proper.[1]

## I.   **INTRODUCTION**

Beginning in 2016, the corporate leaders of FirstEnergy Corp. ("FirstEnergy" or the "Company") orchestrated a massive bribery, racketeering, and pay-to-play scheme in which FirstEnergy illegally funneled over $60 million to public officials, including Speaker of the Ohio House of Representatives Larry Householder ("Householder"), in exchange for favorable legislation. The scheme was revealed on July 17, 2020, when the U.S. Attorney for the Southern District of Ohio: (i) filed a criminal complaint against two FirstEnergy Lobbyists, Householder, and members of Householder's staff; and (ii) revealed the existence of a continuing investigation into misconduct by FirstEnergy and its corporate leaders. FirstEnergy now faces massive civil and criminal liability and has suffered immense reputational harm that threatens its ability to successfully do business going forward.

---

[1] The Institutional Investors are simultaneously moving for consolidation, appointment as Co-Lead Plaintiff, and appointment of Co-Lead Counsel and Liaison Counsel in *Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Anderson, et al.*, No. 2:20-cv-05128-SDM-EPD (S.D. Ohio) (the "Local 103 Action"), a shareholder derivative action filed by Local 103 that involves substantially identical questions of law and fact as this one.

In the aftermath of these disclosures, St. Louis Employees, Local 103, and four individual retail investors each filed derivative actions in this Court seeking to hold the Company's corporate leaders liable for the harm they have caused to the Company (collectively, the "Derivative Actions" or the "Actions"). Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"), the Derivative Actions should be consolidated because they involve substantially identical questions of law and fact and consolidation will promote judicial efficiency and avoid duplication and inconsistent rulings. The Court also should appoint lead plaintiffs and lead counsel to ensure the orderly and efficient prosecution of the consolidated action.

The Institutional Investors submit that they are best suited to lead the consolidated action and should be appointed Co-Lead Plaintiffs. Courts in this District look to several factors when considering which plaintiffs and counsel to appoint to a leadership role, including: (i) the quality of the pleadings; (ii) the vigorousness of the prosecution; (iii) the plaintiffs' economic stake in the litigation; and (iv) the competence of counsel. *In re Wendy's Co.*, No. 1:16-CV-1153, 2018 WL 6605394, at *2 (S.D. Ohio Dec. 17, 2018) (citing Fed. R. Civ. P. 23(g)). Each of these factors weighs in favor of appointing the Institutional Investors and their chosen counsel.

The Institutional Investors oversaw the investigation and preparation of pleadings that are more comprehensive than those filed by the individual plaintiffs and reflect the experience and sophistication they and their counsel bring to the table.[2] The investigations included extensive consultation with experts in the fields of energy policy and corporate governance, and the

---

[2] The Verified Shareholder Derivative Complaint (Dkt. 1) in this Action ("Compl. 1") and the Verified Shareholder Derivative Complaint (Dkt. 1) in the Local 103 Action ("Compl. 2", and together with Compl. 1, the "Complaints").

2

Complaints include significant additional allegations of misconduct and injury. Thus, the first two factors strongly support the Institutional Investors' appointment.

The Institutional Investors are also sophisticated, well-resourced, institutional investors with a large financial stake in FirstEnergy and experience leading significant stockholder representative actions—including derivative actions. For example, St. Louis Employees recently served as co-lead plaintiff in a consolidated derivative action on behalf of Pilgrim's Pride Corp. and achieved a recovery of $42.5 million. Local 103 served as lead plaintiff in a securities class action in this District against Chemed Corp. and recovered $6 million on behalf of investors, and as co-lead plaintiff in a securities class action against Autoliv, Inc. and recovered $22.5 million for investors. All of the other plaintiffs in the Derivative Actions, by contrast, appear to be individual retail investors lacking similar resources and experience.

The Institutional Investors also submit that their chosen counsel should be appointed to lead the consolidated action. The Institutional Investors have no reason to doubt the competence of the smaller firms representing the individual plaintiffs in the other Derivative Actions. The Institutional Investors' counsel, however, stand out from the pack in terms of their unparalleled experience and success prosecuting the most significant shareholder litigations in history.[3] Last year, Saxena White achieved a $320 million settlement of a shareholder derivative action involving Wells Fargo & Co., including a $240 million cash payment representing the largest insurer-funded monetary component of any shareholder derivative settlement in history. *See In re Wells Fargo & Co. S'holder Deriv. Litig.,* No. 4:16-cv-05541-JST (N.D. Cal.). Bernstein Litowitz achieved a $90 million recovery plus landmark governance reforms for Fox News in

---

[3] *See* Declaration of John C. Camillus in Support of the Institutional Investors' Motion to Consolidate Related Derivative Actions, Appoint Co-Lead Plaintiffs, and Appoint Co-Lead Counsel ("Camillus Decl."), Exs. A-B.

