IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTA BLOOM, et al., | : | |
| Plaintiffs, | : | Case No. 2:20-cv-04534 |
| | : | |
| v. | : | CHIEF JUDGE ALGENON L. MARBLEY |
| | : | |
| MICHAEL J. ANDERSON, et al., | : | Magistrate Judge Jolson |
| | : | |
| Defendants, | : | |
| | : | |
| FIRSTENERGY CORP., | : | |
| | : | |
| Nominal Defendant. | : | |

| | | |
|---|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, | : | Case No. 2:20-cv-04813 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHARLES E. JONES, et al., | : | |
| | : | |
| Defendants, | : | |
| | : | |
| FIRSTENERGY CORP., | : | |
| | : | |
| Nominal Defendant. | : | |

*Captions continued on next page.*

1

ELECTRICAL WORKERS PENSION    :
FUND, LOCAL 103, I.B.E.W.,     :  Case No. 2:20-cv-05128
                                :
          Plaintiff,         :
                                :
      v.                     :
                                :
MICHAEL J. ANDERSON, et al.,    :
                                :
          Defendants,      :
                                :
FIRSTENERGY CORP.,         :
                                :
          Nominal Defendant.  :

MASSACHUSETTS LABORERS    :
PENSION FUND,            :  Case No. 2:20-cv-05237
                                :
          Plaintiff,         :
                                :
      v.                     :
                                :
CHARLES E. JONES, et al.,     :
                                :
          Defendants,      :
                                :
FIRSTENERGY CORP.,         :
                                :
          Nominal Defendant.  :

*Captions continued on next page.*

| | | |
|---|---|---|
| THE CITY OF PHILADELPHIA BOARD OF PENSIONS AND RETIREMENT, | : | Case No. 2:20-cv-05529 |
| Plaintiff, | : | |
| v. | : | |
| MICHAEL J. ANDERSON, et al., | : | |
| Defendants, | : | |
| FIRSTENERGY CORP., | : | |
| Nominal Defendant. | : | |

| | | |
|---|---|---|
| JAMES ATHERTON, | : | Case No. 2:20-cv-05610 |
| Plaintiff, | : | |
| v. | : | |
| MICHAEL J. DOWLING, et al., | : | |
| Defendants, | : | |
| FIRSTENERGY CORP., | : | |
| Nominal Defendant. | : | |

## OPINION AND ORDER

### I. INTRODUCTION

In July 2020, the U.S. Attorney for the Southern District of Ohio filed criminal charges ("Criminal Complaint") against Speaker of the Ohio House of Representatives, Larry Householder ("Householder"), and four other individuals. They were charged for their involvement in orchestrating a $60 million bribery and racketeering scheme with FirstEnergy Corp. ("FirstEnergy" or the "Company") and passing "bailout" legislation that favored the Company.

Following these charges, FirstEnergy shareholders filed numerous lawsuits to hold the wrongdoers accountable, including multiple derivative actions against the Company's directors and certain officers.

Currently before the Court are three motions to consolidate these derivative actions. Specifically, Plaintiffs Employees Retirement System of The City of St. Louis ("St. Louis Employees" or "St. Louis"), Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Electrical Workers"), and The City of Philadelphia Board of Pensions and Retirement ("Philadelphia Pensions" or "Philadelphia") have each submitted motions to consolidate. (No. 2:20-04813, ECF No. 24; No. 2:20-05128, ECF No. 3; No. 2:20-05529, ECF No. 3). The cases subject to these motions include: *Bloom v. Anderson*, No. 2:20-cv-04534 (S.D. Ohio); *Employees Retirement System of the City of St. Louis v. Jones*, No. 2:20-cv-04813 (S.D. Ohio); *Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Anderson*, No. 2:20-cv-05128 (S.D. Ohio); *Massachusetts Laborers Pension Fund v. Jones*, No. 2:20-cv-05237 (S.D. Ohio); *The City of Philadelphia Board of Pensions and Retirement v. Anderson*, No. 2:20-cv-05529 (S.D. Ohio); and *Atherton v. Dowling*, No. 2:20-cv-05610 (S.D. Ohio) (together, the "Derivative Actions").[1]

Also before the Court are competing motions to appoint Lead Plaintiff and appoint Lead Counsel. On one side, St. Louis Employees and Electrical Workers ask the Court to appoint

---

[1] St. Louis Employees and Electrical Workers moved for consolidation on October 2, 2020, before Philadelphia Pensions and Atherton filed their derivative actions on October 21, 2020 and November 2, 2020, respectively. (*Compare* No. 2:20-04813, ECF No. 24, *and* No. 2:20-05128, ECF No. 3, *with* No. 2:20-05529, ECF No. 1, *and* No. 2:20-05610, ECF No. 1). Similarly, Philadelphia filed its motion for consolidation before *Atherton v. Dowling* was filed. Because this Court has determined these cases are related, and because no party has opposed consolidation, the Court includes these cases in its consolidation analysis.

