IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, : : : : Plaintiff, : : v. : : CHARLES E. JONES, et al., : : : Defendants, : : FIRSTENERGY CORP., : : Nominal Defendant. : | Case No. 2:20-cv-04813 CHIEF JUDGE ALGENON L. MARBLEY Magistrate Judge Jolson |

**OPINION & ORDER**

This matter comes before the Court on Defendants' Motion to Stay the Proceedings. (ECF No. 48). Defendants request this Court to stay the proceedings in this consolidated shareholder derivative action until the Northern District of Ohio resolves a pending motion to dismiss the amended complaint in *Miller v. Anderson*, No. 5:20-cv-01743-JRA (N.D. Ohio). Co-Lead Plaintiffs in the case sub judice opposed Defendants' Motion to Stay. (ECF No. 53). For the reasons articulated below, Defendants' Motion to Stay is **DENIED**.

**I. BACKGROUND**

On July 17, 2020, the U.S. Attorney for the Southern District of Ohio brought a criminal action in this Court against Speaker of the Ohio House of Representatives, Larry Householder, and

four other individuals (the "Criminal Action"),[1] who were charged for their involvement in orchestrating a $60 million bribery and racketeering scheme with FirstEnergy Corp. ("FirstEnergy" or the "Company"). After the Criminal Action was announced, FirstEnergy's stock price dropped by 45%, eliminating billions of dollars of shareholder value. In addition to reputational damage and stock value losses, experts estimate that the Company faces $500 million in future fines and penalties.

In response, various plaintiffs filed a wave of lawsuits in federal court in connection with the bribery scheme, falling under three main categories. First, between July 27 and August 5, 2020, the Company's customers brought three actions in this Court for alleged violations of the Racketeer Influenced and Corrupt Organizations Act (the "Ratepayer Cases"). Second, on July 28, 2020, FirstEnergy shareholder Diane Owens filed a securities fraud action in this Court against the Company, seeking damages for the losses the shareholders incurred in connection with the bribery scheme (the "Securities Action").[2] Third, FirstEnergy shareholders also initiated eleven separate federal derivative actions to hold FirstEnergy officers and directors liable for the harm to the Company.[3] The first of these, *Miller v. Anderson* ("*Miller*"), was filed in the Northern District of Ohio on August 7, 2020. Subsequently, seven additional shareholder actions were filed in this Court, between September 1 and November 12, 2020.

---

[1] *United States of America v. Householder*, Case No. 1:20-cr-00077 (S.D. Ohio).

[2] Later, on August 21, 2020, FirstEnergy shareholder Chana Frand filed an additional securities fraud action in the Southern District of Ohio against the Company. *Frand v. FirstEnergy Corp.*, No. 2:20-cv-04287 (S.D. Ohio), ECF No. 1. This Court consolidated the two cases on November 23, 2020. *Owens v. FirstEnergy Corp.*, No. 2:20-cv-03875, 2020 WL 6873421, at *1 (S.D. Ohio Nov. 23, 2020).

[3] Two additional derivative actions were filed in the Summit County Court of Common Pleas: *Gendrich v. Anderson*, CV-2020-07-2017 (Ohio Comm. Pleas filed July 26, 2020) and *Sloan v. Anderson*, CV-2020-08-2161 (Ohio Comm. Pleas filed July 31, 2020).

Of the ten Southern District of Ohio derivative actions, three were later voluntarily dismissed. This Court consolidated the remaining seven derivative actions (the "Consolidated Action"); appointed Employees Retirement System of the City of St. Louis ("St. Louis Employees") and Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Electrical Workers") as Co-Lead Plaintiffs; and appointed their chosen counsel as Co-Lead Counsel on November 16, 2020. *Bloom v. Anderson*, No. 2:20-cv-04534, 2020 WL 6710429, at *2 (S.D. Ohio Nov. 16, 2020).

St. Louis Employees and Electrical Workers moved to intervene in *Miller* on October 5, 2020, seeking to transfer it to the Southern District of Ohio. (ECF No. 30-2). The plaintiff in *Miller* filed a Notice of Non-Opposition to the Motion to Transfer, but Defendants opposed it. (ECF No. 30-3). Defendants also filed a motion to dismiss the amended complaint in *Miller* for failure to plead demand futility on October 30, 2020, and both parties responded. Defendants' motion is now ripe for review and is still pending in the Northern District of Ohio, before Judge John R. Adams.

