**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, *et al*., | |
| Plaintiffs, | |
| v. | Case No. 2:20-cv-04813-ALM-KAJ |
| CHARLES E. JONES, *et al.*, | Chief Judge Algenon L. Marbley |
| Defendants, | Magistrate Judge Kimberly A. Jolson |
| and | |
| FIRSTENERGY CORP., | |
| Nominal Defendant. | |

**MEMORANDUM IN SUPPORT OF**
**THE FIRSTENERGY DEFENDANTS' MOTION TO DISMISS**
**THE CONSOLIDATED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Geoffrey J. Ritts (0062603), Trial Attorney
Robert S. Faxon (0059678)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: gjritts@jonesday.com
Email: rfaxon@jonesday.com

Marjorie P. Duffy (0083452)
Jordan M. Baumann (0093844)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Telephone: (614) 469-3939
Facsimile: (614) 461-4198
Email: mpduffy@jonesday.com
Email: jbaumann@jonesday.com

*Attorneys for Defendants Michael J.
Anderson, Steven J. Demetriou, Julia L.
Johnson, Donald T. Misheff, Thomas N.
Mitchell, James F. O'Neil III, Christopher D.
Pappas, Sandra Pianalto, Luis A. Reyes,
Leslie M. Turner, Steven E. Strah, James F.
Pearson, K. Jon Taylor and Nominal
Defendant FirstEnergy Corp.*

# TABLE OF CONTENTS

**Page**

**SUMMARY OF THE ARGUMENT PRESENTED** ................................................................ 1

**BACKGROUND** ................................................................ 2

    A.    FirstEnergy And Its Board Of Directors ................................................................ 2

    B.    FirstEnergy's Participation In The Legislative Process ................................ 3

    C.    The Government's Complaint Against Others For Their Alleged Misuse Of Generation Now's Funds ................................................................ 4

    D.    Other Shareholders File Derivative Complaints And Make Pre-Suit Demands On The Board, And Plaintiffs File This Complaint ................................ 5

**ARGUMENT** ................................................................ 6

**I.**    **The Court Should Dismiss The Complaint Because It Fails To Plead A Section 14(a) Claim And Thus Does Not Support Jurisdiction Over Any State-Law Claims.** ................................................................ 6

The only basis for federal jurisdiction is the claim under Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a-9. That claim must be dismissed under Rule 12(b)(6), and the Court should decline to exercise supplemental jurisdiction over the remaining state-law claims. *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)

    A.    The Complaint Fails To Plead A Viable Section 14(a) Claim ................................ 6

The Complaint fails to plead causation, falsity, or scienter, all of which are necessary elements to plead a claim for violation of Section 14(a) a. *Local 295/Local 851 IBT Emp'r Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp*, 731 F. Supp. 2d 689, 716 (S.D. Ohio 2010); *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 489, 507 n.3 (6th Cir. 2013). As to causation: Courts reject the theory that omissions in proxies, by permitting directors to win re-election and thus indirectly lead to loss through mismanagement, are sufficient to plead causation. *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992). Advisory votes likewise do not suffice to plead causation because they are not "legally required to authorize the action proposed." *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991). As to falstiy: the Complaint never pleads illegal conduct with particularity, *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 465 (2d Cir. 2019), as required under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1). As to scienter: the Complaint never even attempts to plead scienter, through required by Sixth Circuit precedent. *Omnicare*, 719 F.3d at 507 n.3.

    B.    This Court Should Decline To Exercise Supplemental Jurisdiction Over The State-Law Claims ................................................................ 14

# TABLE OF CONTENTS
(continued)

Page

"It is a clear rule of this circuit that if a plaintiff has not stated a federal claim, his pendent state law claims should be dismissed." *Perry v. Southeastern Boll Weevil Eradication Fdn.*, 154 F. App'x 467, 478 (6th Cir. 2005); *Musson*, 89 F.3d at 1254-55. When a case has progressed only to the motion-to-dismiss stage, no circumstances justify departing from this rule. *E.g.*, *Norris v. Glassdoor, Inc.*, 2018 WL 3417111, at *7 (S.D. Ohio Jul. 13, 2018). Federal courts routinely dismiss supplemental state-law claims when a Section 14(a) claim is dismissed, and this Court has followed suit. *Berlin Fin., Ltd. v. MPW Indus. Servs. Grp., Inc.*, 2008 WL 161309, at *10 (S.D. Ohio Jan. 15, 2008).

II. The Court Should Dismiss The Complaint Because Plaintiffs Failed To Make A Pre-Suit Demand. .................................................................................................... 17

Derivative plaintiffs who have not made a pre-suit demand must demonstrate with particularized facts that the board of directors would not have been able to exercise its business judgment in response to a demand, or else they lack standing to sue. Fed. R. Civ. P. 23.1; *Stanley v. Arnold*, 2012 WL 5269147, at *4 (S.D. Ohio Oct. 23, 2012); *In re Ferro Corp. Deriv. Litig.*, 511 F.3d 611, 618 (6th Cir. 2008) ("Ferro II"). The Complaint does not plead particularized facts establishing that a majority of the board are interested or lack independence, and must be dismissed.

A. The Demand Requirement Is Strictly Enforced. ................................................. 18

To show demand futility, a plaintiff must allege particularized facts, on a director-by-director basis, showing that at least half of the directors—here, six out of eleven directors—either were interested or were not independent of someone with a disqualifying interest. *Stanley*, 2012 WL 5269147, at *4. The standard "differs substantially from the principles of notice pleading." *In re Ferro Corp. Deriv. Litig.*, 2006 WL 2038659, at *3 (N.D. Ohio Mar. 21, 2006) ("Ferro I").

B. The Complaint Fails To Plead Demand Futility With Particularity. ................... 20

Plaintiffs' excuses for their failure to make a demand have been rejected because they "could apply to *any* board of directors at any corporation," *Ferro II*, 511 F.3d at 619, and their "highly generalized" allegations "provide no specific facts indicating a nexus between any individual committee member and any inappropriate action or failure to act," *id.* at 622.

1. Allegations About "Director Defendants" Are Insufficient.................... 20

By lumping all the directors into an undifferentiated wrongdoing mass of "Director Defendants," Plaintiffs have failed to plead with the particularity demanded by Rule 23.1. This failure is an independent basis for dismissal. *Stanley*, 2012 WL 5269147, at *7; *Davis v. DCB Fin. Corp.*, 259 F. Supp. 2d 664, 671 (S.D. Ohio 2003).

2. Allegations About Committee Service Do Not Excuse Demand ........... 22

## TABLE OF CONTENTS
(continued)

Page

The allegations about committee service are insufficient.  Courts "repeatedly reject allegations of membership on committees, and recitation of the roles of the committees, as establishing a likelihood of liability."  *Monday*, 2011 WL 5974664, at *7; *Stanley*, 2012 WL 5269147, at *6.

3.      Conclusory Assertions Regarding A Failed Shareholder Proposal Do Not Demonstrate Demand Futility ..................................................... 22

The allegation that demand is excused because six Directors recommended voting against a shareholder proposal regarding lobbying policies is insufficient because the Complaint never ties this recommendation to any suspicion by those Directors of any illegal bribery scheme or pleads particularized facts showing that the reasons for the recommendation were anything but genuine and *bona fide*.  *Robinson Family Trust v. Greig*, 2013 WL 1943330, at *5 (N.D. Ohio May 10, 2013); *Stanley*, 2012 WL 5269147, at *7.

4.      Naming All The Directors As Defendants Does Not Excuse Demand ................................................................................................. 24

The assertion that demand is excused because all Directors have been named as defendants has been consistently rejected.  *Ferro II*, 511 F.3d at 619; *Robinson Family Tr.*, 2013 WL 1943330, at *6; *Stanley*, 2012 WL 5269147, at *6 n.13; *Ferro I*, 2006 WL 2038659, at *5.  The Complaint's conclusory assertion that all Directors participated in the wrongdoing is never backed up by particularized facts showing any Outside Director took any action "with deliberate intent to cause injury to the corporation" or "reckless disregard for the best interests of the corporation."  R.C. § 1701.59(E).  The Complaint contains no "particular facts whatsoever to establish what roles, if any, the Defendants had in causing and/or covering up" the alleged wrongdoing.  *Davis*, 259 F. Supp. 2d at 671; *Ferro I*, 2006 WL 2038659, at *6.  Political contributions are presumptively protected by the First Amendment.  *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014); *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 364 (2010); *FTC v. Super. Ct. Trial Lawyers Ass'n*, 493 U.S. 411, 426 (1990).

**TABLE OF CONTENTS**
(continued)

Page

The Complaint never pleads particularized facts suggesting that the Directors knew how other people were using Generation Now's funds, much less that any such use was improper or illegal. A complaint does not plead demand futility even when it alleges specific facts showing that a company's own "*employees* acted with conscious disregard to compliance with [a federal statute], regulation, and the Company's internal controls." *Stanley*, 2012 WL 5269147, at *6; *see also Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008); *Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*, 2016 WL 4076369, at *12 (Del. Ch. Aug. 1, 2016). The Complaint never identifies any "red flags" that should have alerted the Directors to illegality, and "courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so." *Stanley*, 2012 WL 5269147, at *6 & n.16.

5.     Allegations Of Executive Compensation Do Not Show Demand Futility .................................................................................................... 32

The allegation that demand is excused as to certain Directors because they approved an executive-compensation system that rewarded executives for based on annual performance does not show deliberate intent to injure the Company or reckless disregard for its interests. R.C. § 1701.59(E). Directors have wide discretion over compensation, *Brehm v. Eisner*, 746 A.2d 244, 262 n.56 (Del. 2000), and the Complaint alleges no facts showing the Directors adopted performance-based compensation for any reason other than to align officers' "interests with those of the stockholders," *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *14 (Del. Ch. Oct. 12, 2011).

6.     Serving On Other Boards That Contributed To Householder Does Not Excuse Demand ................................................................................ 33

The allegation that demand is excused as to certain Directors because they held or hold positions in other companies falls well short of showing the presumption that the Directors can "make unbiased, independent business judgments about whether it would be in the corporation's best interests to file the action does not exist in this case," *Ferro II*, 511 F.3d at 618. The contributions were small, nothing is alleged about any Director's role in the payments, and the payments do not show a disqualifying personal interest or that any Director was dominated or controlled by anyone.