connection with the sexual harassment and racial discrimination scandal that engulfed that company in recent years. *City of Monroe Employees' Ret. Sys. v. Murdoch, et al.*, No. 2017-0833-AGB (Del. Ch.). Bernstein Litowitz also has unique experience in matters involving disclosure of corporate political spending, having pursued an action against Qualcomm, Inc. that resulted in a new, comprehensive political disclosure policy that became the standard for corporate transparency. In addition, Bernstein Litowitz has expertise prosecuting shareholder claims involving FirstEnergy, having achieved in 2004 a $25 million recovery and significant corporate governance changes in a derivative action involving the failure of FirstEnergy's Board of Directors to address the Company's inadequate and decaying equipment, maintain emergency control systems, and establish adequate financial reporting. *See In re FirstEnergy S'holder Deriv. Litig.*, No. 5:03-cv-01826-JG (N.D. Ohio). Bernstein Litowitz also recently recovered $389.6 million for investors in a securities class action against Cobalt Energy Corp. arising from illegal payments to government officials in Angola to secure preferential treatment for access to oil and gas wells.

Also, last year, Saxena White and Bernstein Litowitz, working together as co-lead counsel, secured a $53 million recovery for New Senior Investment Group, representing a recovery of over 10% of the Company's market capitalization. The Institutional Investors' chosen Liaison Counsel, John Camillus, has significant experience in this Court and is well-suited to serve as Liaison Counsel in the consolidated action. *See* Camillus Decl., Ex. C.

The Institutional Investors and their chosen counsel have demonstrated their ability to secure significant monetary recoveries in major shareholder cases. Institutional Investors' counsel are an experienced, diverse, and highly-qualified group of lawyers with decades of experience prosecuting major cases in Ohio. Here, consistent with their track records, they have prepared the

pleadings with the greatest chance of success. FirstEnergy and its public shareholders will be best served by the Institutional Investors' and their counsel's appointment to lead the consolidated action.

## II.  FACTUAL AND PROCEDURAL HISTORY

FirstEnergy is a utility company incorporated in Ohio that generates, transmits, and distributes electricity, serving approximately 6 million customers in Ohio, Pennsylvania, West Virginia, Maryland, New Jersey, and New York. Compl. 1 ¶53; Compl. 2 ¶56. In 2016, FirstEnergy was facing major financial and operational challenges, due in large part to two of its aging nuclear power plants. Compl. 1 ¶¶2, 58; Compl. 2 ¶¶4, 74. Because the demand for nuclear energy had diminished and the costs of maintaining these assets had increased, continuing to operate the nuclear plants had become financially unsustainable for the Company. *Id.* FirstEnergy thus announced, on an earnings conference call on February 22, 2017, that it was seeking a "legislative solution" for these troubled plants. Compl. 1 ¶¶2, 59; Compl. 2 ¶¶4, 75.

FirstEnergy's Board of Directors (the "Board") failed to act on the many red flags alerting them to the largest political bribery scandal in the history of Ohio. Indeed, FirstEnergy was one of the top political spenders among its utility company peers, and FirstEnergy investors and corporate watchdogs had become alarmed in recent years by the Company's lobbying activities, with shareholders making formal proposals in FirstEnergy's 2015, 2016, and 2017 annual proxy statements for greater transparency and oversight over lobbying and political spending. Compl. 1 ¶¶62-72; Compl. 2 ¶¶61-70. The Company's Board recommended against the proposals each year. Compl. 1 ¶¶70, 72; Compl. 2 ¶¶65, 68, 70.

Against this backdrop, and even though the Board was on notice that political spending was a major concern for shareholders, the Company embarked on a political bribery scheme of stunning proportions. In January 2017, Ohio state representative Larry Householder flew on

FirstEnergy's corporate jet to attend the presidential inauguration, and two months later, FirstEnergy and its subsidiaries made the first of a series of $250,000 quarterly payments to a 501(c)(4) entity called "Generation Now" that Householder secretly controlled and had established just weeks earlier. Compl. 1 ¶¶3, 79; Compl. 2 ¶¶4, 80. According to a Householder co-conspirator and fellow lobbyist, Generation Now's structure allowed "donors" to "give as much or more to the (c)(4) and nobody would ever know." Compl. 1 ¶79; *see also* Compl. 2 ¶97 ("a (c)(4) is a secret."). The donations by FirstEnergy and its subsidiaries, which eventually totaled $60 million, were used to support Householder's bid for Speaker of the Ohio House (and for Householder's own benefit, including paying off credit card debt and costs related to his Florida residence), to support other House candidates that FirstEnergy and Householder believed would ultimately vote for Householder's Speakership candidacy, and to secure passage of the energy bill known as House Bill 6 ("HB 6"). Compl. 1 ¶¶4, 46; Compl. 2 ¶¶8, 79, 81, 100. HB 6 provided a massive $1.3 billion bailout for FirstEnergy's uncompetitive power plants funded by monthly ratepayer surcharges, as well as other one-sided legislative amendments, including provisions that removed incentives to build renewable energy projects, canceled statewide energy conservation efforts, and allowed the Company to upcharge Ohio customers for their energy. Compl. 1 ¶5; Compl. 2 ¶5. HB 6, which was passed in July 2019, was widely criticized as "the worst energy bill of the 21st century," and FirstEnergy spent $38 million to defeat a statewide ballot referendum which sought to overturn the bill. Compl. 1 ¶5; Compl. 2 ¶6.