Three plaintiffs have also voluntarily dismissed their derivative actions since the motions to consolidate were filed. Accordingly, the following cases are no longer under consideration for consolidation: *Stavely v. Anderson*, No. 2:20-cv-04598 (S.D. Ohio); *Beck v. Anderson*, No. 2:20-cv-05020 (S.D. Ohio); and *Sarnelli v. Anderson*, No. 2:20-cv-05192 (S.D. Ohio).

themselves as Co-Lead Plaintiffs and their lawyers as Co-Lead Counsel. (No. 2:20-04813, ECF No. 24; No. 2:20-05128, ECF No. 3). On the other, Philadelphia Pensions requests to be designated Lead Plaintiff and seeks to have its counsel designated as Lead Counsel. (No. 2:20-05529, ECF No. 3).

For the reasons set forth below, the Court **GRANTS** St. Louis Employees', Electrical Workers', and Philadelphia Pensions' motions to consolidate. (No. 2:20-04813, ECF No. 24; No. 2:20-05128, ECF No. 3; No. 2:20-05529, ECF No. 3). Additionally, the Court **GRANTS** St. Louis Employees' Motion to Appoint Co-Lead Plaintiffs and Appoint Co-Lead Counsel [#24]; **GRANTS** Electrical Workers' Motion to Appoint Co-Lead Plaintiffs and Appoint Co-Lead Counsel [#3]; and **DENIES** Philadelphia Pensions' Motion for Appointment of Lead Plaintiff and Appointment of Lead Counsel [#3].

## II. BACKGROUND

### A. Facts

Taking the facts as stated by Plaintiffs, these derivative actions have been brought against the directors and certain officers of FirstEnergy for their role in a large bribery and money-laundering scandal that implicated Ohio politicians. FirstEnergy is an Ohio-based utility company that generates and transmits electricity to approximately 6 million customers in seven states. (2:20-cv-05128, Pl.'s Compl. ¶ 56, ECF No. 1). In late 2016, FirstEnergy was under significant financial strain because two of its aging nuclear power plants had become financially unsustainable. (2:20-cv-04813, Pl.'s Compl. ¶ 2, ECF No. 1). FirstEnergy informed its investors that it was seeking "legislative solutions" for these problematic plants. (*Id.*).

Meanwhile, Householder was running for an Ohio House of Representatives seat that he previously held but resigned from in 2004 due to allegations of receiving improper campaign

contributions in exchange for legislation. (*Id.* at ¶ 3). His bid was successful; he was elected to the Ohio House in November 2016 and took office on January 3, 2017. (*Id.*). A few days after he assumed office, FirstEnergy flew Householder to Washington, D.C. on its private jet so that he could attend the presidential inauguration. (*Id.*). Within two months of this trip, Householder established to a 501(c)(4) entity called "Generation Now," and FirstEnergy and its subsidiaries began making clandestine quarterly payments of $250,000 to it. (*Id.*). According to a Householder co-conspirator, Generation Now was structured to be opaque so that donors could "give as much or more to the (c)(4) and nobody would ever know." (No. 2:20-cv-05237, Pl.'s Compl. ¶¶ 81–82, ECF No. 1). Householder used the FirstEnergy funds to support his campaign for Speaker of the House, to support other House candidates who were his allies, and for his own personal use. Householder was re-elected as Speaker of the House in January 2019. (*Id.* at ¶ 84). Over time, FirstEnergy and its subsidiaries paid tens millions of dollars to various entities controlled by Householder, including Generation Now, under the guise of donations. (2:20-cv-04813, Pl.'s Compl. ¶ 4, ECF No. 1).

Shortly after Householder became Speaker, House Bill 6 ("HB6") was introduced in the Ohio state legislature. (*Id.*). The legislature then passed the bill in July 2019, and Ohio Governor Mike DeWine signed it into law. (*Id.*). HB6 provided a $1.3 billion bailout to rescue FirstEnergy's uncompetitive power plants. (*Id.* at ¶5). The bill was funded primarily by monthly ratepayer surcharges and legislative amendments that removed incentives to build renewable energy projects, scrapped statewide energy conservation measures, and allowed the Company to upcharge customers for their energy. (*Id.*). FirstEnergy executives and Householder communicated frequently throughout the period that encompassed both Householder's campaign and election and HB6's passage, as was evidenced in the Criminal Complaint. (*Id.* at ¶7). The FBI Special Agent

in Charge of the investigation described their collaboration as a "sophisticated criminal conspiracy to enact legislation" on behalf of FirstEnergy. (*Id.* at ¶6).