Defendants now move to stay the proceedings before this Court until after Judge Adams rules on the motion to dismiss in the Northern District, citing the first-to-file rule and judicial economy. (ECF No. 48-1 at 2). St. Louis Employees and Electrical Workers oppose Defendants' motion. (ECF No. 53).

## II. LAW & ANALYSIS

Defendants move to stay this case on two grounds: the first-to-file rule, and the general considerations that courts undertake to determine whether to grant a motion to stay. The Court considers each of these arguments in turn below.

**A. First-to-File Rule**

1. Standard

Under the first-to-file rule, "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007). This well-established doctrine serves three important purposes: (1) it "conserves judicial resources by minimizing duplicative or piecemeal litigation"; (2) it "protects the parties and the courts of the possibility of conflicting results"; and (3) it "encourages comity among federal courts of equal rank." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016); *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 Fed. App'x 433, 437 (6th Cir. 2001).

The "most basic aspect" of the first-to-file rule "is that it is discretionary." *McNamee v. Nationstar Mortg.,* LLC, No. 2:14-CV-1948 ,2015 WL 8381427, at *3 (S.D. Ohio Dec. 10, 2015) (quoting *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)). Therefore, even when a federal court determines that the rule applies, the court "may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit." *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997).

2. Application of Standard

In the Sixth Circuit, courts apply the first-to-file rule by evaluating three factors: "(1) the chronology of the events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Honaker v. Wright Bros. Pizza*, No. 2:18-CV-1528, 2019 WL 4316797, at *2 (S.D. Ohio Sept. 11, 2019) (quoting *Baatz*, 814 F.3d at 789). Meeting these factors, however, does not end the inquiry. *Id*. The Court must also "determine whether any equitable considerations,

such as evidence of 'inequitable conduct, bad faith, anticipatory suits, [or] forum shopping,' merit not applying the first-to-file rule in a particular case." *Id.* (quoting *Baatz*, 814 F.3d at 789).

First, for the chronology of events, the Court looks to the filing dates of the complaints. *Baatz*, 814 F.3d at 790. Here, Co-Lead Plaintiffs and Defendants agree that *Miller* was filed approximately three weeks before the next derivative action was filed in the Southern District of Ohio.[4]

Second, there is no doubt that the cases involve substantially similar parties. The plaintiffs in each action are FirstEnergy shareholders, and both cases bring claims against directors and officers of FirstEnergy and list the Company as a nominal Defendant. Although the case currently before this Court includes seven additional Defendants that are not party to the *Miller* case, the parties are not required to be "perfectly identical" but must only "substantially overlap." *Baatz*, 814 F.3d at 790 (internal quotations omitted). Therefore, the second factor is satisfied.

Third, there is also no doubt that the cases involve substantially overlapping issues and claims. Both concern allegations that Defendants breached fiduciary duties and state and federal laws. As with the second factor above, "the issues need only to substantially overlap" in order to apply the first-to-file rule." *Baatz*, 814 F.3d at 791. The third factor is also satisfied, so the first-to-file rule presumptively applies here.

---

[4] Co-Lead Plaintiffs argue that the *Miller* Securities Action, which has been deemed related to the derivative actions, should factor into the chronology for purposes of determining which case was first to file. The Securities Action was filed on July 28, 2020, before *Miller* was filed on August 7, 2020, and before the earliest consolidated derivative action in the Southern District was filed on September 1, 2020. (*Bloom v. Anderson*, No. 2:20-cv-04534 (S.D. Ohio), ECF No. 1). The Court does not adopt this approach, however, because the Securities Action does not satisfy the second and third factors of the first-to-file test. *See Baatz*, 814 F.3d at 789 (finding that first-to-file rule applies to "actions involving nearly identical parties and issues [that] have been filed in two different district courts").

Although the *Baatz* factors support applying the first-to-file rule, there is no "mandate directing wooden application of the rule without regard to extraordinary circumstances." *Id.* at 792. The Court must also determine "whether there are any equitable concerns that weigh against applying it," including 'inequitable conduct, bad faith, anticipatory suits, [or] forum shopping," that counsel against applying the rule. *Baatz*, 814 F.3d at 789 (quoting *Certified Restoration*, 511 F.3d at 551−52).

Both parties accuse the other of engaging in a species of forum shopping. Co-Lead Plaintiffs argue that Defendants are "plaintiff-shopping" by opposing the motion to transfer *Miller* to the Southern District of Ohio. Specifically, Co-Lead Plaintiffs claim Defendants are avoiding transfer from the Northern District because they would prefer to litigate the "relatively inferior complaint" in *Miller*. (ECF No. 53 at 12). Defendants, on the other hand, contend that Co-Lead Plaintiffs are "judge shopping" because they opted to file in the Southern District of Ohio rather than in the Northern District, after *Miller* and the Securities Action had already been filed and assigned to specific courts.