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Advisors G.P. v. Berman*,
  2014 WL 12772264 (C.D. Cal. Sept. 16, 2014) ......................................................10

*Albano v. Columbus Bd. of Educ.*,
  2015 WL 1221347 (S.D. Ohio Mar. 17, 2015) (Marbley, C.J.) .............................16

*Berlin Fin., Ltd. v. MPW Indus. Servs. Grp., Inc.*,
  2008 WL 161309 (S.D. Ohio Jan. 15, 2008) ...........................................10, 12, 15

*Bluestone v. Sadove*,
  2019 U.S. Dist. LEXIS 62207 (E.D. Tenn. Mar. 14, 2019)....................................12

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) ..............................................................................30, 33

*Brown v. Burch, Porter, & Johnson, PLLC*,
  2016 WL 9448027 (6th Cir. Nov. 21, 2016)...........................................................15

*Carlson v. Rabkin*,
  789 N.E.2d 1122 (Ohio Ct. App. 2003)..................................................................20

*Citizens United v. FEC*,
  558 U.S. 310 (2010)...............................................................................................4, 28

*Davis v. DCB Fin. Corp.*,
  259 F. Supp. 2d 664 (S.D. Ohio 2003) ......................................................... passim

*DCML LLC v. Danka Bus. Sys. PLC*,
  2008 WL 5069528 (S.D.N.Y. Nov. 26, 2008).......................................................16

*Desimone v. Barrows*,
  924 A.2d 908 (Del. Ch. 2007)................................................................................29

*Doe v. Malkov*,
  2002 WL 31928645 (Ohio Ct. App. Dec. 31, 2002).............................................20

*Drage v. Procter & Gamble*,
  119 Ohio App. 3d 19 (1st Dist. 1997).....................................................................18

*Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.*,
    594 F.3d 783 (11th Cir. 2010) ...................................................................................8

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) ...................................................................................................12

*Fambough-McCoy v. White Castle Sys., Inc.*,
    2017 WL 3085685 (S.D. Ohio Jul. 20, 2017) .........................................................15

*First Nat'l Bank of Bos. v. Bellotti*,
    435 U.S. 765 (1978) ...................................................................................................27

*FTC v. Super. Ct. Trial Lawyers Ass'n*,
    493 U.S. 411 (1990) ...............................................................................................4, 28

*Gaff v. Fed. Deposit Ins. Corp.*,
    814 F.2d 311 (6th Cir. 1987) ....................................................................................14

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019)................................................................................11, 12

*Gen. Elec. Co. v. Cathcart*,
    980 F.2d 927 (3d Cir. 1992)...............................................................................8, 9, 15

*Gendrich v. Anderson, et al.*,
    No. CV 2020-07-2107 (filed Jul. 26, 2020) .............................................................5

*Guo v. Mahaffy*,
    2020 WL 5798531 (D. Colo. Sept. 29, 2020) .........................................................11

*Hastey ex rel. YRC Worldwide, Inc. v. Welch*,
    449 F. Supp. 3d 1053 (D. Kan. 2020) ..................................................................9, 15

*Henkel v. Aschinger*,
    962 N.E.2d 395 (Ohio Ct. C.P. 2012) ......................................................................20

*Hogan v. Pilgrim's Pride Corp.*,
    2018 WL 1316979 (D. Colo. Mar. 14, 2018) ..........................................................11

*Hulliung v. Bolen*,
    548 F. Supp. 2d 336 (N.D. Tex. 2008) ......................................................................8

*In re Browning-Ferris Indus., Inc. S'holder Deriv. Litig.*,
    830 F. Supp. 361 (S.D. Tex. 1993), *aff'd sub nom. Cohen v. Ruckelshaus*, 20
    F.3d 465 (5th Cir. 1994) ...........................................................................................8

*In re Citigroup, Inc. S'holder Deriv. Litig.*,
    2009 WL 10696530 (S.D.N.Y. Aug. 25, 2009)........................................................31

*In re Citigroup Inc. S'holder Deriv. Litig.*,
    964 A.2d 106 (Del. Ch. 2009)...................................................................................30

*In re EveryWare Global, Inc. Sec. Litig.*,
    175 F. Supp. 3d 837 (S.D. Ohio 2016) (Marbley, C.J.)................................2, 11, 12

*In re Ferro Corp. Deriv. Litig.*,
    2006 WL 2038659 (N.D. Ohio Mar. 21, 2006), *aff'd*, 511 F.3d 611 (6th Cir.
    2008) ................................................................................................................ passim

*In re Ferro Corp. Deriv. Litig.*,
    511 F.3d 611 (6th Cir. 2008) ........................................................................... passim

*In re Gen. Motors Co. Deriv. Litig.*,
    2015 WL 3958724 (Del. Ch. June 26, 2015)....................................................30, 32

*In re Goldman Sachs Grp., Inc. S'holder Litig.*,
    2011 WL 4826104 (Del. Ch. Oct. 12, 2011) ...........................................................33

*In re Goldman Sachs Mortg. Servicing S'holder Deriv. Litig.*,
    42 F. Supp. 3d 473 (S.D.N.Y. 2012).......................................................................30

*In re Goodyear Tire & Rubber Co. Deriv. Litig.*,
    2007 WL 43557 (N.D. Ohio Jan. 5, 2007)...................................................... passim

*In re GoPro, Inc.*,
    2020 WL 2036602 (Del. Ch. Apr. 28, 2020)......................................................26, 32

*In re iBasis, Inc. Deriv. Litig.*,
    532 F. Supp. 2d 214 (D. Mass. 2007) ................................................................8, 16

*In re JPMorgan Chase Deriv. Litig.*,
    2014 WL 5430487 (E.D. Cal. Oct. 24, 2014) .........................................................13

*In re Keithley Instruments, Inc. Deriv. Litig.*,
    599 F. Supp. 2d 875 (N.D. Ohio 2008)......................................................14, 19, 24

*In re Keithley Instruments, Inc., Deriv. Litig.*,
  599 F. Supp. 2d 908 (N.D. Ohio 2009)....................................................................19

*In re Lubrizol S'holders Litig.*,
  79 N.E.3d 579 (Ohio Ct. App. 2017).....................................................................20

*In re Oracle Corp. Deriv. Litig.*,
  2011 WL 5444262 (N.D. Cal. Nov. 9, 2011) ........................................................30

*In re Pattern Energy Grp. Sec. Litig.*,
  2021 WL 311257 (D. Del. Jan. 28, 2021)..............................................................15

*In re PayPal Holdings, Inc. S'holder Deriv. Litig.*,
  2018 WL 466527 (N.D. Cal. Jan. 18, 2018)............................................................9

*Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v.
  Omnicare, Inc.*,
  719 F.3d 498 (6th Cir. 2013) ................................................................................12

*Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v.
  Omnicare, Inc.*,
  583 F.3d 935 (6th Cir. 2009) ................................................................................10

*Karp v. SI Fin. Grp., Inc.*,
  2020 WL 1891629 (D. Conn. Apr. 16, 2020) ........................................................16

*Kelley v. Rambus, Inc.*,
  2008 WL 5170598 (N.D. Cal. Dec. 9, 2008), *aff'd*, 384 F. App'x 570 (9th Cir.
  2010) .....................................................................................................................14

*Knollenberg v. Harmonic, Inc.*,
  152 F. App'x 674 (9th Cir. 2005) ..........................................................................13

*Kugelman v. PVF Cap. Corp.*,
  972 F. Supp. 2d 993 (N.D. Ohio 2013)..................................................................16

*Local 295/Local 851 IBT Emp'r Grp. Pension Tr. & Welfare Fund v. Fifth Third
  Bancorp*,
  731 F. Supp. 2d 689 (S.D. Ohio 2010) ...................................................................7

*Matthews v. Owens*,
  2015 WL 5380857 (S.D. Ohio Sept. 26, 2012) (Marbley, C.J.)..............................16

*McCutcheon v. FEC*,
    572 U.S. 185 (2014)........................................................................................27

*Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*,
    2016 WL 4076369 (Del. Ch. Aug. 1, 2016), *aff'd*, 158 A.3d 449 (Del. 2017) ......................29

*Miller v. Anderson, et al.*,
    No. 5:20-cv-01743-JRA (N.D. Ohio filed Aug. 7, 2020) ..........................................................5

*Monday v. Meyer*,
    2011 WL 5974664 (N.D. Ohio Nov. 29, 2011) ...................................................18, 19, 22, 26

*Musson Theatrical, Inc. v. Federal Exp. Corp.*,
    89 F.3d 1244 (6th Cir. 1996) ..................................................................................15, 16, 17

*NAACP v. Alabama*,
    357 U.S. 449 (1958)..........................................................................................................4

*NAACP v. Button*,
    371 U.S. 415 (1963)..........................................................................................................3

*NorCal Tea Party Patriots v. Internal Revenue Serv.*,
    2016 WL 8202966 (S.D. Ohio Nov. 22, 2016)....................................................................3

*Norris v. Glassdoor, Inc.*,
    2018 WL 3417111 (S.D. Ohio Jul. 13, 2018) (Marbley, C.J.) .............................................15

*Packard v. Farmers Ins. Co. of Columbus Inc.*,
    423 F. App'x 580 (6th Cir. 2011) .....................................................................................17

*Perry v. Southeastern Boll Weevil Eradication Fdn.*,
    154 F. App'x 467 (6th Cir. 2005) .....................................................................................14

*Prater v. Livingston Ave. Child Care, LLC*,
    2015 WL 1439322 (S.D. Ohio Mar. 27, 2015) (Marbley, C.J.) ...........................................16

*Pullins v. Harmer*,
    2010 WL 2299152 (Ohio Ct. App. June 9, 2010)...............................................................20

*Robinson Family Trust v. Greig*,
    2013 WL 1943330 (N.D. Ohio May 10, 2013)........................................................19, 23, 24

*Stanley v. Arnold*,
    2012 WL 5269147 (S.D. Ohio Oct. 23, 2012)............................................................. passim

*Stanley v. Arnold*,
   531 F. App'x 695 (6th Cir. 2013) ...................................................................18, 19

*Swanson v. Weil*,
   2012 WL 4442795 (D. Colo. Sept. 26, 2012) ........................................................10

*Virginia Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) ..................................................................................................9

*Wood v. Baum*,
   953 A.2d 136 (Del. 2008) .........................................................................................29

**STATUTES AND RULES**

15 U.S.C. § 78n-1 ...........................................................................................................9

15 U.S.C. § 78n(a)(1) .....................................................................................................7

15 U.S.C. § 78u-4(b)(1) ...............................................................................................10

15 U.S.C. § 78u-4(b)(2)(A) ..........................................................................................12

15 U.S.C. § 78u-4(b)(3)(A) ..........................................................................................13

28 U.S.C. § 1367(c)(3) ..................................................................................................17

R.C. § 1701.59 (1986 Committee Comment) ...............................................................25

R.C. § 1701.59(A) .........................................................................................................17

R.C. § 1701.59(E) ...........................................................................................25, 26, 33

Fed. R. Civ. P. 12(b)(6)..............................................................................................6, 15

Fed. R. Civ. P. 23.1 ............................................................................................... passim

## SUMMARY OF THE ARGUMENT PRESENTED

The first question before the Court is whether its jurisdiction has been properly invoked. As Section I explains, *infra* 6-17, the sole basis for federal jurisdiction asserted in the Complaint is an ill-pled claim under Section 14(a) of the Exchange Act. That claim collides with an impenetrable wall of precedent governing the pleading of causation, and the Complaint also fails to plead falsity and scienter with the level of particularity demanded by the Private Securities Litigation Reform Act. Because the only federal claim fails, the Court should decline to exercise supplemental jurisdiction over the state-law claims.