The bribery scheme was exposed on July 17, 2020, when the U.S. Attorney for the Southern District of Ohio filed an 80-page criminal complaint and affidavit (the "Criminal Complaint") against Householder and his co-conspirators, which included FirstEnergy lobbyists. Compl. 1 ¶6; Compl. 2 ¶7. U.S. Attorney David DeVillers stated that "*[t]his is likely the largest bribery, money*

*laundering scheme ever perpetrated against the people of the state of Ohio. This was bribery, plain and simple. This was quid pro quo*." *Id.* The FBI Special Agent in charge of the investigation described the scheme as a "shameful betrayal" and a "*sophisticated criminal conspiracy to enact legislation on behalf of Corporation A*"—widely acknowledged as FirstEnergy itself. Compl. 1 ¶6; Compl. 2 ¶8. While DeVillers noted that "no one from [FirstEnergy] has *of yet* been charged," he added that "there are going to be a lot of busy FBI agents in the Southern District of Ohio . . . *this is by no means over*." *Id.* The Criminal Complaint meticulously catalogued evidence directly implicating FirstEnergy, including at least 84 calls between Householder and FirstEnergy CEO and Director, Defendant Charles E. Jones. Compl. 1 ¶¶7, 109; Compl. 2 ¶¶84, 104.

As the U.S. Attorney's Office continues its investigation, other regulatory bodies have also taken action. On September 8, 2020, the Office of the Ohio Consumers' Counsel ("OCC")—a statewide legal representative for Ohio's residential consumers in matters related to their investor-owned electric, natural gas, telephone, and water utilities—filed a motion before the Public Utilities Commission of Ohio ("PUCO") asking PUCO to open an independent management audit and investigation of FirstEnergy. Compl. 2 ¶121. On September 15, 2020, reports surfaced that the U.S. Securities and Exchange Commission ("SEC") had launched an investigation into FirstEnergy and the bribery scandal. Compl. 2 ¶122. And on September 23, 2020, Ohio Attorney General David Yost filed a civil racketeering lawsuit against FirstEnergy, Householder, and others involved in the scheme. Compl. 2 ¶123; *see Ohio ex rel. Yost v. FirstEnergy, Corp., et al.,* No. 20 CV 006281 (Ohio Comm. Pleas).

As a result of Defendants' misconduct, including the Board's failure to conduct oversight over the Company's operations, FirstEnergy has suffered and will continue to suffer massive

damages and now faces a deeply uncertain future. Indeed, immediately after the Criminal Complaint was publicly announced, FirstEnergy's stock price plummeted by 45%, wiping out billions of dollars in shareholder value, and the Company is now a defendant in multiple securities class actions in this District.[4] Compl. 1 ¶¶12, 135; Compl. 2 ¶¶10, 112. The Company has received subpoenas from the U.S. Attorney's Office of the Southern District of Ohio, and civil and criminal penalties, fines and legal liabilities are likely in the future. Compl. 1 ¶¶147, 148; Compl. 2 ¶¶119-23. Securities analysts have downgraded the Company's stock and have estimated future fines and penalties to the Company in the $500 million range. Compl. 1 ¶150; Compl. 2 ¶124.

Presently pending in this District[5] are the following six related Derivative Actions[6]:

| Case Name | Case Number | Date Filed |
|---|---|---|
| *Bloom v. Anderson, et al.* | 2:20-cv-04534-ALM-KAJ | September 1, 2020 |
| *Stavely v. Anderson, et al.* | 2:20-cv-04598-EAS-CMV | September 3, 2020 |
| *Employees Retirement System of the City of St. Louis v. Jones, et al.* | 2:20-cv-04813-ALM-CMV | September 9, 2020 |
| *Beck v. Anderson, et al.* | 2:20-cv-05020-SDM-EPD | September 24, 2020 |
| *Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Anderson, et al.* | 2:20-cv-05128-SDM-EPD | September 30, 2020 |
| *Sarnelli v. Anderson et al.* | 2:20-cv-05192-SDM-KAJ | October 2, 2020 |

---

[4] *Owens v. FirstEnergy Corp. et. al.*, No. 2:20-cv-03785-ALM-KAJ (S.D. Ohio); *Frand v. FirstEnergy Corp. et al*, No. 2:20-cv-04287-JLG-EPD (S.D. Ohio).