Even before charges of this misconduct surfaced, the public strongly opposed House Bill 6's enactment. The bill was criticized as "the worst energy bill of the 21st century," and a statewide ballot referendum seeking to repeal it quickly followed. (*Id.* at ¶5). FirstEnergy vehemently opposed the referendum, spending $38 million over the next few months to defeat it. (*Id.*) Altogether, between funds paid to Householder-controlled entities and the money the Company spent to fight the referendum, FirstEnergy spent a total of $61 million over three years to secure the House Bill 6 legislation. (*Id.*).

Numerous "red flags" dating back to 2015 suggest that FirstEnergy's directors and officers knew or should have known about the Company's misconduct. For example, two nonprofit research organizations dedicated to corporate accountability reported that FirstEnergy had the second highest level of political spending relative to its revenue, but ranked only 22nd in transparency about its political spending. (*Id.* at ¶ 62). FirstEnergy shareholders also issued formal proposals at annual proxy meetings in 2015, 2016, and 2017, urging the Company to increase its transparency and oversight over lobbying and political spending. The Company's Board recommended against the proposals each year. (No. 2:20-cv-04813, Pl.'s Compl. ¶¶ 63–72, ECF No. 1). In addition to these indicators, multiple media outlets and watchdog groups reported on connections between FirstEnergy, Generation Now and other "dark money groups," and support for favorable Ohio legislation. (*Id.* at ¶¶ 87–91, 99–101, 105, 111).

The bribery scheme was exposed on July 21, 2020, when formal criminal charges were brought against Householder and others, and reports of FirstEnergy's involvement surfaced soon thereafter. (*Id.* at ). The Company's stock value fell 45% in the aftermath, eliminating billions of

dollars of shareholder value. (*Id.* at ¶¶ 12, 135). The Company is currently the subject of ongoing investigations by the U.S. Department of Justice, the Securities and Exchange Commission, the Ohio Public Utilities Commission, and the Ohio State Attorney General. (*Id.*). In addition to its reputational damage, securities analysts estimate the Company faces $500 million worth of future fines and penalties. (*Id.* at ¶150).

## B. Procedural History

Jennifer Miller brought the first derivative action against FirstEnergy's directors and officers on August 7, 2020 in the Northern District of Ohio; the case remains in that district today.[2] Subsequent actions were filed in the Southern District of Ohio, first by Roberta Bloom and two other individuals on September 1, 2020. Between that date and October 5, 2020, six additional derivative actions were filed in the Southern District.[3] These cases were determined to be related and assigned to this Court. (*See, e.g.*, No. 2:20-04534, ECF No. 44).

Two of the Plaintiffs in these cases—St. Louis Employees and Electrical Workers—filed motions to consolidate the related derivative actions. Additionally, Plaintiffs Roberta Bloom and Massachusetts Laborers Pension Fund ("Massachusetts Laborers" or "Massachusetts") each filed memoranda in support of the motions to consolidate. (*Id.*, ECF No. 41; No. 2:20-05237, ECF No.

---

[2] St. Louis Employees and Electrical Workers later moved to intervene in this case, seeking to transfer it to the Southern District of Ohio. (*Miller v. Anderson*, No. 5:20-cv-01743 (N.D. Ohio), ECF No. 17). Plaintiff Miller filed a Notice of Non-Opposition to the Motion to Transfer (*Id.* at ECF No. 19), but Defendants opposed it (*Id.* at ECF No. 20). These motions are currently pending before Judge Adams in the Northern District. (*Id.*). Defendants have also filed a motion to dismiss the amended complaint in this action for failure to plead demand futility. (*See* No. 2:20-cv-05237, ECF No. 19).

[3] Those cases include: *Stavely v. Anderson*, No. 2:20-cv-04598 (S.D. Ohio); *Emps. Ret. Sys. of the City of St. Louis v. Jones*, No. 2:20-cv-04813 (S.D. Ohio); *Beck v. Anderson*, No. 2:20-cv-05020 (S.D. Ohio); *Elec. Workers Pension Fund, Local 103, I.B.E.W. v. Anderson*, No. 2:20-cv-05128 (S.D. Ohio); *Sarnelli v. Anderson*, No. 2:20-cv-05192 (S.D. Ohio); and *Mass. Laborers Pension Fund v. Jones*, No. 2:20-cv-05237 (S.D. Ohio).

12). Later, on November 2, 2020, Defendants also filed a Notice of Non-Opposition to Consolidation of Related Derivative Actions. (*Id.*, ECF No. 19).