Neither of these actions encompasses the type of forum shopping the first-to-file rule aims to prevent. Forum shopping occurs "when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice." *Dress v. Capital One Bank (USA), N.A.*, 368 F. Supp. 3d 178, 184 (D. Mass. 2019) (quoting *EMC Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125, 128 (D. Mass 2012)). Other litigation decisions, such as those at issue here, "likely [have] some tactical advantages" in one court over another, but that reality alone "does not necessarily suggest an improper motive." *Baatz*, 814 F.3d at 793. Here, the parties each have legitimate strategic reasons for their respective courses of action, and each

6

forum is substantially connected to the facts of the case before it. Thus, the Court does not find that an improper or unethical motivation underlies either party's course of action.

Nevertheless, there are other equitable considerations that persuade the Court to permit the cases in the Southern District to move forward without issuing a stay. Judicial economy and efficiency are key principles of the first-to-file doctrine. *See Buffalo Wild Wings, Inc. v. BW Rings, LLC*, No. 2:10-cv-335, 2010 WL 4919759, at *1 (S.D. Ohio Nov. 29, 2010). Enabling "one district court [to] preside over several actions all related to the same set of events is clearly preferable" because doing so facilitates economy and efficiency. *Bui v. Armes*, No. 3:14CV428, 2014 WL 4983670, at *5 (N.D. Ohio Oct. 6, 2014). Here, this Court has been assigned to oversee both the Securities Action (comprised of two cases), which is not subject to any pending motion to stay, and the Consolidated Action (comprised of seven individual derivative cases). The Ratepayer Cases and the Criminal Action against Larry Householder are also before the Southern District of Ohio. Indeed, *Miller* is the sole federal case that is not before the Southern District.

Defendants argue that staying the Consolidated Action until after the *Miller* court decides the motion to dismiss "would avoid wasting judicial and party resources and streamline common issues." (ECF No. 55 at 2). This argument incorrectly assumes that the *Miller* decision will foreclose future decisions in the Consolidated Action; the Northern District's resolution of Defendants' Motion to Dismiss in *Miller* may not constrain this Court's determination of a motion to dismiss the Consolidate Action Complaint. The *Miller* Complaint, even in its amended form, offers 48 pages of allegations, whereas the Co-Lead Plaintiffs' Complaint is 118 pages already, and they may include additional detail in their consolidated complaint, which is yet to be filed. Hypothetically speaking, the *Miller* court could dismiss *Miller* for failing to state a claim, while at the same time this Court could reach the opposite conclusion due to differences between the two

7

complaints. In light of these circumstances, the Court finds that permitting the Consolidated Action to continue unimpeded best comports with principles of efficiency.

### B. Other Considerations

District courts have "the inherent power to stay proceedings based on [their] own authority to manage [their] docket[s] efficiently." *Ohio Willow Wood Co. v. Alps S., LLC*, No. 2:13-cv-860, 2014 WL 1872375, at *1 (S.D. Ohio May 8, 2014) (quoting *Ferrell v. Wyeth-Ayerst Labs., Inc.*, No. 1:01-CV-447, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005)). Even so, courts "must tread carefully in granting a stay of proceedings since a party has the right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Ct.*, 565 F.2d 393, 396 (6th Cir. 1977). On a motion to stay, "[t]he movant bears the burden of showing both a need for delay and that neither the other party nor the public will suffer any harm from the entry of the order." *Ohio Willow Wood Co.*, 2014 WL 1872375, at *2 (quoting *Ohio Envtl. Council*, 565 F.2d at 396). The movant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("Only in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law of both.").

The Court finds that Defendants have not met their burden to demonstrate they need a stay or that they will experience hardship or inequity if the Consolidate Action proceeds without one. Instead, Defendants propose that a stay is necessary to avoid duplicative litigation, and that *Miller* should proceed because it is more developed. But such duplicative litigation, to the extent that it exists, is Defendants' own doing. They could avoid this possibility either by supporting or not

8

opposing the transfer of *Miller* to the Southern District, just as the *Miller* plaintiff did. Accordingly, the Court declines to issue the stay.

## IV. CONCLUSION

For the reasons set for above, Defendants' Motion to Stay [#48] is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: December 21, 2020**

9