Even if there were a proper jurisdictional basis for the state-law claims, they would fail, because Plaintiffs have not pled demand futility as required by Rule 23.1. Under Ohio law, the board of directors—not any individual shareholder—has the authority to determine whether, when, and how the corporation will conduct litigation. If a shareholder believes the corporation should pursue a legal claim, the shareholder must make a pre-suit demand on the board. The pre-suit demand requirement allows the board to exercise its statutory authority and business judgment to determine whether pursuing the claim is in the corporation's best interest and, if so, how (*e.g.*, by filing a lawsuit, or by pursuing resolution outside of litigation).

As Section II explains, *infra* 17-34, Plaintiffs here did not make a pre-suit demand on the FirstEnergy board before filing this action, and the Complaint provides no valid excuse for their failure to adhere to this requirement. Under Ohio law, Plaintiffs therefore lack standing to sue on the Company's behalf, and the Complaint must be dismissed under Rule 23.1.

This Court and others applying Ohio law repeatedly have rejected the reasons Plaintiffs offer for their failure to make a pre-suit demand. To show that a pre-suit demand was excused, the Complaint must set forth particularized facts showing that at least half the directors would have been unable to exercise their business judgment in evaluating a demand. That showing

-1-

requires specific facts, as to each director, that he or she has a personal financial interest in the matters at issue or is beholden to someone with such an interest. The Complaint falls well short of that mark: the Complaint offers only conclusory "excuses" that courts, including this Court, repeatedly have rejected. The Court should dismiss it.

## BACKGROUND

### A. FirstEnergy And Its Board Of Directors

FirstEnergy Corp. ("FirstEnergy" or the "Company"), the nominal defendant for whose purported benefit Plaintiffs sue, is an Ohio corporation based in Akron. (¶ 21.)[1] FirstEnergy and its subsidiaries transmit, distribute, and generate electricity, serving more than six million customers in the Midwest and Mid-Atlantic regions. (*Id.*; Ex. A, 2019 10-K at 1.) Like many other energy companies, FirstEnergy monitors legislative developments and participates in the legislative and electoral process to further the interests of the Company and its shareholders. (*See, e.g.*, Ex. A, 2019 10-K at 5-6.)

The individual defendants are current and former members of FirstEnergy's board of directors (¶¶ 22-32) and certain current and former officers of the Company (¶¶ 22, 34-39). When the initial complaint in this action was filed, the board had eleven members: ten non-employee directors (¶¶ 23-32) (together, the "Outside Directors") and the Company's then-chief executive officer (¶ 22) (together with the "Outside Directors," the "Directors"). (Ex. B, 2020 Proxy at 16-17.)

---

[1] Paragraph references ("¶__") are to the Consolidated Verified Shareholder Derivative Complaint (the "Complaint"), the well-pled factual allegations of which we accept as true solely for purposes of this motion. Exhibits ("Ex. __") are attached to the Declaration of Geoffrey J. Ritts submitted in support of this motion. *See, e.g.*, *In re EveryWare Global, Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 850 (S.D. Ohio 2016) (Marbley, C.J.) ("In ruling on a motion to dismiss in a securities fraud case," the Court "may consider the full text of the SEC filings, prospectus, analysts' reports and statements integral to the complaint, even if not attached."). All internal citations are omitted.

### B.  FirstEnergy's Participation In The Legislative Process

FirstEnergy has long advocated for policies supportive of Ohio's nuclear-power resources.  In 2017, the Company disclosed its efforts to obtain legislative aid in preserving two nuclear power plants controlled by its then-nuclear-energy affiliate.  (¶¶ 60-61.)  In early 2017, the Company noted its hope for "legislation for a zero-emission nuclear program" (¶ 61) to "preserve valuable nuclear generation" and thousands of jobs at the two plants.  (Ex. C, Q4 2016 Earnings Call Transcript.)  Such legislation would preserve "jobs, economic growth, fuel diversity, price stability, and reliability and grid security for the region."  (*Id*.)

After zero-emission nuclear legislation failed to pass in 2017, the Company continued to search for a path forward on nuclear-power legislation.  (¶¶ 80, 103.)  Beginning in 2017 and through 2018, FirstEnergy "entities" allegedly began making contributions to a tax-exempt entity called Generation Now to promote House Bill 6 ("HB 6") (¶¶ 90-92; *see also* ¶¶ 63-64), which would, among other things, create an Ohio Clean Air Program that would provide funding for operators of nuclear and renewable resources (¶ 103).  As the Complaint acknowledges, FirstEnergy did not own or operate the Davis-Besse or Perry nuclear plants when HB 6 was enacted in July 2019.  (*See* ¶ 51 n.1.)  Those plants were (and are) owned by Energy Harbor Corp. (formerly known as FirstEnergy Solutions), a separate, publicly-traded company.  Social welfare organizations established under Section 501(c)(4) of the Internal Revenue Code—such as Generation Now (¶ 43)—may engage in issue advocacy and lobbying activities and may make political contributions.  *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2016 WL 8202966, at *3 (S.D. Ohio Nov. 22, 2016) ("501(c)(4) organizations can engage in limited political activity, but political activity cannot be the primary activity of the organization.").  The Constitution protects FirstEnergy's First Amendment right to speak on matters of public concern and policy.  *See, e.g.*, *NAACP v. Button*, 371 U.S. 415 (1963).  That right extends to speech

advocating for or against the election of candidates for office, *see Citizens United v. FEC*, 558 U.S. 310, 364 (2010), and it encompasses the right to hire lobbyists and consultants to petition the government, including to "enact favorable legislation," *e.g.*, *FTC v. Super. Ct. Trial Lawyers Ass'n*, 493 U.S. 411, 426 (1990).  The First Amendment also protects the right to contribute anonymously to groups that speak or advocate about matters of public concern.  *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 462 (1958).  Insofar as the Complaint alleges that FirstEnergy engaged in the political process by indirectly helping to elect "friendly" candidates and advocating for favorable legislation, the Complaint describes the exercise of rights that the First Amendment guarantees to everyone.

### C.    The Government's Complaint Against Others For Their Alleged Misuse Of Generation Now's Funds

In July 2020, federal prosecutors filed a criminal complaint against now-former Ohio House Speaker Larry Householder and four of his associates, alleging they used Generation Now's funds for improper purposes to benefit themselves in violation of federal and Ohio law. (¶ 7.)  Plaintiffs' Complaint does not identify any allegation in the criminal complaint that FirstEnergy ever sought to bribe or extort anyone or any allegation that FirstEnergy participated in, agreed to, or knew about any such actions—far less that the FirstEnergy board of directors was involved in any such actions.  Federal prosecutors did not charge the Company or any of its employees or directors with any crime, as the Complaint concedes.  (¶¶ 7, 129.)

Various follow-on lawsuits asserting violations of the securities laws, the federal Racketeer Influenced and Corrupt Organization Act, and related state laws were filed in this Court and elsewhere.  (¶¶ 123, 135.)  None of the Outside Directors have been named as defendants in any of those lawsuits.

**D.      Other Shareholders File Derivative Complaints And Make Pre-Suit Demands On The Board, And Plaintiffs File This Complaint**

Several shareholders filed derivative actions in federal and state courts, beginning with a suit in the Summit County Court of Common Pleas, *Gendrich v. Anderson, et al.*, No. CV 2020-07-2107 (filed Jul. 26, 2020). Another lawsuit was filed in the United States District Court for the Northern District of Ohio. *Miller v. Anderson, et al.*, No. 5:20-cv-01743-JRA (N.D. Ohio filed Aug. 7, 2020). Like the Plaintiffs here, the *Gendrich* and *Miller* plaintiffs seek to assert claims on FirstEnergy's behalf for breaches of fiduciary duty against certain of the Company's current and former directors and officers. The defendants have moved to dismiss both the *Gendrich* and the *Miller* complaints.

The first of several similar complaints were filed in this Court on September 30. After the Court consolidated the actions and appointed co-lead plaintiffs, Plaintiffs filed the instant Complaint on January 25, 2021.

In the sections of the Complaint discussing the purported "Pay-to-Play" scheme and the supposed "Materially False and Misleading Statements," spanning 54 pages, Plaintiffs identify no action by any Outside Director that had anything to do with Generation Now or Householder. (¶¶ 57-216.) The section addressing the alleged "Pay-to-Play" scheme does not even mention any of the Outside Directors (¶¶ 57-150), apart from a brief reference to the fact that Defendant Pappas was appointed Executive Director and opposed a shareholder proposal that had nothing to do with Generation Now or Householder. (¶ 142.) Plaintiffs nevertheless assert that the Directors breached their fiduciary duties by supposedly failing to ensure the Company complied with applicable law in connection with its contributions to Generation Now (Count I) and violated Section 14(a) of the Securities Exchange Act of 1934 by failing to disclose the payments and representing that the Company aimed to ensure compliance (Count VI). Based on the same

alleged misconduct, the Complaint asserts claims for corporate waste, contribution and indemnification.  (Counts IV-V.)[2]  Because Plaintiffs seek to assert claims on behalf of FirstEnergy, they acknowledge that any recovery would go to the Company, not to Plaintiffs themselves.  (Prayer for Relief.)

Though Plaintiffs here failed to abide by the pre-suit demand requirement, other shareholders of the Company did comply and submitted letters to the board demanding that it pursue the same claims addressed in the Complaint.  Those shareholders have thus conceded that the board is indeed capable of considering a pre-suit demand.  In response, the board has initiated a process to review the matters asserted in the demand letters and to determine what further action may be in the best interests of the Company.  That process is ongoing.

## ARGUMENT

I.     **The Court Should Dismiss The Complaint Because It Fails To Plead A Section 14(a) Claim And Thus Does Not Support Jurisdiction Over Any State-Law Claims.**

The only asserted basis for federal jurisdiction is the claim under Section 14(a) of the Exchange Act.  (¶ 15 (invoking federal-question jurisdiction).)  That claim must be dismissed under Rule 12(b)(6), because the Complaint fails to plead the elements of a Section 14(a) claim.  As a result of the dismissal of the lone federal claim, the Court should decline to exercise supplemental jurisdiction over the Complaint's pendent state-law claims and should dismiss them without prejudice to their being pursued in state court.

A.     **The Complaint Fails To Plead A Viable Section 14(a) Claim.**

The allegations about FirstEnergy's proxy statements and 10-Ks do not state a claim under Section 14(a) and should be dismissed under Rule 12(b)(6).  The Complaint asserts that

---

[2] The Complaint also asserts claims against certain current and former officers for breaches of fiduciary duty (Count II) and unjust enrichment (Count III).

FirstEnergy's proxy statements in March 2018, April 2019, and April 2020 and its 10-Ks for

2017, 2018, and 2019 falsely represented that the board was "(i) actively working to mitigate

significant risks to the Company; (ii) ensuring the Company's legal and regulatory compliance;

and (iii) ensuring the Company was not engaged in any misconduct relating to the Company's

lobbying activities and corporate political participation," and that the Directors thereby violated

Section 14(a) and Rule 14a-9. (¶¶ 332-34; ¶¶ 151-216.)[3]  These allegations fail to plead a

Section 14(a) claim for at least four reasons.