[5] A federal shareholder derivative action was also filed in the U.S. District Court for the Northern District of Ohio, *Miller v. Anderson, et. al.,* 5:20-cv-01743 (N.D. Ohio). In addition, two shareholder derivative actions have been filed in Ohio state court: *Gendrich v. Anderson, et. al.*, CV-2020-07-2107 (Summit Cnty.), and *Sloan v. Anderson, et al.,* CV-2020-08-2161 (Summit Cnty.).

[6] Both the lowest-numbered federal securities class action and the lowest-numbered shareholder derivative action arising from the bribery and corruption scheme are pending before this Court. *See Owens v. FirstEnergy Corp.*, 2:20-cv-03785-ALM (S.D. Ohio); *Bloom v. Anderson, et al.*, No. 2:20-cv-04534-ALM-KAJ (S.D. Ohio). The shareholder derivative action filed by St. Louis Employees is also pending before this Court. *See Employees Retirement System of the City of St. Louis v. Jones*, 2:20-cv-04813-ALM-CMV (S.D. Ohio). The remaining Derivative Actions that are not presently before the Court each indicated that they are related to either the *Owens* case, the *Bloom* case, or both.

Plaintiffs in the Derivative Actions allege similar causes of action on behalf of FirstEnergy against mostly the same Defendants (certain of the Company's current and former officers and directors), and each Action arises out of the same nucleus of operative facts. Therefore, the Institutional Investors seek to consolidate the Actions. As set forth below, the Actions cannot progress further in an orderly or efficient fashion until a leadership structure identifying the Lead Plaintiff(s) and Lead Counsel who have the authority to prosecute the Actions is established.

## III.   ARGUMENT

### A.    The Derivative Actions Should Be Consolidated.

The power to consolidate related actions falls within the Court's "broad discretionary authority . . . especially where consolidation will prevent wasteful duplication of time, effort, and expense." *Flynn ex. Rel Miller Energy Res., Inc. v. Miller Energy Res.*, No. 3:11-CV-412, 2012 WL 2499363, at *2 (E.D. Tenn. June 26, 2012) (citation omitted). The Court has discretion under Rule 42(a) to consolidate related cases which involve common questions of fact and law to avoid unnecessary costs or delay. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 412 (6th Cir. 1998). *See also Nayyar v. Mt. Carmel Health Sys.*, No. 2:12-CV-00189, 2012 WL 3929830, at *4 (S.D. Ohio Sept. 10, 2012) (stating that Rule 42(a) "grants a federal court the authority to 'join for hearing or trial any or all matters at issue in the actions' if the actions before the court have a common question of law or fact") (*citing Cantrell v. GAF Corp.*, 999 F.2d 1007, 1010-11 (6th Cir. 1993)). "The underlying objective of consolidation is to administer the court's business with expedition and economy while providing justice to the parties." *Rice v. Javitch Block & Rathbone, LLP*, No. 2:04-cv-00951, 2012 WL 506833, at *3 (S.D. Ohio Feb. 15, 2012) (citing *Advey v. Celotex, Corp.*, 962 F.2d 1177, 1181 (6th Cir. 1992)).

Courts in this Circuit and elsewhere have indeed recognized that consolidation of similar shareholder actions benefits the Court and litigating parties by "avoid[ing] unnecessary expenditure of the parties' and the Court's resources on duplicative efforts." *Flynn*, 2012 WL 2499363, at *2 (consolidating derivative actions where "the costs of defending multiple actions may do serious harm to the corporation on whose behalf the litigation is brought."); *In re Diebold Sec. Litig.*, No. 5:06 CV 0233, 2006 WL 3023033, at *4 (N.D. Ohio Oct. 23, 2006) (consolidating derivative actions). "[W]hen consolidation is appropriate, the Court has the discretion to order the consolidation of subsequently-filed or transferred cases that allege similar facts as those alleged in the current shareholder derivative suits." *Horn v. Raines*, 227 F.R.D. 1, 2 (D.D.C. 2005) (ordering consolidation of all related derivative actions).

Here, consolidating the Actions will certainly promote judicial efficiency. The Actions present substantially identical issues and concerning alleged breaches of fiduciary duty by FirstEnergy's directors and certain senior officers. As a result, each individual case will involve essentially the same motion practice, discovery, and trial considerations. In addition, no "substantial rights" of any party will be prejudiced by consolidation. In fact, a speedy discovery process, consistent adjudications, and cooperative discovery efforts will enhance all parties' rights to a fair and equitable adjudication of their dispute. Accordingly, the Actions should be consolidated.