In addition to their motions to consolidate, St. Louis Employees and Electrical Workers also filed identical motions asking this Court to appoint themselves as Co-Lead Plaintiffs and to appoint Co-Lead Counsel (together, the "St. Louis / Electrical Workers Motions") on October 2, 2020. (No. 2:20-04813, ECF No. 24; No. 2:20-05128, ECF No. 3). Plaintiffs Bloom and Massachusetts Laborers filed joinders in support the St. Louis / Electrical Workers Motions. (No. 2:20-04534, ECF No. 41; No. 2:20-05237, ECF No. 12). On October 21, 2020, this Court ordered St. Louis Employees, Electrical Workers, and Massachusetts Laborers to appear at a hearing to resolve these issues. (*See id.*, ECF No. 9).

Also on October 21, Plaintiff Philadelphia Pensions filed a new derivative action in the Southern District of Ohio (No. 2:20-05529, ECF No. 1), and the Court determined that it was related to the other Derivative Actions (*Id.*, ECF No. 4). Philadelphia filed its Motion for Consolidation, Appointment of Lead Plaintiff, and Appointment of Lead Counsel on October 23, 2020. (*Id.*, ECF No. 3). This Court ordered Philadelphia to appear at the previously scheduled hearing along with St. Louis, Electrical Workers, and Massachusetts Laborers. (No. 2:20-05529, ECF No. 15).

St. Louis Employees and Electrical Workers filed memoranda of law in further support of their motion to consolidate, appoint Co-Lead Plaintiffs, and appoint Co-Lead Counsel, and in opposition to Philadelphia Pensions' competing motion on November 3, 2020. (2:20-cv-04813, ECF No. 40-1; 2:20-cv-05128, ECF No. 22-1). Massachusetts Laborers filed an affidavit in support of the St. Louis / Electrical Workers Motions on November 6, 2020. (2:20-cv-04813, ECF No. 42). Philadelphia Pensions also filed a reply in further support of its motion for consolidation,

appointment of Lead Plaintiff, and appointment of Lead Counsel on November 6, 2020. (2:20-cv-05529, ECF No. 20).

James Atherton also filed an additional derivative action against the Company's directors and officers on October 27, 2020, which was determined to be related to the other Derivative Actions. (No. 2:20-05610, ECF Nos. 1, 5). Mr. Atherton has not moved for consolidation or appointment as Lead Plaintiff. Finally, three of the plaintiffs voluntarily dismissed their derivative actions: on November 2, 2020, *Stavely v. Anderson* was voluntarily dismissed (No. 2:20-cv-04598, ECF No. 19); on November 6, 2020, *Sarnelli v. Anderson* was voluntarily dismissed; and on November 9, 2020 (No. 2:20-cv-05192, ECF No. 38); and *Beck v. Anderson* was voluntarily dismissed (No. 2:20-05020, ECF No. 32).

In sum, there are currently six derivative actions before the Southern District of Ohio. Three of the Plaintiffs in these actions request the Court to consolidate the cases, two support consolidation, and none opposes. Additionally, two candidates for Lead Plaintiff have emerged: (1) St. Louis Employees and Electrical Workers, as Co-Lead Plaintiffs; and (2) Philadelphia Pensions. Both candidates also seek appointment of lead counsel and liaison counsel.

### III. LAW AND ANALYSIS

#### A. Consolidation

Rule 42(a) of the Federal Rules of Civil Procedure authorizes consolidation of actions that involve a common question of law or fact. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 412 (6th Cir. 1998). The underlying purpose of Rule 42 is to "administer the court's business with expedition and economy while providing justice to the parties." *Rice v. Javitch Block & Rathbone, LLP*, No. 2:04-cv-00951, 2012 WL 506833, at *3 (S.D. Ohio Feb. 15, 2012) (citing *Advey v. Celotex, Corp.*, 962 F.2d 1177, 1181 (6th Cir. 1992)). Consolidation under Rule 42 falls within the

discretion of the Court. *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993). To determine whether consolidation is appropriate, courts consider a number of factors, including the risks of prejudice to the parties and jury confusion, the burden on the parties and available judicial resources, and the time and expense of litigating a single suit as compared to multiple suits. *Guild Assocs., Inc. v. Bio-Energy (Washington), LLC*, 309 F.D.R. 436 (S.D. Ohio Sept. 15, 2015).

Here, three of the six Plaintiffs have requested the Court to consolidate all of the Derivative Actions in the Southern District, two Plaintiffs have filed joinders in support of consolidation, Defendants have filed a notice of non-opposition to consolidation, and no party has opposed consolidation. Moreover, the Derivative Actions involve the same operative facts and the same alleged violation of fiduciary duties and federal securities laws by FirstEnergy's directors and officers. Given these commonalities, the Court finds that consolidation will promote judicial economy and conserve the parties' resources by preventing the duplicative motions, discovery, and trials that would result from litigating each action separately. The Court also finds that consolidation is unlikely to prejudice the rights of any party. The Court therefore **GRANTS** Plaintiffs' motions to consolidate the Derivative Actions.