**First**, the Complaint fails to plead causation, an element of a Section 14(a) claim. *See,

e.g.*, *Local 295/Local 851 IBT Emp'r Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp*,

731 F. Supp. 2d 689, 716 (S.D. Ohio 2010) (to plead a Section 14(a) claim, a plaintiff must

allege "(1) a proxy statement contained a material misrepresentation or omission, which

(2) caused plaintiffs injury, and (3) that the proxy solicitation itself, rather than the particular

defect in the solicitation materials, was an essential link in the accomplishment of the

transaction").  The main theory of causation proffered by Plaintiffs is that, as a result of the

alleged misstatements, FirstEnergy shareholders re-elected the Directors (¶ 334), who

supposedly went on to breach their fiduciary duties (*e.g.*, ¶ 220), causing harm to the Company.

But "the mere fact that omissions in proxy materials, by permitting directors to win re-election,

indirectly lead to financial loss through mismanagement will not create a sufficient nexus with

---

[3] Count VI, setting forth the Section 14(a) claim, refers only to the 2018-20 proxy statements, and not to the 10-Ks: "The Director Defendants negligently issued . . . materially misleading written statements to shareholders which were contained in the 2018, 2019 and 2020 Proxies." (¶ 332; *see also* ¶ 333 ("The Proxies violated § 14(a) . . . .").)  This makes sense, because liability under Section 14(a) is for misleading proxy solicitations, not for misstatements in annual or quarterly SEC filings. *See* 15 U.S.C. § 78n(a)(1) (making it "unlawful for any person . . . in contravention of such rules and regulations as the Commission may prescribe . . . to *solicit or to permit the use of his name to solicit any proxy*") (emphasis added).  *See also Local 295*, 731 F. Supp. 2d at 716 (Section 14(a) and SEC Rule 14a–9 prohibit "*the solicitation of proxies* by means of materially false or misleading statements or omissions") (emphasis added).  The Form 10-Ks were not incorporated into the proxy statements, and the Complaint does not allege that they were.  Even if the 10-Ks were deemed part of the proxy statements, the Section 14(a) claim still fails for the reasons addressed in this section.

the alleged monetary loss." *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992).  This

is "***precisely the sort of claim that courts have repeatedly found insufficient to satisfy the***

***transaction causation requirement***" of Section 14(a).  *Id.* (emphasis added).

       "The cases uniformly hold that a claim seeking relief for injuries occasioned by

mismanagement or breach of fiduciary duty is not redressable under the proxy rules simply by

virtue of the fact that acts were committed by directors who would not have been elected but for

the proxy solicitation." *In re Browning-Ferris Indus., Inc. S'holder Deriv. Litig.*, 830 F. Supp.

361, 370 (S.D. Tex. 1993), *aff'd sub nom. Cohen v. Ruckelshaus*, 20 F.3d 465 (5th Cir. 1994).  If

it were otherwise, "Plaintiffs would essentially have Section 14(a) apply anytime a director

[allegedly] commits a bad act and is re-elected without the bad act being disclosed in the proxy

statement.  Such a broad reading of Section 14(a) is untenable, since it would essentially negate

the transactional causation requirement." *In re iBasis, Inc. Deriv. Litig.*, 532 F. Supp. 2d 214,

222 n.7 (D. Mass. 2007) (dismissing derivative Section 14(a) claim and declining to exercise

supplemental jurisdiction over state-law claims).

       To satisfy the causation element of Section 14(a), the alleged proxy misstatement must

have been an "essential link" in shareholders voting to approve a corporate action (such as a

merger) that directly caused loss to the company:  "[I]t is well established that the 'essential link'

required for proxy fraud liability can only be established when the proxy at issue directly

authorizes the loss-generating corporate action." *Hulliung v. Bolen*, 548 F. Supp. 2d 336, 341

(N.D. Tex. 2008); *accord Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.*, 594 F.3d

783, 796-97 (11th Cir. 2010) (explaining that "[t]he transaction at issue must be the source of the

plaintiff's injury" and holding that the "damages suffered by the shareholders were caused not by

the policies that they approved via proxy, but by management's failure to follow those policies"

and that "the election of directors who violated those policies only indirectly caused the shareholders' loss"); *Hastey ex rel. YRC Worldwide, Inc. v. Welch*, 449 F. Supp. 3d 1053, 1065 (D. Kan. 2020) (similar; collecting cases); *In re PayPal Holdings, Inc. S'holder Deriv. Litig.*, 2018 WL 466527, at *4 (N.D. Cal. Jan. 18, 2018) (similar; collecting cases).

Here, the alleged proxy misstatements did not result in the shareholders voting to approve "a specific corporate transaction requiring shareholder authorization" which "transaction was the direct cause of the pecuniary injury for which recovery is sought." *Gen. Elec.*, 980 F.2d at 933. The Complaint does not allege otherwise, nor could it.

As an alternative causation theory, the Complaint asserts that the purported misstatements "were an essential link in shareholders heeding FirstEnergy's recommendations to . . . provide ***advisory votes*** on executive compensation." (¶ 334.) This theory fails because those votes were—as Plaintiffs concede—***purely advisory***, and thus cannot have caused any loss-producing corporate transaction. To satisfy the causation requirement, the proxy must solicit "votes legally required to authorize the action proposed." *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991). The votes in question were "say-on-pay" votes conducted in accordance with Section 14A of the Exchange Act, which requires public companies to hold a non-binding vote on executive compensation at least once every three years. 15 U.S.C. § 78n-1.[4] But "say on pay" votes "authorize[] no corporate action," so "plaintiff[s] cannot rely on th[ese] vote[s] to satisfy Section 14(a)'s 'essential link' requirement." *Hastey*, 449 F. Supp. 3d at 1067 (dismissing Section 14(a) claims alleging that "misrepresentations and omissions in the proxy statements were material to plaintiff's voting on executive compensation" in say-on-pay votes

---

[4] *See* Ex. B, 2020 Proxy at 26 (vote on executive compensation was "an advisory, non-binding" vote); Ex. D, 2019 Proxy at 27 (same); Ex. E, 2018 Proxy at 39-40 (same).

and declining to exercise supplemental jurisdiction over state-law claims); *see also Advanced Advisors G.P. v. Berman*, 2014 WL 12772264, at *14 (C.D. Cal. Sept. 16, 2014) (dismissing Section 14(a) claim where "the proxy statement was issued for the purpose of providing information regarding a non-binding, advisory vote on an amendment to [defendant's] compensation plan that already had been approved"); *Swanson v. Weil*, 2012 WL 4442795, at *9 n.7 (D. Colo. Sept. 26, 2012) (dismissing Section 14(a) claim because "advisory non-binding 'say on pay' votes" are "not legally required to authorize the award of the executive compensation").

     ***Second***, the Complaint does not plead falsity or misleadingness with particularity, as required by the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1).  *See Berlin Fin., Ltd. v. MPW Indus. Servs. Grp., Inc.*, 2008 WL 161309, at *9 (S.D. Ohio Jan. 15, 2008) (dismissing "§ 14(a) claim pursuant to the PSLRA" for failure to plead falsity with requisite particularity and dismissing state-law claims for lack of jurisdiction).  The gravamen of the Section 14(a) claim here is that the proxy statements were false because they did not disclose purported "illegal lobbying activities and expenditures" (¶ 162), but the Complaint never pleads any "illegal lobbying activities and expenditures" with particularity.

     The Complaint does not identify any law or regulation governing "lobbying activities and expenditures" that FirstEnergy supposedly violated, much less offer particularized facts showing a violation.  *See Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 945 (6th Cir. 2009) ("[S]tatements regarding 'legal compliance' are not actionable" generally "because companies have no duty to opine about the legality of their own actions").

-10-

The Complaint therefore necessarily fails to connect the links in the chain that would be required to plead "illegal lobbying activities and expenditures" with particularity. *See, e.g.*, *Guo v. Mahaffy*, 2020 WL 5798531, at *9-10 (D. Colo. Sept. 29, 2020) (dismissing for failure to plead false or misleading statement where complaint took "issue with the adequacy of the board and audit committee's oversight" and holding that, even when genuine misconduct is pled, that "does not render false or misleading [a] proxy statement's banal language on its approach to corporate governance or risk management or its adoption of an ethics code"); *EveryWare*, 175 F. Supp. 3d at 872 (Marbley, C.J.) (rejecting allegation of accounting improprieties where complaint offered "only a conclusory allegation that the inventory accounting method was 'in violation'" of corporate accounting policies).

Having failed to (1) identify a specific "lobbying activit[y]" or "lobbying expenditure" by FirstEnergy, the Complaint fails to (2) tie the activity or expenditure to a specific law or regulation that supposedly made it "illegal," and to (3) state particularized facts showing that the specific lobbying activity or expenditure indeed violated that law or regulation.  Without all of these allegations, the Complaint fails to plead with particularity that the proxy failed to disclose "illegal lobbying activities and expenditures."  *See, e.g.*, *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 465 (2d Cir. 2019) (holding PSLRA requires that "when a complaint claims that statements were rendered false or misleading through the non-disclosure of illegal activity, the facts of the underlying illegal acts must also be pleaded with particularity" including "the basic elements of an underlying" offense); *Hogan v. Pilgrim's Pride Corp.*, 2018 WL 1316979, at *5 (D. Colo. Mar. 14, 2018) (same; collecting cases).  Asserting that Householder and his associates allegedly misappropriated Generation Now funds does not plead with particularity any illegal lobbying activity by FirstEnergy.  Neither do conclusory assertions of "bribes," or "pay-to-play,"

or the like.  Those are not facts, but labels, and mere labels are not enough to plead with

particularity.  *Sanderson Farms*, 944 F.3d at 465 (complaint's use of "stock phrases such as

'worked in concert' and 'coordinated'" were inadequate to plead elements of underlying offense

with particularity); *EveryWare*, 175 F. Supp. 3d at 871 (Marbley, C.J.) (dismissing "flimsy

allegation" of accounting inaccuracies where complaint "put forth no allegations about the nature

of the 'inaccurate financial disclosures' or the content of the reports" purportedly showing their

existence); *Berlin Fin.*, 2008 WL 161309, at *9 (rejecting "conclusory allegations" as

"inadequate under the PSLRA's heightened pleading standard").

    ***Third***, the Complaint fails to "state with particularity facts giving rise to a strong

inference that the defendant[s] acted with the required state of mind" "with respect to each act or

omission alleged to violate" Section 14(a).  15 U.S.C. § 78u-4(b)(2)(A).  The failure here is

twofold.