### B.    The Court Should Appoint The Institutional Investors And Their Counsel To Lead The Consolidated Action.

It is well established that the Court may appoint a leadership structure to coordinate the prosecution of complex shareholder litigation. *In re Wendy's Co.*, 2018 WL 6605394, at *2 (citing *In re Bendectin Litig.*, 857 F.2d 290, 297 (6th Cir. 1988)). The decision regarding the appointment

of a leadership structure is within the Court's discretion. *Id.* (*citing In re Gas Natural Inc.,* No. 1:13-cv-02805, 2014 WL 12591684, at *1 (N.D. Ohio Mar. 7, 2014)).

"[F]actors that courts traditionally consider when appointing leadership determinations in shareholder derivative actions include: [(i)] the quality of the pleadings; (ii) the vigorousness of the prosecution; (iii) the shareholder plaintiffs that have the largest economic stake in the litigation; and (iv) the competence of counsel." *In re Wendy's Co.*, 2018 WL 6605394, at *2 (citing Fed. R. Civ. P. 23(g)); *see also Hirt v. U.S. Timberlands Service Co., LLC*, No. CIV.A. 19575, 2002 WL 1558342, at *2 (Del. Ch. July, 3, 2002) (describing similar factors considered in ruling on a motion to designate a lead plaintiff or to appoint lead counsel). Additionally, courts have also recognized that no special weight or status will be accorded to a derivative lawsuit "simply by virtue of having been filed earlier than any other pending action." *Id.* (citing *TWC Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, C.A. No. 18336-CC, 2000 WL 1654504, at *3 (Del. Ch. Oct. 17, 2000). At bottom, the Court seeks to appoint the leadership structure that "will best serve the interest of the plaintiffs." *Id.*

Here, as detailed below, all relevant factors support the appointment of the Institutional Investors and their counsel.

### 1. The Institutional Investors' Pleadings Are Superior To Those Filed By The Individual Plaintiffs, Demonstrating Their Superior Vigor.

Here, the first two factors—"the quality of pleadings" and "the vigorousness of the prosecution"—weigh heavily in favor of the Institutional Investors. The Institutional Investors have filed thorough, well-researched Complaints on behalf of the Company, reflecting substantial investigation into the facts of the case, including the review of, *inter alia*, the Company's financial statements, press releases, SEC filings, investor communications, the Criminal Complaint, media articles and other publications, and all other recently filed actions against FirstEnergy, as well as

11

consultation with numerous experts in the fields of energy policy, environmental science, and corporate governance. The Institutional Investors' Complaints are significantly more thorough and comprehensive than the complaints filed by the individual plaintiffs in the related Actions. The Institutional Investors' Complaints include the core allegations covered in the individual plaintiffs' pleadings (albeit in greater detail), but also include significant additional allegations of misconduct by FirstEnergy's corporate leaders and injury to the Company. Among other things:

- The Institutional Investors' Complaints identify an earlier shareholder proposal included in the Company's 2015 annual proxy highlighting the director knowledge of longstanding lobbying issues and lack of oversight at issue in the current case. Specifically, the proposal and Form PX14A6N filed by shareholder Green Century Capital Management sought greater transparency regarding political contributions, including disclosure of policy and dollar amounts. Compl. 1 ¶¶63-65; Compl. 2 ¶¶62-64.

- While the Bloom, Stavely, and Beck complaints identify the shareholder proposal of the Nathan Cummings Foundation ("Nathan Cummings") included in the Company's 2017 annual proxy, the Institutional Investors' Complaints further identify a shareholder proposal included in the Company's 2016 annual proxy, as well as a Form PX14A6N filed by Nathan Cummings, also calling for greater transparency of political spending in light of FirstEnergy's "ineffective and risky" lobbying strategy. Compl. 1 ¶66; Compl. 2 ¶¶66-67. Additionally, the Nathan Cummings filing referenced an April 2016 report by the Investor Responsibility Research Center Institute noting FirstEnergy's rising political expenditures, lack of transparency, and risks associated with each. Compl. 1 ¶¶67-69; *see* Compl. 2 ¶61.

- Of critical importance to this case are allegations that FirstEnergy's Board ignored or disregarded "red flags" of misconduct prior to the revelation of the Ohio bribery scheme, and the Institutional Investors' Complaints include far more detail with respect to red flags than the Bloom, Stavely, Beck, or Sarnelli complaints. For example, while all of the complaints discuss the facts alleged in the Criminal Complaint, only the Institutional Investors' Complaints includes the fact that, in 2018 and 2019, multiple media outlets and watchdog groups reported on connections between FirstEnergy, "dark money groups" like Generation Now, and support for Ohio legislation favorable to energy companies. Compl. 1 ¶¶87-91, 99-101, 105, 111; Compl. 2 ¶¶85-87, 95.