### B. Appointment of Lead Plaintiff and Lead Counsel

Under the Federal Rules of Civil Procedure, a derivative action may only be maintained if the plaintiff "fairly and adequately represent[s] the interests of shareholders . . . who are similarly situated in enforcing the rights of the corporation." FED. R. CIV. P. 23.1(a). Here, there is no doubt that the Plaintiffs seeking appointment could each fairly and adequately represent the shareholders' interests. Instead, the Court must determine whether to appoint a lead plaintiff, and if so, who will best serve shareholder interests. The Court must also consider the parties' requests to appoint Lead Counsel.

No statutory authority exists for the appointment of lead plaintiff or lead counsel in shareholder derivative actions. Courts, however, have the inherent "authority to appoint a lead plaintiff . . . in a derivative action in order to create an efficient case-management structure." *N. Miami Beach Gen. Emps. Ret. Fund*, No. 10 C 6514, 2011 WL 12465137, at *1—2 (N.D. Ill. July 5, 2011) (appointing a lead plaintiff to prevent potential "disagreements and inefficiencies"); *see also Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005) (appointing a lead plaintiff because it was "necessary to provide for an orderly litigation"); *KBC Asset Mgmt. NV ex rel. Chemed Corp. v. McNamara*, 78 F. Supp. 3d 599, 603 (D. Del. 2015) (appointing a lead plaintiff to create "an efficient, streamlined structure" for litigating the derivative actions"). It is also well established that the Court may appoint a leadership structure of plaintiffs' counsel to coordinate the prosecution of complex litigation. *In re Bendectin Litig.*, 857 F.2d 290, 297 (6th Cir. 1988).

When courts in the Southern District of Ohio are called upon to appoint a lead plaintiff or lead counsel in derivative action cases, they consider several criteria, including: "[(i)] the quality of the pleadings; (ii) the vigorousness of the prosecution; (iii) the shareholder plaintiffs that have the largest economic stakes in the litigation; and (iv) the competence of counsel." *In re The Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394, at *2 (S.D. Ohio Dec. 17, 2018) (citing FED. R. CIV. P. 23(g)). Courts seek to appoint the leadership structure that "will best serve the interest of the plaintiffs," so efficiency is also a key consideration. *Id.* Moreover, Courts do not give special weight to a derivative action "simply by virtue of having been filed earlier than any other pending action." *Hirt v. U.S. Timberlands Serv. Co., LLC*, No. CIV.A. 19575, 2002 WL 1558342, at *3 (Del. Ch. July 3, 2002) (citing *TWC Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, C.A. No 18336-CC, 2000 WL 1654504, at *3 (Del. Ch. Oct. 17, 2000)).

### 1. Quality of the Pleadings and Vigorousness of the Prosecution

Quality of the pleadings is a factor in appointing lead plaintiff and lead counsel to the extent that it helps to identify the leadership team that will prosecute the claims on behalf of the various plaintiffs with the greatest vigor. *See In re Wendy's*, 2018 WL 6605394, at *2.

Here, this factor does not favor any particular plaintiff, law firm, or attorney. Both candidates for lead plaintiff demonstrate their vigorousness in investigating FirstEnergy's misconduct and in illuminating new facts through their high-quality pleadings. St. Louis Employees and Electrical Workers highlight their work in exposing shareholder proposals that show FirstEnergy's corporate leaders had notice of Company misconduct for multiple years. (No. 2:20-cv-04813, ECF No. 24 at 12–13). Their Complaints also include allegations that show additional benefits the Company received from the bribery scheme and additional injuries it experienced after the scheme was disclosed to the public. (*Id.*). Philadelphia Pensions calls attention to its work in including facts set forth by a whistleblower, including the whistleblower's counterclaims alleging that the Company unlawfully retaliated against him. (No. 2:20-cv-05529, ECF No. 3-2 at 13–15). Each of these findings is important to the ongoing litigation. While it is true that the candidates for lead plaintiff emphasize different aspects of the underlying facts, their Complaints present substantially similar allegations. The Court finds that both candidates set forth sufficiently detailed Complaints and demonstrate they will vigorously prosecute the action on behalf of all shareholders.

### 2. Economic Stake in the Litigation

In the context of shareholder derivative actions, economic stake matters in so far as it has "some relevance to the plaintiff's interest in [the] action and the likelihood that the plaintiff will pursue the claims vigorously." *McNamara*, 78 F. Supp. 3d at 604. When considering leadership