    To start, the Complaint asserts that the Section 14(a) claim is "based solely on

negligence" and disclaims any attempt to plead scienter.  (¶ 330.)  In the Sixth Circuit, however,

pleading scienter is essential to state a Section 14(a) claim:  "In this Circuit § 14(a) does in fact

require proof of scienter to state a claim."  *Ind. State Dist. Council of Laborers & Hod Carriers

Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, 507 n.3 (6th Cir. 2013).  *Accord

Bluestone v. Sadove*, 2019 U.S. Dist. LEXIS 62207, at *2, *15-16 (E.D. Tenn. Mar. 14, 2019)

(dismissing Section 14(a) claim against outside directors where the plaintiff failed to plead

scienter).  Scienter is "a mental state embracing intent to deceive, manipulate, or defraud."  *Ernst

& Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  Because the Complaint forswears any

effort to plead scienter, it necessarily fails to plead particularized facts giving rise to a strong

inference of scienter.  *Id.* at 215 (distinguishing "a theory of liability premised on negligence"

from one premised on "fraud or intentional misconduct"). The consequence of that failure under the PSLRA is clear: "the court **shall**, on the motion of any defendant, dismiss the complaint." 15 U.S.C. § 78u-4(b)(3)(A).

But even if the "required state of mind" were negligence, the Complaint still would fail, because it does not assert particularized facts giving rise to a strong inference of the Directors' negligence with respect to the alleged misstatements. It contains no particularized facts about the Directors' knowledge of or participation in the contributions to Generation Now, or about the Directors' knowledge of any misuse of the Generation Now funds by anyone, or facts showing that the Directors, in the exercise of reasonable care, should have ascertained that the Generation Now payments were illegal. (¶¶ 57-216 (never identifying any action by any Outside Director that had anything to do with Generation Now or Householder).) And the Complaint says nothing about the process by which the alleged misstatements were created or issued, or particularized facts suggesting a lack of care by the Directors in connection with the proxy statements. And, as explained above, the Complaint does not plead with particularity any "illegal lobbying activities and expenditures" by FirstEnergy that could have been disclosed in the first place. Without such particularized facts, the Complaint cannot give rise to a "strong inference" that the Directors acted negligently. *See Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 683 (9th Cir. 2005) (dismissing where complaint was "bereft of facts alleged which demonstrate the directors did not believe that the merger was in the 'best interests' at the time they made the recommendation, let alone a 'strong inference' of negligence"); *In re JPMorgan Chase Deriv. Litig.*, 2014 WL 5430487, at *25 (E.D. Cal. Oct. 24, 2014) (dismissing § 14(a) claim for failure to "create a 'strong inference' of negligence" because complaint did not "describe with sufficient detail what

-13-

the directors knew or did not know or how they were negligent in failing to discover what they should have").

*Fourth*, the Complaint's allegations fall short in other ways, too.  As to the 2020 proxy statement, the Complaint alleges that the supposedly improper payments ended by March 2020, a month before the Company filed its 2020 proxy.  (*See* ¶¶ 122, 204.)  The allegation that the 2020 proxy violated Section 14(a) thus "illogically postulates an 'essential link' between the allegedly false proxy statement[] and corporate actions that occurred" *before* it was issued.  *Kelley v. Rambus, Inc.*, 2008 WL 5170598, at *7, *17 (N.D. Cal. Dec. 9, 2008) (dismissing § 14(a) claim), *aff'd*, 384 F. App'x 570 (9th Cir. 2010).[5]

## B.    This Court Should Decline To Exercise Supplemental Jurisdiction Over The State-Law Claims.

Subject-matter jurisdiction over the Complaint's state-law claims is premised on federal-question jurisdiction over the Section 14(a) claim (¶ 15), which, as shown above, must be dismissed.  The Sixth Circuit has long taught that when "federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims."  *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir. 1987).  "It is a clear rule of this circuit that if a plaintiff has not stated a federal claim, his pend[e]nt state law claims should be dismissed."  *Perry v. Southeastern Boll Weevil Eradication Fdn.*, 154 F. App'x 467, 478 (6th Cir. 2005) (quoting *Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1988)).

"The presumption that a 12(b)(6) dismissal of the touchstone claims precludes the exercise of supplemental jurisdiction over any remaining claims can be overcome in 'unusual

---

[5] Even if the 10-Ks could be a basis for the Section 14(a) claim (and they cannot be, *see supra* n.3), the 2017 10-K statement falls outside the three-year statute of repose that governs Section 14(a) claims, so no statement in it could give rise to liability.  *In re Keithley Instruments, Inc. Deriv. Litig.*, 599 F. Supp. 2d 875 (N.D. Ohio 2008) ("Keithley I").

-14-

circumstances'" only. *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) (holding "it was an abuse of discretion to retain the state law claims on a theory of supplemental jurisdiction after dismissal of the federal claims upon which supplemental jurisdiction depended"). This Court has acknowledged that "[w]hen the dismissal of federal claims occurred due to a Rule 12(b)(6) motion, 'there is a strong presumption in favor of dismissing supplemental claims.'" *Norris v. Glassdoor, Inc.*, 2018 WL 3417111, at *7 (S.D. Ohio Jul. 13, 2018) (Marbley, C.J.) (quoting *Musson*, 89 F.3d at 1255).

The circumstances here do not justify departing from the strong presumption in favor of dismissal. This is not a situation in which dismissal would occur "on the eve of trial" after "[t]he parties and the court had spent years preparing." *Musson*, 89 F.3d at 1255; *see also Brown v. Burch, Porter, & Johnson, PLLC*, 2016 WL 9448027, at *3 (6th Cir. Nov. 21, 2016). Nothing has occurred in this case beyond briefing on a motion to dismiss and appointment of co-lead plaintiffs. Discovery has not occurred and, under the PSLRA, cannot occur until after resolution of this motion to dismiss. (*See* ECF No. 78.) Dismissal of pendent state claims at such an early stage is routine. *See, e.g.*, *Fambough-McCoy v. White Castle Sys., Inc.*, 2017 WL 3085685, *5 (S.D. Ohio Jul. 20, 2017); *Norris*, 2018 WL 3417111, at *7 (Marbley, C.J.).

Indeed, this Court has dismissed supplemental state-law claims in identical circumstances. *See Berlin Fin.*, 2008 WL 161309, at *10 (dismissing state-law fiduciary-duty claim for lack of "any justification or alternative basis for exercising jurisdiction" after dismissing Section 14(a) claim under Rule 12(b)(6)). Other federal courts across the country do the same. *See, e.g.*, *Gen. Elec.*, 980 F.2d at 937 (affirming dismissal of supplemental state-law claims); *Hastey*, 449 F. Supp. 3d at 1067 (declining to exercise jurisdiction over state-law claims after dismissing Section 14(a) claim); *In re Pattern Energy Grp. Sec. Litig.*, 2021 WL 311257, at

-15-

*17-18 (D. Del. Jan. 28, 2021) (same); *Karp v. SI Fin. Grp., Inc.*, 2020 WL 1891629, at *14 (D.

Conn. Apr. 16, 2020) (same); *Kugelman v. PVF Cap. Corp.*, 972 F. Supp. 2d 993, 1000 (N.D.

Ohio 2013) (same); *DCML LLC v. Danka Bus. Sys. PLC*, 2008 WL 5069528, at *3 (S.D.N.Y.

Nov. 26, 2008) (same); *iBasis*, 532 F. Supp. 2d at 225 (same).

Nor does judicial economy warrant departure from the rule.  Only "overwhelming

interests in judicial economy may allow a district court to properly exercise its discretion and

decide a pendent state claim even if the federal claim has been dismissed before trial."  *Musson*,

89 F.2d at 1255.  "At this early stage in the proceedings, well before discovery, summary

judgment or trial," there is "no overwhelming interest in judicial economy sufficient to overcome

the presumption that this Court should decline jurisdiction over the remaining state law claims."

*Prater v. Livingston Ave. Child Care, LLC*, 2015 WL 1439322, at *8 (S.D. Ohio Mar. 27, 2015)

(Marbley, C.J.); *Albano v. Columbus Bd. of Educ.*, 2015 WL 1221347, at *11 (S.D. Ohio Mar.

17, 2015) (Marbley, C.J.) (dismissing pendent state-law claims where case had not yet

progressed to discovery or summary-judgment briefing); *Matthews v. Owens*, 2015 WL

5380857, at *4 (S.D. Ohio Sept. 26, 2012) (Marbley, C.J.) (dismissing pendent state-law claims

and observing that "[d]ismissal of claims providing original jurisdiction at an early stage weighs

strongly in favor of dismissing the remaining state-law claims").

If this Court dismisses Plaintiffs' Section 14(a) claim (which it should), resolution of this

case will have taken less than a year, and the "same written materials" introduced in this Court

"could be submitted to a state judge for his decision, with only minimal rewriting."  *Musson*, 89

F.3d at 1256.  "[A] state action" asserting nearly identical derivative claims is "already pending"

in the Summit County Court of Common Pleas, a fact which the Sixth Circuit has deemed

"extremely compelling" because it is both "evidence of the ease with which these matters could

-16-

have been relinquished to the control of the . . . state court" and "the appropriateness of discretionary judicial abstention to avoid interfering in a state court proceeding." *Id.*; *see also Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) ("Comity to state courts is considered a substantial interest[.]").  And, as Plaintiffs here have pointed out, they have an agreement with the state-court plaintiffs, so there presumably will be no difficulty with any coordination.  (ECF No. 53 at 5.)  As a result, there is no reason to retain jurisdiction over the state-law claims; the Court should decline to exercise supplemental jurisdiction and dismiss this action.  28 U.S.C. § 1367(c)(3).

* * * * *

The remainder of this brief explains why Plaintiffs lack standing to pursue claims on behalf of FirstEnergy.  If the Court determines to dismiss the Section 14(a) claim and to decline to exercise supplemental jurisdiction over the state-law claims, the Court need not address these arguments.

## II.    The Court Should Dismiss The Complaint Because Plaintiffs Failed To Make A Pre-Suit Demand.

The Complaint must be dismissed because Plaintiffs lack standing to sue on FirstEnergy's behalf.  "Ohio law statutorily embraces the bedrock principle[] that 'the business and affairs of a corporation are managed by and under the direction of its board.'"  *In re Ferro Corp. Deriv. Litig.*, 2006 WL 2038659, at *5 (N.D. Ohio Mar. 21, 2006) ("Ferro I"), *aff'd*, 511 F.3d 611 (6th Cir. 2008) ("Ferro II"); *see also* R.C. § 1701.59(A).[6]  "If Plaintiffs do not comply with the requirements of Rule 23.1, they do not have standing to bring suit."  *Stanley v. Arnold*,

---

[6] Ohio law governs the demand analysis because FirstEnergy is an Ohio corporation.  *Ferro II*, 511 F.3d at 617.

2012 WL 5269147, at *3 (S.D. Ohio Oct. 23, 2012) (quoting *Ferro II*, 511 F.3d at 617)), *aff'd*, 531 F. App'x 695 (6th Cir. 2013).