- Also important to this case, in light of the Company's contention that it only was responsible for a "share" of the $60 million involved in the bribery scheme,[7] are the direct benefits FirstEnergy received in addition to the $1.3 billion bailout of its power plants, and

---

[7] Compl. 1 ¶139; Compl. 2 ¶114.

the Institutional Investors' Complaints alone identify multiple additional benefits. Two examples are found in the Criminal Affidavit, as amendments to the HB 6 legislation included to benefit FirstEnergy: a provision allowing the Company to reduce its taxable property value, and a provision allowing the Company to charge its customers more to make up for lost revenue in a previous year. Compl. 1 ¶¶121-22; Compl. 2 ¶93. Additionally, as a result of the Institutional Investors' investigation, the Institutional Investors' Complaints include another legislative benefit FirstEnergy received during the Relevant Period: a 2019 budget bill provision allowing the Company to avoid a designation that its subsidiaries' profits were "significantly excessive," resulting in a "windfall" to the Company. Compl. 1 ¶146; Compl. 2 ¶117.

- Local 103's Complaint includes significant additional allegations magnifying the injury to FirstEnergy as a result of the fallout from the bribery, racketeering and pay-to-play scheme. These developments—(1) a motion for audit and investigation filed by the Office of Ohio Consumers' Counsel before the Public Utilities Commission of Ohio on September 8, 2020, (2) an SEC investigation into FirstEnergy reported on September 15, 2020, and (3) a civil racketeering lawsuit against FirstEnergy filed by the Ohio Attorney General on September 23, 2020—were not included in the Beck or Sarnelli complaints despite predating the filing of those complaints. Compl. 2 ¶¶121-23. By including these important allegations, Local 103 has captured more fully the broad scope of the damage to FirstEnergy, thereby ensuring that the case comprehensively addresses defendants' misconduct and the resulting harm to the Company and its shareholders.

Accordingly, the quality of the Institutional Investors' pleadings weighs in favor of their appointment to lead the consolidated action. The superiority of the Institutional Investors' pleadings also demonstrates that the Institutional Investors and their counsel have prosecuted their claims with the greatest vigor of the various plaintiffs in the Derivative Actions.

### 2. The Institutional Investors Have A Significant Economic Stake In FirstEnergy And Are Best Suited To Serve As Co-Lead Plaintiffs.

The third factor—"economic stake[s]"—likewise supports the Institutional Investors. Both Institutional Investors are sophisticated funds with a significant financial interest in FirstEnergy and, therefore, the outcome of this litigation. St. Louis Employees holds 7,500 shares of FirstEnergy stock, worth $217,500 as of July 31, 2020, and has been a continuous holder since February 2015. Local 103 holds 17,393 shares of FirstEnergy stock, worth $504,397 as of July 31, 2020, and has been a continuous holder since at least January 1, 2017.

13

Moreover, there is no doubt that the Institutional Investors are well-suited to lead the consolidated action.  In considering who may serve as a lead plaintiff in a derivative action, courts consider: "(1) whether the plaintiff held shares during the relevant time period; (2) whether the plaintiff is represented by capable counsel; and (3) whether the plaintiff is subject to unique defenses that would make appointment problematic."  *Flynn*, 2012 WL 2499363, at *2 (quoting *Horn*, 227 F.R.D. at 3).  The Institutional Investors both held shares during the relevant period and, as discussed further in Section B.3 below, are represented by exceptionally capable counsel.  Importantly, neither is subject to any unique defense.  Both share the interests of FirstEnergy and its public shareholders.

Further, as sophisticated and experienced investment funds, the Institutional Investors are ideally situated to advance those interests.  Both have served as shareholder representative plaintiffs in other litigation and have proven track records of actively seeking redress for corporate malfeasance.  For example, St. Louis Employees recently served as co-lead plaintiff (having retained Bernstein Litowitz, who served as co-lead counsel) in shareholder derivative litigation on behalf of Pilgrim's Pride Corp.  After defeating a motion to dismiss and engaging in extensive discovery, St. Louis Employees settled the litigation for monetary consideration of $42.5 million and important corporate governance reforms.  Local 103 served as co-lead plaintiff in a securities class action against AutoLiv, Inc., obtaining a recovery of $22.5 million on behalf of investors, and in this District, served as co-lead plaintiff in a securities class action against Chemed Corp., recovering $6 million for investors.

### 3.  The Institutional Investors' Counsel Are Best Suited To Serve As Co-Lead Counsel.

The fourth factor—"competence of counsel"—weighs strongly in favor of the Institutional Investors and their chosen counsel.  Saxena White and Bernstein Litowitz are two of the leading

firms in the country representing shareholders in complex litigation, responsible for some of the most significant economic and governance recoveries in history. *See* Camillus Decl., Exs. A-B. As shown in their respective firm resumes, the firms' service as lead counsel has led to groundbreaking settlements and judgments resulting in billions of dollars' worth of monetary recoveries and the implementation of important corporate governance reforms.