structures in derivative actions, "the relative economic stakes of the competing litigations in the outcome of the lawsuit" should be "accorded great weight." *In re Wendy's*, 2018 WL 6605394, at *2 (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *1 (S.D. Ohio June 14, 2011) (internal quotations omitted)). Relative economic stake, however, is not a simple question of which candidate possesses the largest number of stock shares. *In re Foundry Networks, Inc. Derivative Litig.*, No. C-06-05598, 2007 WL 485974, at *1 (N.D. Cal. Feb. 12, 2007) ("[T]here is no presumption in favor of selecting the plaintiff with the largest financial stake as there is in cases under the Private Securities Litigation Reform Act. . . ."). Rather, "the test is the *relative* size of the shares." *Kubiak*, 2011 WL 2443715, at *2; *see also Wiehl v. Eon Labs*, No. Civ. A. 1116-N, 2005 WL 696764, at *2 (Del. Ch. Mar. 22, 2005) (selecting an individual plaintiff with 1,350 shares over plaintiffs with 11,400 shares when the company had 116.9 million outstanding shares). For economic stake to be a decisive factor, the proposed lead plaintiff must demonstrate "a *substantial* relative difference" in its stake over that of the other lead plaintiff candidate. *Wiehl*, 2005 WL 696764, at *2 (emphasis added).

St. Louis Employees holds 7,500 shares of FirstEnergy stock, worth $217,500, and has been a continuous holder since February 2015. Electrical Workers hold 17,393 shares, worth $504,397, and has been a continuous holder since at least January 2017. Combined, the two candidates for Co-Lead Plaintiffs hold 24,893 shares of FirstEnergy stock.[4] Beyond their holdings, neither St. Louis nor Electrical Workers has alleged specific already-incurred losses, and the extent

---

[4] St. Louis and Electrical Workers submit that Massachusetts Laborers' shares also factor into their economic stake in the litigation because Massachusetts Laborers filed a joinder in support of the St. Louis / Electrical Workers Motions. Because Massachusetts Laborers currently owns 19,274 shares of FirstEnergy stock (No. 2:20-cv-04813, ECF No. 42), St. Louis and Electrical Workers present 44,167 shares as their total financial interest in FirstEnergy. The Court does not adopt this calculation. Though true that Massachusetts Laborers has expressed its support of the St. Louis / Electrical Workers Motions and its willingness to cooperate with the proposed Co-Lead Counsel, Massachusetts did not request to be considered as an additional Co-Lead Plaintiff.

to which their investments have fluctuated or experienced loss due to the Company's misconduct is not yet clear.

Philadelphia Pensions holds 35,579 shares, worth over $1 million, and has maintained nearly 29,000 shares since January 2017. In addition to these holdings, Philadelphia also describes losses that it has already sustained due to the lost value in FirstEnergy that resulted from the Company's misconduct. Specifically, Philadelphia asserts it lost approximately $378,000 using a Last In First Out ("LIFO") basis through its FirstEnergy stock transactions between March 2017 and August 2020.[5]

St. Louis and Electrical Workers argue that the Court should not aggregate the losses Philadelphia Pensions incurred from these stock transactions with the value of their stock shares to determine Philadelphia's economic stake. They argue that such losses are an irrelevant metric here because derivative actions seek to hold defendants responsible for harm caused to the corporation and not to the shareholders themselves. Philadelphia Pensions, on the other hand, argues that these losses demonstrate its strong interest in prosecuting the case.

Courts consider the relative economic stakes of candidates for lead plaintiff because a substantial difference in those stakes may indicate that one candidate is more likely to litigate the claims vigorously. *McNamara*, 78 F. Supp. 3d at 604. To do so, many courts examine the magnitude of each candidate's ownership of company stock as it compares to (1) the total number

---

[5] Under the "LIFO" method, "a plaintiff's sales of the defendant's stock during the class period are matched against the last shares purchased, resulting in an off-set of class-period gains from a plaintiff's ultimate losses." *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 303 (S.D. Ohio Jan. 26, 2005) (quoting *Thompson v. Shaw Grp.*, No. Civ.A.04-1685, 2004 WL 2988503, at *4 (E.D. La. Dec. 14, 2004)).

Philadelphia Pensions also describes approximately $728,000 of losses calculated on a First In First Out ("FIFO") basis. This Court, however, has indicated its preference for using the LIFO calculation in the context of calculating economic loss in securities class actions under the Public Securities Litigation Reform Act, because "the focal point of inquiry must begin . . . with purchases or sales—or both—during [the] class period." *Id.* (quoting *In re Comdisco Sec. Litig.*, No. 01 C 2110, 2004 WL 905938, at *3 (N.D. Ill. Apr. 26, 2004)). The Court therefore does not factor the FIFO losses into its analysis.

of outstanding shares of the corporation, or (2) the size of the candidate's overall holdings or portfolio. *See Freeman ex rel. Tesla, Inc. v. Musk*, 324 F.R.D. 73, 85 (D. Del. 2018); *see also Kubiak*, 2011 WL 2443715, at \*2; *Wiehl*, 2005 WL 696764, at \*3. The Court does not find any example of LIFO losses factoring into the economic stake analysis of prospective lead plaintiffs in derivative actions. And neither candidate has offered evidence about the size of their overall portfolios. The Court therefore limits its analysis to the candidates' FirstEnergy shares as they compare to the Company's outstanding shares.