If a shareholder wants the corporation to pursue a legal claim, the shareholder must submit a pre-suit demand to the board of directors. As the Sixth Circuit has explained, the board "must be given the first opportunity to institute the litigation since, as a general principle, the responsibility for determining whether a corporation should use the courts to enforce a cause of action is, like other business questions, ordinarily a matter of internal management left to the discretion of the directors." *Ferro II*, 511 F.3d at 618. Under Ohio law, the demand requirement is "designed to promote the resolution of disputes within the corporation without interference from the courts or a minority of dissatisfied shareholders." *Drage v. Procter & Gamble*, 119 Ohio App. 3d 19, 31 (1st Dist. 1997); *Davis v. DCB Fin. Corp.*, 259 F. Supp. 2d 664, 670 (S.D. Ohio 2003). *See also In re Goodyear Tire & Rubber Co. Deriv. Litig.*, 2007 WL 43557, at *3 (N.D. Ohio Jan. 5, 2007) (demand rule "serves the very important purpose of ensuring that before a shareholder derivative suit is brought, the company's board of directors has considered all possible intracorporate remedies").

### A. The Demand Requirement Is Strictly Enforced.

Rule 23.1 enforces the pre-suit demand requirement. "Demand futility is difficult to establish and is not just a procedural technicality." *Monday v. Meyer*, 2011 WL 5974664, at *4 (N.D. Ohio Nov. 29, 2011). A derivative plaintiff who has not made a pre-suit demand must demonstrate with particularized facts that the board of directors at the time the lawsuit was filed would not have been able to exercise its business judgment in response to a demand. Fed. R. Civ. P. 23.1; *Ferro II*, 511 F.3d at 618; *Stanley*, 2012 WL 5269147, at *4. Demand is futile only when a complaint alleges specific facts sufficient to overcome the presumption that the directors can make an "unbiased, independent business judgment about whether it would be in the

-18-

corporation's best interests to file the action." *Ferro II*, 511 F.3d at 618; *Davis*, 259 F. Supp. 2d at 670. Demand futility must be pled with particularity, which "differs substantially from the principles of notice pleading." *Ferro I*, 2006 WL 2038659, at *3.

To show demand futility, a plaintiff must allege particularized facts, on a director-by-director basis, establishing that at least half of the directors at the time this lawsuit was filed—here, six out of eleven directors—either were not disinterested with respect to the subject matter of the complaint, or were not independent of someone with a disqualifying interest. *Stanley*, 2012 WL 5269147, at *4. Here, because ten of the eleven members of the board at the time the lawsuit was filed are outside directors who are not FirstEnergy employees, "there is a heightened presumption that the Board could have considered a demand in good faith." *Id.* at *7 (noting "vast majority" of directors ("eleven of twelve") were outside directors and dismissing for failure to plead demand futility).[7]

Where, as here, the plaintiffs have failed to "comply with the requirements of Rule 23.1, they do not have standing to bring suit." *Ferro II*, 511 F.3d at 617. Sixth Circuit courts routinely dismiss the complaints of plaintiffs who fail to plead demand futility under Ohio law with particularity. *Stanley v. Arnold*, 531 F. App'x 695 (6th Cir. 2013) (affirming dismissal for lack of pre-suit demand); *Ferro II*, 511 F.3d at 623 (same); *Robinson Family Trust v. Greig*, 2013 WL 1943330, at *6 (N.D. Ohio May 10, 2013) (dismissing complaint for failure to plead futility); *Monday*, 2011 WL 5974664, at *8 (same); *In re Keithley Instruments, Inc., Deriv. Litig.*, 599 F. Supp. 2d 908, 921 (N.D. Ohio 2009) ("Keithley II") (same); *Keithley I*, 599 F.

---

[7] "[F]utility of demand must be determined by looking at the positions of the parties when the derivative suit is initially filed." *Ferro II*, 511 F.3d at 621.

-19-

Supp. 2d at 890 (same); *Goodyear*, 2007 WL 43557, at \*6-7 (same); *Ferro I*, 2006 WL 2038659, at \*3 (same); *Davis*, 259 F. Supp. 2d at 671 (same).[8]

### B.  The Complaint Fails To Plead Demand Futility With Particularity.

Plaintiffs offer several justifications for their failure to make a pre-suit demand.  (¶¶ 243-302.)  Most have been rejected by courts in this Circuit because they "could apply to *any* board of directors at *any* corporation."  *Ferro II*, 511 F.3d at 619 (emphasis in original).  These excuses also fail because their "highly generalized" allegations "provide no specific facts indicating a nexus between any individual committee member and any inappropriate action or failure to act." *Id.* at 622.

### 1.  Allegations About "Director Defendants" Are Insufficient

To start, Plaintiffs' style of pleading—lumping all the directors into an undifferentiated wrongdoing mass of "Director Defendants" (*e.g.*, ¶¶ 9-11, 33, 66, 73-76, 98-99, 141-42, 151-216, 224-25, 243-247, 299-302)—is inconsistent with Rule 23.1.  "A derivative plaintiff must allege particularized facts ***as to each director***, demonstrating why he or she is unable to consider a demand."  *Stanley*, 2012 WL 5269147, at \*7 (emphasis added) (rejecting argument that a plaintiff "is not required to plead demand futility on a director-by-director basis").  Plaintiffs make no such allegations.  The Complaint alleges no specific facts about any actions taken by any of the ten Outside Directors.  Its treatment of the Directors only en masse as the "Demand Board" is alone a sufficient ground to dismiss.  *Id.* at \*7 ("Plaintiff's complaint also fails because it lumps together the directors instead of directing specific allegations at specific individuals.");

---

[8] Ohio state courts likewise routinely dismiss the complaints of derivative plaintiffs who fail to plead demand futility with particularity.  *See, e.g.*, *In re Lubrizol S'holders Litig.*, 79 N.E.3d 579, 586-87 (Ohio Ct. App. 2017) (affirming dismissal for failure to plead demand futility); *Pullins v. Harmer*, 2010 WL 2299152, at \*5 (Ohio Ct. App. June 9, 2010) (same); *Carlson v. Rabkin*, 789 N.E.2d 1122, 1129 (Ohio Ct. App. 2003) (same); *Doe v. Malkov*, 2002 WL 31928645, at \*4-5 (Ohio Ct. App. Dec. 31, 2002) (same); *Henkel v. Aschinger*, 962 N.E.2d 395, 405 (Ohio Ct. C.P. 2012) (dismissing derivative claim where demand futility not shown).

*Davis*, 259 F. Supp. 2d at 671 (dismissing complaint; "broad, conclusory allegations … against the directors as a group" could not excuse demand).

The Complaint attempts to camouflage the absence of particularized director-by-director allegations by repeating a set of generic allegations as to each Director (¶¶ 248-98), but this does not satisfy the requirement to "allege particularized facts as to each director." *Stanley*, 2012 WL 5269147, at *7. Relabeling does not change the fact that the Complaint contains no specific allegations about **what** any Director individually **did** or **knew**, and **how** and **when,** and thus cannot "demonstrate[e] why he or she is unable to consider a demand." *Id.* at *7. The Complaint does not specifically allege which Outside Directors received notice of which purported red flags, or how, or when, or what any Outside Director did or did not do in response on any specific occasion.

Indeed, the Complaint does not purport to say ***anything*** about Outside Directors Anderson, Demetriou, Johnson, Misheff, Mitchell, O'Neil, Pappas, Pianalto, Reyes, or Turner, apart from they (1) served on committees (¶¶ 251, 257, 261, 263, 266, 269, 272, 274, 277, 281, 283, 286, 290, 292, 295); (2) had expertise in finance (¶¶ 252, 254, 267); (3) approved compensation structures (¶¶ 278, 283, 287, 296); (4) opposed shareholder proposals (¶¶ 253, 262, 268, 273, 282, 291); (5) signed 10-Ks (¶¶ 255, 259, 264, 270, 275, 279, 284, 288, 293, 297); and (6) served on boards of other companies that purportedly made modest contributions to Householder (¶ 299). These unremarkable, unparticularized facts do not amount to specific allegations of wrongdoing "on a director-by-director basis." *Stanley*, 2012 WL 5269147, at *7; *see also Davis*, 259 F. Supp. 2d at 671 (dismissing where complaint did not "identify what role, if any, that the individual board members had" in the alleged misconduct).

-21-

### 2. Allegations About Committee Service Do Not Excuse Demand

The allegations about the Directors' service on board committees (¶¶ 23-32, 73, 87, 99, 159-62, 179-81, 200-203, 216, 225, 251, 257, 261, 263, 266, 269, 272, 274, 277, 281, 283, 286, 290, 292, 295, 308) and references to the committee charters (¶¶ 24, 76, 99, 160-61, 196, 216, 238-40) are not enough. To "allege futility based on a director's committee membership, the Complaint would have to show some specific report or piece of information that the committee was given which would have tipped them off to misconduct." *Stanley*, 2012 WL 5269147, at *6 n.12. The Complaint does not do this. It never provides any information about anything that happened at any meeting of any board committee.

Instead, the Complaint offers only the bare assertion of committee membership and a recitation of the roles of the committees. (¶¶ 23-32, 73, 99, 159-62, 179-81, 200-03, 225, 238-40.) Courts "repeatedly reject allegations of membership on committees, and recitation of the roles of the committees, as establishing a likelihood of liability." *Monday*, 2011 WL 5974664, at *7; *Stanley*, 2012 WL 5269147, at *6 (same); *Goodyear*, 2007 WL 43557, at *5 (allegations of membership not enough). And with good reason: "If membership on a particular committee automatically imputed knowledge of wrongdoing in challenged board decisions, shareholders could plead around the demand requirement in every derivative action." *Monday*, 2011 WL 5974664, at *7.

### 3. Conclusory Assertions Regarding A Failed Shareholder Proposal Do Not Demonstrate Demand Futility

The Complaint alleges that demand is excused as to six Directors who were on the board in March 2017 because they recommended a vote against a shareholder proposal regarding lobbying policies. (¶¶ 65-76, 253, 262, 268, 273, 282, 291.) But the Complaint alleges no facts to tie this recommendation against a shareholder proposal (or similar proposals in earlier years)

-22-

to any suspicion (far less knowledge) by those Directors of any alleged illegal bribery scheme or improper uses by others of the Company's contributions to Generation Now.