Saxena White has extensive experience prosecuting shareholder derivative actions. For example, as co-lead counsel in a shareholder derivative action on behalf of Wells Fargo & Company ("Wells Fargo") arising from that company's illicit account creation scandal, Saxena White achieved a $320 million derivative settlement for Wells Fargo, including a $240 million cash payment representing the largest insurer-funded monetary component of any shareholder derivative settlement in history. *See In re Wells Fargo & Co. S'holder Deriv. Litig.,* No. 4:16-cv-05541-JST (N.D. Cal.). Notably, the settlement in the *Wells Fargo* action also included significant corporate governance reforms. The parties agreed and acknowledged that facts alleged in the derivative action were a significant factor in causing certain corporate governance changes undertaken by Wells Fargo during the pendency of the derivative action, which included enhancements of Wells Fargo's internal controls and reporting, and expanded and enhanced board oversight of risk management. Saxena White also secured a settlement including meaningful governance reforms and a $62.5 million cash payment in litigation brought on behalf of Bank of America in connection with Bank of America's acquisition of Merrill Lynch, one of the largest cash recoveries ever in federal court derivative litigation. *In re Bank of America Corp. Sec., Deriv. and ERISA Litig.*, No. 09-MD-2058 (S.D.N.Y.).

Saxena White has also achieved substantial recoveries on behalf of investor classes in securities class actions, including in *In re Wilmington Trust Sec. Litig.*, No. 10-cv-00990-ER (D.

Del.) ($210 million recovery), *In re Rayonier Inc. Sec. Litig.*, No. 3:14-cv-1395-TJC-JBT (M.D. Fla.) ($73 million recovery), and *HD Supply Holdings, Inc. Sec. Litig.*, No. 1:17-CV-02587-ELR (N.D. Ga.) ($50 million recovery).

Bernstein Litowitz also has an exceptional track record in achieving numerous high-value victories for stockholders. Notable derivative settlements Bernstein Litowitz has achieved include *In re Unitedhealth Grp. Inc. Shareholder Derivative Litigation*, 0:06-cv-01216-JMR-FLN (D. Minn.) ($920 million recovery), *In re Freeport-McMoRan Copper & Gold Inc. Derivative Litigation*, C.A. No. 8145-VCN (Del. Ch.) ($153.75 million recovery), and *In re News Corp. Shareholder Litigation*, No. C.A. 6316-VCN (Del. Ch.) ($139 million recovery plus extensive governance reforms).

In addition, Bernstein Litowitz has expertise prosecuting shareholder derivative claims involving FirstEnergy. Specifically, in 2004, Bernstein Litowitz achieved a $25 million recovery and significant corporate governance changes in a derivative action involving the failure of FirstEnergy's Board of Directors to address the Company's inadequate and decaying equipment, maintain emergency control systems, and establish adequate financial reporting. *See In re FirstEnergy S'holder Deriv. Litig.*, No. 5:03-cv-01826-JG (N.D. Ohio).

Another notable example of Bernstein Litowitz's pursuing litigation that benefits stockholders at all companies and prepared the firm for the issues at play in this case, Bernstein Litowitz represented a state pension fund stockholder in books and records litigation leading to greater disclosure of how public companies spend corporate funds in the political arena. *See New York State Common Ret. Fund v. Qualcomm Inc.*, C.A. No. 8170-CS (Del. Ch.); *New York State Common Ret. Fund v. Oracle Corp.*, C.A. No. 11642-VCL (Del. Ch.). After extensive discussions with each Company, both Qualcomm and Oracle agreed to implement a

comprehensive new political spending disclosure policy that was recognized by the Center for Political Accountability as the new standard-bearer in transparency for corporations. In addition to benefitting shareholders of Qualcomm and Oracle, these cases set a new standard in corporate transparency and provided Bernstein Litowitz with highly relevant experience that it will bring to bear in the prosecution of this case.

Bernstein Litowitz has also achieved substantial recoveries on behalf of investor classes as lead or co-lead counsel in securities class actions, including actions in the District Courts of Ohio and cases against utilities and energy companies and involving misconduct similar to that at the heart of the Derivative Actions. *See In re OM Grp., Inc. Sec. Litig.*, No. 1:02-cv-2163 (N.D. Ohio) (a $92.4 million recovery, the fourth-largest securities class action recovery in Ohio); *see also Dep't of the Treasury of the State of New Jersey v. Cliffs Natural Resources Inc.*, No. 14-cv-01031 (N.D. Ohio) (a $84 million recovery, the sixth-largest recovery in a securities class action in Ohio). For example, Bernstein Litowitz recovered $389.6 million for investors in Cobalt International Energy, which had engaged in bribery of government officials. *See In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. 4:14-cv-03428 (S.D. Tex.). Bernstein Litowitz also recovered $192.5 million for investors in SCANA Corporation, an electric and gas utility that misled investors regarding the construction of two nuclear reactors and involved a ratepayer bailout. *See In re SCANA Corp. Sec. Litig.*, No. 3:17-cv-02616 (D.S.C.). Bernstein Litowitz is currently serving as lead counsel in the Cognizant Technology Solutions securities class action, which arises from illegal payments to governmental officials in India to secure favorable permits required to build and operate facilities. *See In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 2:16-cv-06509-ES-CLW (D.N.J.).