FirstEnergy has more than 540 million shares of common stock outstanding. (No. 2:20-cv-04813, Pl.'s Compl. ¶ 20, ECF No. 1). Each candidate for Lead Plaintiff holds a small fraction of this outstanding stock: St. Louis Employees' and Electrical Workers' holdings constitute a 0.0046% stake in the Company, and Philadelphia Pensions' holdings amount to a 0.0066% stake. The Court finds that this is not a substantial relative difference in economic stake. *Wiehl*, 2005 WL 696764, at \*3 (selecting an individual plaintiff with the smallest number of shares over institutional investors to serve as lead plaintiff, noting that "even the largest plaintiff owns only 0.065% of [the company's shares. Its stake is simply not large enough to demonstrate a substantial relative difference that would require the court to give this factor greater weight. . . ."). The Court therefore concludes that this factor does not favor either candidate for Lead Plaintiff.

### 3. Competence of Counsel

In appointing a leadership structure of plaintiffs' counsel, Courts consider the credentials and resumes of the attorneys, their access to resources, and their drive to litigate the case on behalf of the plaintiffs. *In re Wendy's Co.*, 2018 WL 6605394, at \*2. Experience litigating derivative actions and leading corporate governance improvement is especially "relevant and helpful" to cases whose complaints request corporate governance reforms, as they do here. *Id.* Likewise,

counsel's ability to "make inclusive efforts on behalf of all plaintiffs" is an "essential attribute" for lead counsel when a case involves multiple parties. *Id.* (quoting *Kubiak*, 2011 WL 2443715, at *2).

In the case sub judice, St. Louis Employees and Electrical Workers seek to appoint Saxena White P.A. ("Saxena White") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Co-Lead Counsel and the Law Offices of John C. Camillus LLC ("Camillus") as Liaison Counsel. Philadelphia Pensions seeks to appoint Berger Montague PC ("Berger Montague") as Lead Counsel and the law firm of O'Connor, Haseley & Wilhelm as Liaison Counsel. Each of these attorneys has impressive resumes, experience litigating complex civil cases, access to the resources necessary to prosecute the claims at issue, and the zeal to litigate this case on behalf of the plaintiffs. The Court chooses here only because the parties have requested it to do so.

The Court finds that the circumstances of this case favor appointing St. Louis Employees' and Electrical Workers' counsel. Saxena White and Bernstein Litowitz both have considerable track records of successfully prosecuting shareholder derivative actions, including one against FirstEnergy, and using derivative action litigation to produce corporate governance reforms. For example, the two firms worked together to prosecute a derivative action on behalf of New Senior Investment and achieved a settlement of $53 million. *Cumming v. Edens*, C.A. No. 13007-VCS (Del. Ch.). They cite this victory as the largest derivative action settlement as a percentage of market capitalization in the Delaware Court of Chancery and one of the top ten derivative action settlements in the history of the Chancery Court. (No. 2:20-cv-04813, ECF No.24 at 17–18). In addition to the monetary recovery, the New Senior Board agreed to amend the company's bylaws and certificate of incorporation to improve board member independence. Saxena White and

17

Bernstein Litowitz also worked together to litigate shareholder derivative actions as co-lead counsel in *In re Wilmington Trust Securities Litigation* (No. 10-cv-00990-ER (D. Del.)) and *In re Rayonier Securities Litigation* (No. 3:14-cv-1395-TJC-JBT (M.D. Fla.)), securing large settlements in both.

Additionally, in 2016, Saxena White litigated a derivative action on behalf of Wells Fargo & Company ("Wells Fargo"), achieving a $320 million settlement and requiring Wells Fargo to improve its internal controls, reporting mechanisms, and risk management oversight. Saxena White represents that this was the largest insurer-funded monetary component of any shareholder derivative settlement in history. (No. 2:20-cv-04813, ECF No.24 at 26). Bernstein Litowitz won a $25 million recovery and effectuated corporate governance changes in a derivative action against FirstEnergy's Board of Directors in 2004. The two firms have also won numerous securities class actions. Furthermore, Proposed Liaison Counsel John Camillus, has "extensive experience representing plaintiffs in securities and derivative matters, and is familiar with Ohio corporate law and rules of procedure." *Kubiak*, 2011 WL 2443715, at *2.