To the contrary, as the board explained and the Complaint concedes, the Company already had in place its own procedures and policies, on top of the existing framework of laws and public disclosure that it believed "promote transparency and compliance with the law." (¶¶ 10, 151.)  The Complaint does not dispute the board's determination that the additional reports called for by the shareholder proposal would have been "duplicative and onerous" and would have "divert[ed] important resources" from other efforts that the board believed to be in the best interests of the Company and its shareholders.  (Ex. F, 2017 Proxy at 40.)[9]

That the board recommended, three years ago, against a proposal as cumulative and unnecessary says nothing about whether at least six of the eleven Directors at the time this lawsuit was filed would have been capable of exercising business judgment in response to a demand.  The Complaint alleges no particularized facts showing that the reasons for the 2017 recommendation were anything but genuine and *bona fide*.  *See, e.g.*, *Robinson Family Tr.*, 2013 WL 1943330, at *5 (disagreement between shareholders and board about compensation decisions does not show "bad faith").  Absent such facts, the Complaint cannot overcome the

---

[9] As the Complaint acknowledges (¶ 76), the Company nevertheless took action to enhance its policies in 2018 and again in 2019.  *See* Ex. E, 2018 Proxy at 18 ("Although it did not pass, in response to the vote received on the 2017 lobbying activities shareholder proposal, we elicited shareholder feedback on the Company's current practices and disclosures concerning our lobbying activities.  Most of those engaged shareholders indicated little or no concern with our current disclosures; however, some investors suggested that we include more specific information about the Corporate Governance Committee's oversight role of our lobbying activities.  Accordingly, in 2017, your Board further strengthened its oversight of your Company's lobbying activities and amended the Corporate Governance Committee's Charter to clarify this responsibility."); Ex. D, 2019 Proxy at 3 ("Based on feedback from our shareholder engagement and outreach, we recently expanded our website disclosure to include reports on federal and state level lobbying, as well as, the lobbying portion of certain trade association dues.").  The Complaint insinuates that the 2017 proposal appeared because "FirstEnergy's resort to 'legislative solution[s]' alarmed the Company's shareholders."  (¶ 65.)  But this makes no sense.  As the Complaint concedes, the 2017 proposal was the last in a series of three proposals that began in 2015 (¶ 66)—long before the Company announced its support for legislation relating to nuclear generation (¶ 60).

"heightened presumption" that this overwhelmingly independent board "could have considered a demand in good faith." *Stanley*, 2012 WL 5269147, at *7.

### 4. Naming All The Directors As Defendants Does Not Excuse Demand

The Complaint asserts that demand is excused because all the Directors are named as defendants and supposedly will be held personally liable on Plaintiff's claims, thereby creating a disqualifying personal interest that would have prevented them from considering a demand. (¶ 247.)  But that "excuse" has been rejected because it would allow derivative plaintiffs to "easily circumvent the demand requirement" simply by naming all directors as defendants. *Ferro I*, 2006 WL 2038659, at *5.  *See also Ferro II*, 511 F.3d at 619 (allegation that "directors do not want to sue themselves or expose themselves to liability" does not show demand futility because that allegation "could apply to *any* board of directors at *any* corporation"); *Robinson Family Tr.*, 2013 WL 1943330, at *6 ("simply naming all of the members of a Board of Directors as defendants" does not excuse demand); *Stanley*, 2012 WL 5269147, at *6 n.13 ("[C]ourts have consistently rejected the idea that demand is always futile when the directors are targeted as the wrongdoers in the suit."); *Goodyear*, 2007 WL 43557, at *6 ("allegations that the Current Director Defendants would not sue themselves or their colleagues … are insufficient").

The conclusory assertion that the Directors "participated in the wrongdoing" likewise is unavailing.  (¶ 244.)  A "mere threat of personal liability" is insufficient to excuse demand. *Stanley*, 2012 WL 5269147, at *5; *Keithley I*, 599 F. Supp. 2d at 890.  Rather, a director has a disqualifying self-interest and cannot consider a demand only if the complaint sets forth particularized facts showing that the director faces a "substantial likelihood of liability."  *Stanley*, 2012 WL 5269147,. at *5.  This is a very difficult standard to meet under Ohio's director liability statute.  Under that statute, a director is liable to the corporation only when "it is proven ***by clear and convincing evidence***" that his or her action or failure to act was "undertaken with ***deliberate***

-24-

**intent to cause injury to the corporation** or undertaken with **reckless disregard for the best interests of the corporation**."  R.C. § 1701.59(E) (emphasis added).  "Ohio law makes clear that the defendants in the case at bar cannot be liable in damages for [] non-intentional breaches" of duty to the Company.  *Goodyear*, 2007 WL 43557, at *8; *Stanley*, 2012 WL 5269147, at *5 ("[U]nder Ohio law, directors are personally liable to their company only where their conduct is disloyal.").  *Accord* R.C. § 1701.59 (1986 Committee Comment) (Section 1701.59(D) (now (E)) "frees the director from monetary liability for negligence in any degree").

The Complaint alleges no facts showing that *any* Director—much less six or more of them—ever did anything with a deliberate intent to harm FirstEnergy or with reckless disregard for its interests.  There are no particularized factual allegations that the Directors were involved in the Company's contributions to Generation Now or, more importantly, believed that they were in any way improper.  The sections of the Complaint devoted to "Substantive Allegations" and the purported violation of Section 14(a) are completely silent as to anything the Outside Directors ever knew or did with respect to Householder and Generation Now.[10]  (¶¶ 49-216.)

### (a) No Substantial Likelihood Of Liability For Breach Of Fiduciary Duty

There are numerous problems with the Complaint's allegations regarding FirstEnergy's contributions to Generation Now.  They do not establish that half of the Directors face a substantial likelihood of personal liability for breach of fiduciary duty.

*No facts about involvement in contributions to Generation Now*.  The allegations do not demonstrate that at least six Directors are substantially likely to be found to have done something with a "deliberate intent to cause injury to the corporation or . . . with reckless disregard for [its]

_____

[10] The Section 14(a) claim does not raise a substantial likelihood of liability for at least six Directors, because Plaintiffs have failed to plead that claim adequately, as set forth in Section I above.

best interests."  R.C. § 1701.59(E).  Far from it; the Complaint alleges no facts, much less

particularized ones, about the Directors' involvement in the Company's contributions to

Generation Now.  *See Ferro I*, 2006 WL 2038659, at *6 (complaint failed to plead futility where

it had no "particular facts whatsoever to establish what roles, if any, the individual Defendants

had in causing and/or covering up the [alleged reporting] irregularities"); *Davis*, 259 F. Supp. 2d

at 671 (complaint did not "allege facts showing that all of the board members were involved in

the alleged misconduct").  The Complaint does "not plead, with any specificity, which

documents, which conversations, which employees, which meetings, or which reports" show that

the Outside Directors were involved in the Company's contributions to Generation Now.  *Ferro*

*I*, 2006 WL 2038659, at *6.  Indeed, the Complaint contains no "particular facts whatsoever to

establish what roles, if any, the Defendants had in causing and/or covering up" the alleged

wrongdoing.  *Davis*, 259 F. Supp. 2d at 671.

Effectively conceding as much, Plaintiff asserts the Directors must have known about and

approved the contributions to Generation Now because of their "sheer size."  (¶ 301.)  But "[t]he

law does not presume that the directors of a large organization like [FirstEnergy] are aware of

every action by every employee," and there are no particularized facts to back up that assertion

in the Complaint.  *Stanley*, 2012 WL 5269147, at *6; *see also Monday*, 2011 WL 5974664, at *5

(rejecting "must have known" allegation based on service on the board).

The Complaint simply asserts that there is no way that "***$60 million***" in payments could

be made "without the Director Defendants' approval and participation."  (¶ 301 (emphasis in

original).)  But these payments occurred in installments over the course of three years (¶ 91), and

$60 million would be a miniscule fraction (less than one quarter of 1%) of the Company's ***$33***

***billion of revenue*** over the three-year period in which contributions were made.  *See In re*

*GoPro, Inc.*, 2020 WL 2036602, at *13 (Del. Ch. Apr. 28, 2020) (dismissing for failure to plead futility; rejecting allegation that the board knowingly misled investors about "inventory levels for a product that would comprise only 10% of the Company's revenue").  The Complaint also admits at several points that the Generation Now contributions came from FirstEnergy "affiliates" or "entities" (¶¶ 43, 90-91, 204), without specifying how much came from the Company versus, for example, Energy Harbor Corp. (formerly FirstEnergy Solutions Corp.), a separate corporation that has been under separate management with a separate board since 2016. Absent such details, it is impossible to ascertain what contributions were actually made by FirstEnergy.  (*See e.g.*, ¶ 130 (alleging that Jones said that only 25% of the Generation Now contributions referenced in the federal criminal complaint were from FirstEnergy, without disputing the truth of his statement).)  A complaint with properly particularized allegations would have acknowledged that FirstEnergy's contributions to Generation Now were but a portion of the $60 million.

In any event, the Directors cannot possibly face a substantial likelihood of personal liability for breach of fiduciary duty based on FirstEnergy's exercise of its First Amendment rights.  All citizens, including corporations, have the fundamental right to speak on issues of public importance. *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 789-92 (1978).  Political speech is "indispensable to decisionmaking in a democracy, and this is no less true because the speech comes from a corporation."  *Id.* at 777.  The Supreme Court has long held that "[t]he right to participate in democracy through political contributions" is protected by the Constitution. *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014).  It is not illegal to contribute money to political candidates or to organizations that support controversial public-policy positions that are in the contributor's interests; neither is it illegal to spend money to promote or support public-policy

positions (even if they coincide with one's economic interests) or to seek "legislative solutions" to problems. Like other citizens, FirstEnergy had the explicit First Amendment right "to lobby . . . officials to enact favorable legislation." *FTC*, 493 U.S. at 426. *See also Citizens United*, 558 U.S. at 350-51 (holding that the First Amendment protects corporation's "ability to engage in public discussion" by contributing to a 501(c)(4) organization).

Plaintiffs' drumbeat of conclusory allegations about "astronomical, illegal lobbying expenditures" is never backed up by particularized facts—far less particularized facts relating to at least six of the Directors. (*E.g.*, ¶¶ 106, 2, 9, 79, 225.) The Complaint never identifies a single law or regulation about "lobbying expenditures" that FirstEnergy violated, or pleads facts that would show a violation. Nor does it contain anything showing that money used for speech about policy issues (*e.g.*, ads or mailers) or contributions to organizations engaged in policy speech are "lobbying" within the meaning of any laws or regulations that conceivably apply. Calling speech-related activities a "criminal scheme" (¶¶ 107-08) or a "bribe" (*e.g.*, ¶¶ 1-2, 6-10, 81, 115), is not a particularized fact and does establish a substantial likelihood of personal liability for any of the Directors, much less six or more of them.

<u>*No facts about knowledge of how others were using Generation Now funds*</u>. Besides lacking specific facts about the Directors' involvement in the contributions to Generation Now, the Complaint also does not state any particularized facts suggesting that the Directors knew how other people were using Generation Now's funds, much less knew that any such use was improper or illegal. A complaint does not plead demand futility even when it alleges specific facts showing that a company's own "*employees* acted with conscious disregard to compliance with [a federal statute], regulation, and the Company's internal controls." *Stanley*, 2012 WL 5269147, at *6 (emphasis in original). Rather, the complaint must "plead specific facts stating

that the *Director Defendants* acted with conscious disregard with respect to the same." *Id.* (emphasis in original). *See also Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) (complaint alleging "many violations of federal securities and tax laws" failed to plead demand futility because it did "not plead with particularity the specific conduct in which each [director] defendant 'knowingly' engaged, or that the defendants knew that such conduct was illegal").