Further, Saxena White and Bernstein Litowitz have a history of working together to successfully prosecute shareholder derivative actions. For example, Saxena White and Bernstein

17

Litowitz served as co-lead counsel in a derivative action on behalf of New Senior Investment Group ("New Senior") and achieved a settlement of $53 million, the largest derivative action settlement as a percentage of market capitalization (greater than 10%) to date in the Delaware Court of Chancery and one of the top ten derivative action settlements in the history of the Chancery Court. *See Cumming v. Edens, et al.*, C.A. No. 13007-VCS (Del. Ch.). In addition to the monetary recovery, the New Senior board agreed to approve and submit to New Senior's stockholders meaningful amendments to the company's bylaws and certificate of incorporation which would improve board member independence. This Court has held that experience in achieving corporate governance reforms in shareholder derivative actions is "relevant and helpful" where, as here, the complaints request corporate governance reforms. *In re Wendy's Co.,* 2018 WL 6605394, at *2.

Saxena White and Bernstein Litowitz have worked together as co-lead counsel to achieve substantial recoveries on behalf of investor classes in securities class actions as well, including in the *Wilmington Trust* and *Rayonier* matters mentioned above.

The teams who would be dedicated to this matter consist of an experienced, diverse, and highly-qualified group of lawyers. *See* Camillus Decl., Exs. D-E. As such, in approving Saxena White and Bernstein Litowitz as Co-Lead Counsel, this Court will advance the laudable goal of increasing the diversity of lead counsel appointed to represent large groups of investors. *See In re Robinhood Outage Litig.*, No. 3:20-cv-01626-JD, (N.D. Cal. July 14, 2020), ECF No. 59, at *3 (declining to appoint interim co-lead counsel in a class action in part because the proposed counsel did not "reflect the diversity of the proposed national class"); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924, 2020 U.S. Dist. LEXIS 81742, at *26 (S.D. Fla. May 8, 2020)

(seeking to "appoint a diverse leadership team that is representative of the diversity of the Plaintiffs in this case").

The Institutional Investors' proposed Liaison Counsel is also well-qualified to serve in this action.  John Camillus, principal of Camillus, has "extensive experience representing plaintiffs in securities and derivative matters, and is familiar with Ohio corporate law and rules of procedure." *Kubiak v. Barbas*, No. 3:11-CV-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011).  Prior to founding his own firm, Mr. Camillus served as a law clerk for the Honorable R. Guy Cole, Jr., of the United States Court of Appeals for the Sixth Circuit.

Accordingly, Saxena White and Bernstein Litowitz have the resources and experience necessary to prosecute these important claims.   In sum, by granting this motion, the Court can be assured that shareholders will receive the highest caliber of legal representation.

## IV.     <u>CONCLUSION</u>

For the reasons stated herein, the Institutional Investors respectfully request that the Court: (i) consolidate the Derivative Actions; (ii) appoint the Institutional Investors as Co-Lead Plaintiffs; (iii) appoint Saxena White and Bernstein Litowitz as Co-Lead Counsel; (iv) appoint Camillus as Liaison Counsel; and (v) grant such other and further relief as the Court may deem just and proper.

Dated: October 2, 2020                    Respectfully Submitted,

                                         */s/ John C. Camillus*
                                         **LAW OFFICES OF JOHN C. CAMILLUS LLC**
                                         John C. Camillus (0077435)
                                         P.O. Box 141410
                                         Columbus, OH 43214
                                         Phone: (614) 992-1000

                                         *Liaison Counsel for Employees Retirement System of the City of St. Louis and Electrical Workers Pension Fund, Local 103, I.B.E.W.*

**SAXENA WHITE P.A.**
Maya Saxena (pro hac vice forthcoming)
Lester R. Hooker (pro hac vice forthcoming)
Dianne M. Pitre (pro hac vice forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33432
Phone: (561) 394-3399

- and -

**SAXENA WHITE P.A.**
Thomas Curry (pro hac vice forthcoming)
1000 N. West Street
Suite 1200, Office 1265
Wilmington, DE 19801
Phone: (302) 485-0480

*Counsel for Employees Retirement System of the City of St. Louis and Proposed Co-Lead Counsel*


**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
Hannah Ross (pro hac vice forthcoming)
Jeroen van Kwawegen (pro hac vice forthcoming)
Alla Zayenchik (pro hac vice forthcoming)
Rebecca N. Kim (pro hac vice forthcoming)
Matthew Traylor (pro hac vice forthcoming)
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 554-1400

*Counsel for Electrical Workers Pension Fund, Local 103, I.B.E.W. and Proposed Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys on record.

*/s/ John C. Camillus*
John C. Camillus