This Court is also impressed by Saxena White and Bernstein Litowitz because their proposed leadership team, which is comprised of nine lawyers, includes five women and at least two minority lawyers. (*See* 2:20-cv-04813, ECF No. 24-1 at 107−117). The firms at large are also diverse: Saxena White is a federally-certified, minority- and women-owned firm, and both firms' associate groups consist of women and lawyers of color at above-average ratios. The Court looks favorably upon such compositions because, whenever possible, the Court strives to "appoint a diverse leadership team that is representative of the diversity of the [p]laintiffs." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 81742, at *26−27. The FirstEnergy shareholders who bring this action—including the constituents of St. Louis Employees, Electrical

18

Workers, Massachusetts Laborers, Philadelphia Pensions, and others—encompass a broad range of individuals who are diverse in ethnicity, race, and gender. Here, Lead Counsel will represent a large and heterogeneous group of investors, and the Court finds that the diverse team put forth by Saxena White and Bernstein Litowitz best reflects the plaintiffs' diversity and is best suited to act on their behalf.

Moreover, Philadelphia Pension's Proposed Lead Counsel and Liaison Counsel have less collective experience litigating derivative actions. Berger Montague has litigated securities class actions on behalf of public institutional investors, but it cites just two cases as examples of successfully prosecuting corporate governance and derivative actions. (*Compare* ECF No. 3-2 at 22–26 *with* ECF No. 3-2 at 14–15). Proposed Liaison Counsel O'Connor, Haseley & Wilhelm focuses its practice on Governmental, Administrative, Municipal, and Business Law.

Philadelphia Pensions argues that its proposed leadership structure is better poised to litigate the derivative action efficiently because it suggests one lead plaintiff and a single lead counsel to steer the case. Specifically, Philadelphia cites courts that have indicated a preference for a lead counsel consisting of one firm as "more efficient and effective." *See, e.g., In re Gas Natural, Inc.*, No. 1:13-cv-02805, 2014 WL 12591684, at *2 (N.D. Ohio Mar. 7, 2014) (finding the appointment of multiple law firms "poses the potential for confusion as well as duplicative services and an unnecessary increase in fees."); *Kubiak*, 2011 WL 2443715 at *2 (declining to appoint multiple attorneys because "it is essential to have one voice").

This Court takes seriously concerns about the potential for inefficient litigation and confusion but finds that they are not warranted in this case. Saxena White and Bernstein Litowitz have worked together to litigate shareholder derivative actions as co-lead counsel on at least three occasions and have achieved favorable results in each, as documented above. In light of their

19

demonstrated success in working together as co-lead counsel, this Court is confident that the two firms will be able to speak with one voice and coordinate appropriately to streamline procedure and avoid unnecessary expense.

The Court also notes that the Saxena White and Bernstein Litowitz have endeavored to be inclusive in this litigation with other institutional investors and their respective counsel, which is an important attribute for lead counsel. *In re Wendy's*, 2018 WL 6605394, at \*2; *see also In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 16-cv-05541, 2017 WL 130282, at \*3 (N.D. Cal. Jan. 12, 2017) (recognizing counsel's work in organizing a complex action with multiple complaints and law firms as rendering the "outset of this litigation more efficient for both the parties and the Court"). Massachusetts Laborers filed a joinder in support of the St. Louis / Electrical Workers Motions, agreeing "to work cooperatively at the direction of proposed Co-Lead Counsel" and requesting the Court to appoint Saxena White and Bernstein Litowitz as Co-Lead Counsel. (No. 2:20-05237, ECF No. 6 at 5—6). Similarly, Plaintiffs and individual investors Roberta Bloom, Joan Randell, and Arlene Pogolowitz also filed a joinder in support of the St. Louis / Electrical Workers Motions and agreed to work with proposed lead counsel cooperatively. (No. 2:20-04534, ECF No. 41 at 5). These agreements signify the parties' trust in Proposed Co-Lead Counsel's ability to speak and advocate for the entire group of plaintiffs and to litigate the case expeditiously.

On balance, the Court finds that Saxena White, Bernstein Litowitz, and Camillus are best suited to serve as Lead Counsel for this derivative action.

## IV. CONCLUSION

The Court finds that the Derivative Actions present the same questions of fact and law, and that consolidation supports judicial economy and efficiency. The Court also concludes Plaintiff St. Louis Employees and Electrical Workers are best suited to represent the shareholders in this case, and appoints their chosen counsel to serve as Co-Lead Counsel. Accordingly, the Court **GRANTS** Plaintiffs' motions to consolidate. (No. 2:20-04813, ECF No. 24; No. 2:20-05128, ECF No. 3; No. 2:20-05529, ECF No. 3); **GRANTS** St. Louis Employees' Motion to Appoint Co-Lead Plaintiffs and Appoint Co-Lead Counsel [#24]; **GRANTS** Electrical Workers' Motion to Appoint Co-Lead Plaintiffs and Appoint Co-Lead Counsel [#3]; and **DENIES** Philadelphia Pension's Motion for Appointment of Lead Plaintiff and Appointment of Lead Counsel [#3].

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATED: November 16, 2020**