Here, the Complaint contains no facts showing that the board knew or believed that Generation Now's funds were being misappropriated by Householder or others. *See, e.g.*, *Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*, 2016 WL 4076369, at *12 (Del. Ch. Aug. 1, 2016) (dismissing for failure to plead demand futility where "the Complaint indicates that the Board, at all times, was under the impression that its conduct did not violate applicable antitrust laws"), *aff'd*, 158 A.3d 449 (Del. 2017). Nor does it allege anything specific the board did or did not do in response to any information provided to it about Generation Now, anything about what happened at any board or committee meeting, or anything about any information ever provided to the board by management.[11] That means the Complaint cannot show that the Directors intended to harm FirstEnergy or recklessly disregarded its interests. The Complaint offers only "must have known" allegations, which courts "routinely reject" as "conclusory." *See, e.g.*, *Stanley*, 2012 WL 5269147, at *6.[12]

---

[11] The Complaint alleges that, after the filing of the federal criminal complaint against Householder and his associates, Mr. Jones publicly stated that FirstEnergy had made payments to Generation Now. (¶ 130.) But this admission does not suggest knowledge of illegality. If anything, the quote suggests that Mr. Jones believed that the contributions were lawful; it demonstrates nothing about any other Director's involvement in the Company's contributions to Generation Now or belief that funds were being misappropriated by Householder or others—far less that the Directors "approved" any purported "bribes." Concluding otherwise would ignore that Ohio law presumes the Directors were acting in good faith and in a manner they reasonably believed was in the best interests of the Company. *See Stanley*, 2012 WL 5269147, at *7; *Davis*, 259 F. Supp. 2d. at 670. *See also Melbourne Mun. Firefighters*, 2016 WL 4076369, at *12 (complaint failed to show the board acted in bad faith where, among other things, the board "publicly proclaimed the Company's innocence").

[12] Courts routinely dismiss complaints for failure to plead demand futility where, as here, the complaints rest on "must have known" allegations. *See, e.g.*, *Desimone v. Barrows*, 924 A.2d 908, 940 (Del. Ch. 2007) ("[C]ourts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must

        **(b)**       **No Substantial Likelihood Of Liability For Alleged Violations Of Internal Policies**

The Complaint's allegations about supposed non-compliance with FirstEnergy's Code of Business Conduct or other company policies (¶¶ 230-41) do not excuse Plaintiffs' failure to make a demand.  "[D]irector liability is not measured by the aspirational standard established by the internal documents detailing a company's oversight system."  *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 135 (Del. Ch. 2009).  *See also Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000) ("Aspirational ideals of good corporate governance practices for boards of directors . . . do not define standards of liability.").  Moreover, the Complaint contains no particularized allegations that any Director ever violated the Code of Business Conduct's fair dealing and conflicts-of-interest guidelines, or that any Director was influenced by any improper consideration.  (*See supra* Sections B.5 & 6, 32-34.)

        **(c)**       **No Substantial Likelihood Of Liability Relating To Monitoring Controls**

Plaintiffs offer as another excuse that the Directors supposedly "knew or recklessly disregarded reports and 'red flags' that FirstEnergy was paying massive amounts of illicit bribes to Householder."  (*E.g.*, ¶ 254.)  This, too, does not work.  For starters, the Complaint does not identify any "red flags" that would have alerted the Directors that the payments were illegal.  *See Stanley*, 2012 WL 5269147, at *6 (directors are potentially liable "only if they ignore 'red flags'

---

have been deficient, and the board must have known so.") (quoted by *Stanley*, 2012 WL 5269147, at *6); *In re Goldman Sachs Mortg. Servicing S'holder Deriv. Litig.*, 42 F. Supp. 3d 473, 478 (S.D.N.Y. 2012) (allegations by regulator that the board "must have known" of "a pattern of misconduct" and "deficient practices" in mortgage servicing and foreclosures not enough); *In re Oracle Corp. Deriv. Litig.*, 2011 WL 5444262, at *5 (N.D. Cal. Nov. 9, 2011) (allegations did not show the board "had actual, and detailed, knowledge" of an alleged overbilling scheme).

Courts likewise reject attempts to equate a supposed "bad outcome" with misconduct by the board.  *See, e.g.*, *In re Gen. Motors Co. Deriv. Litig.*, 2015 WL 3958724, at *11 (Del. Ch. June 26, 2015) ("The Plaintiffs conflate concededly *bad outcomes* from the point of view of the Company with *bad faith* on the part of the Board.") (emphasis in original); *Stanley*, 2012 WL 5269147, at *6 ("Plaintiff's argument that if there was a regulatory violation, then *ipso facto*, the Board must have breached its fiduciary duties is improper.").

that actually come to their attention, warning of compliance problems").  Nor does it attempt to identify "which documents, which conversations, which employees, or which reports show the supposed failure and the necessary intent to harm or reckless disregard."  *Id.* at *8.

The only thing the Complaint explicitly characterizes as a "red flag" is the fact that commercials disclosed that they were "paid for by Generation Now" (¶ 112), which would not have alerted the Directors even that some of Generation Now's contributions came from FirstEnergy, let alone that the payments were (supposedly) illegal.  Likewise, the media articles about contributions made to Householder referenced in the Complaint (¶¶ 97-98, 105, 113) do not constitute "red flags" because none of these articles suggest that any contributions were illegal, far less that they were "massive amounts of illicit bribes."  Indeed, one article noted that a "political campaign by a business aiming to change Ohio law isn't necessarily unusual," Ex. G, and another noted that FirstEnergy responded to a request for comment by indicating that it "makes and discloses all campaign contributions in accordance with applicable state and federal laws," Ex. H.  Even assuming these articles were known to the Directors (and the Complaint does not allege they were), the articles were not "red flags that FirstEnergy was paying massive amounts of illicit bribes," as asserted.  *See, e.g.*, *In re Citigroup, Inc. S'holder Deriv. Litig.*, 2009 WL 10696530, at *6-7 (S.D.N.Y. Aug. 25, 2009) (holding "newspaper articles chronicling the collapse of the subprime mortgage market" did not constitute "red flags" because they did not show "how the board's oversight mechanisms were inadequate or how the director defendants knew of these inadequacies and consciously ignored them").

The Complaint also concedes that the Company had "controls" in place for its lobbying and related activities and implemented enhancements to those controls under the board's direction.  (¶¶ 67, 76, 228, 230-40; *see also supra* at 23 n.9.)  The existence of policies relating to

lobbying coupled with the Company's later, further refinement of those policies cannot be squared with a conclusory allegation that the Directors ignored supposed "red flags" (¶ 254). *See, e.g.*, *General Motors*, 2015 WL 3958724, at *14 (rejecting argument that board failed to establish reporting systems where "the Complaint not only fails to plead with particularity" a lack of procedures but also "actually concedes the existence of information and reporting systems"); *GoPro*, 2020 WL 2036602, at *13 (there can be no claim that board consciously disregarded oversight controls where the board took further action to address information regarding a supposed "red flag").

Moreover, the Complaint never explains how FirstEnergy's policies, no matter how closely the board attended to them, could have ferreted out an allegedly criminal scheme perpetrated by individuals unaffiliated with FirstEnergy and charged with secretly misusing and misappropriating funds from Generation Now *after* FirstEnergy made those contributions. Instead, the Complaint offers only the assertion that the Directors "must have been aware" of the existence and alleged illegality of the contributions, which is not enough. (¶ 11.) "[C]ourts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so." *Stanley*, 2012 WL 5269147, at *6 & n.16 (collecting cases).

### 5. Allegations Of Executive Compensation Do Not Show Demand Futility

The Complaint alleges that Outside Directors Demetriou, O'Neil, Pappas, Pianalto, and Turner cannot consider a demand because they approved an executive compensation plan that supposedly improperly incentivized the Company's officers to misuse corporate resources. (¶¶ 258, 278, 283, 287, 296.) But as explained above, *supra* 24-29, the Complaint never pleads particularized facts about the involvement or knowledge of any Outside Director in the

Generation Now payments or that the payments themselves were illegal, so the inference that the Directors designed the executive compensation system to incentivize illegal contributions by the officers is specious.  Nor does the Complaint explain how a garden-variety system basing compensation on "the annual financial performance of FirstEnergy" (¶ 81) was likely motivated by "***deliberate intent to cause injury to the corporation***" or "***reckless disregard for the best interests of the corporation***."  R.C. § 1701.59(E) (emphasis added).  Directors have "wide discretion to make decisions on executive compensation," *Brehm*, 746 A.2d at 262 n.56, and the Complaint alleges no facts showing that the Directors adopted performance-based compensation for any reason other than to align officers' "interests with those of the stockholders and incentivize the production of wealth," *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at \*13-14 (Del. Ch. Oct. 12, 2011) (dismissing for failure to plead futility; rejecting allegation that compensation "plan incentivizes employees to leverage Goldman's assets and engage in risky behavior in order to maximize yearly net revenue and their yearly bonuses").

### 6.    Serving On Other Boards That Contributed To Householder Does Not Excuse Demand

Plaintiffs contend that demand is excused as to Outside Directors Reyes, Misheff, Pianalto, Demetriou, and Turner because they served in positions with other companies that made contributions to Householder (¶ 299), but this falls well short of showing the presumption that the Directors can "make unbiased, independent business judgments about whether it would be in the corporation's best interests to file the action does not exist in this case," *Ferro II*, 511 F.3d at 618.  The contributions at issue are immaterial (ranging from $1,000 to $5,500), nothing is alleged about any Director's role (if any) in the decision to make any of these payments, and several of the payments purportedly made by Duke Energy, Exxon, and Coca-Cola appear to have occurred when Reyes, Demetriou, and Turner were no longer affiliated with those

-33-

companies.  (¶ 299.)  This allegation is also beside the point because it does not show a disqualifying personal interest or that any Director was dominated or controlled by Householder or anyone else.  Indeed, these contributions attest to nothing beyond the fact that support for Householder was commonplace prior to July 2020.

## **CONCLUSION**

For the reasons set forth above, the FirstEnergy Defendants respectfully request that the Court dismiss the Complaint.

Dated:  February 24, 2021

Respectfully submitted,

/s/ Geoffrey J. Ritts
Geoffrey J. Ritts (0062603)
Robert S. Faxon (0059678)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Email:  gjritts@jonesday.com
Email:  rfaxon@jonesday.com

Marjorie P. Duffy (0083452)
Jordan M. Baumann (0093844)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Telephone:  (614) 469-3939
Facsimile:  (614) 461-4198
Email:  mpduffy@jonesday.com

*Attorneys for Defendants Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Leslie M. Turner, Steven E. Strah, James F. Pearson, K. Jon Taylor and Nominal Defendant FirstEnergy Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed electronically on February 24, 2021. Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Marjorie P. Duffy
Marjorie P. Duffy (0083452)

*One of the Attorneys for Defendants Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Leslie M. Turner, Steven E. Strah, James F. Pearson, K. Jon Taylor and Nominal Defendant FirstEnergy Corp.*