IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EMPLOYEES RETIREMENT SYSTEM          )    CASE NO. 2:20-CV-04813
OF THE CITY OF ST. LOUIS, et al.,    )
                                     )    CHIEF JUDGE ALGENON L. MARBLEY
                  Plaintiffs,        )
                                     )    MAGISTRATE JUDGE KIMBERLY A.
         v.                          )    JOLSON
                                     )
CHARLES E. JONES, et al.,            )
                                     )
                  Defendants.        )
                                     )
                                     )
                                     )
                                     )
                                     )
                                     )

**MEMORANDUM IN SUPPORT OF MOTION TO STAY OF THE SPECIAL
LITIGATION COMMITTEE OF THE BOARD OF DIRECTORS OF
<u>NOMINAL DEFENDANT FIRSTENERGY CORP.</u>**

## TABLE OF CONTENTS

Page

REASONS FOR GRANTING ORAL ARGUMENT ...................................................................1

INTRODUCTION ......................................................................................................................1

FACTUAL BACKGROUND.......................................................................................................3

     **I.**     Plaintiffs' Complaint and the Motion to Dismiss ....................................................3

     **II.**     The Special Litigation Committee ..........................................................................5

ARGUMENT ..............................................................................................................................7

     **I.**     The Court Should Stay the Action, Including All Discovery by Plaintiffs. ............7

     **II.**     The Requested Six-Month Stay Is Consistent with Precedent and
            Reasonable under the Circumstances......................................................................11

CONCLUSION..........................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Abbey v. Computer & Comm. Tech. Corp.*, 457 A.2d 368 (Del. Ch. 1983) ...................................11

*Biondi v. Scrushy*, 820 A.2d 1148 (Del. Ch. 2003) ........................................................................10

*Booth Family Trust v. Jeffries*, 640 F.3d 134 (6th Cir. 2011).......................................................7, 9

*Drage v. Procter & Gamble*, 119 Ohio App. 3d 19 (Ohio Ct. App. 1997) ....................................7

*Holmstrom v. Coastal Indus., Inc.*, 645 F. Supp. 963 (N.D. Ohio 1984)....................................7, 8

*In re BigLots, Inc. S'holder Litig.*, 2017 WL 2215461 (S.D. Ohio May 19, 2017).............8, 10, 11

*In re BigLots, Inc. S'holder Litig.*, Case No. 2:12-cv-00445-MHW-KAJ at Dkt. No. 81
     (S.D. Ohio Dec. 15, 2016) ......................................................................................................10

*In re Gas Natural, Inc.*, 2015 WL 3557207 (N.D. Ohio June 4, 2015).......................................7, 9

*In re InfoUSA, Inc. S'holder Litig.*, 2008 WL 762482 (Del. Ch. May 17, 2008) ......................9, 11

*In re Oracle Corp. Deriv. Litig.*, 2019 WL 6522297 (Del. Ch. Dec. 4, 2019) .............................12

*In re Oracle Corp. Deriv. Litig.*, 808 A.2d 1206 (Del. Ch. 2002) ...................................................9

*Kahn v. Kolberg Kravis Roberts & Co., L.P.*, 23 A.3d 831 (Del. 2011) .......................................11

*Kaplan v. Wyatt*, 484 A.2d 501 (Del. Ch. 1984) ........................................................................9, 11

*Katell v. Morgan Stanley Group*, 1993 WL 390525 (Del. Ch. Sept. 27, 1993) ...........................11

*Lewis v. Fuqua*, 502 A.2d 962 (Del. Ch. 1985)...............................................................................9

*McDonald v. Medical Mutual of Cleveland, Inc.*, 41 Ohio Misc. 158 (Ohio Ct. Comm.
     Pleas 1974).................................................................................................................................8

*Miller v. Bargaheiser*, 70 Ohio App. 3d 702 (Ohio App. Ct. 1990).........................................7, 8

*Silverstein v. Larson*, 2005 WL 435241 (D. Minn. Feb. 25, 2005) ...............................................11

*Strougo ex rel. Brazil Fund, Inc. v. Padegs*, 986 F. Supp. 812 (S.D.N.Y. 1997) .........................12

*Zapata v. Maldonado*, 430 A.2d 779 (Del. 1981)........................................................................8, 9

**STATUTES**

R.C. 1701.59 ...................................................................................................................7

**OTHER AUTHORITIES**

Press Release, "FirstEnergy Announces Agreement with Icahn Capital," FirstEnergy
   Newsroom (March 16, 2021), retrieved from https://firstenergycorp.com/
   newsroom/news_articles/firstenergy-announces-agreement-with-icahn-capital.html...............6

Press Release, "Lisa Winston Hicks and Paul Kaleta Elected to FirstEnergy Board of
   Directors," FirstEnergy Newsroom (June 30, 2021), retrieved from
   https://firstenergycorp.com/
   newsroom/news_articles/lisa-winston-hicks-and-paul-kaleta-elected-to-firstenergy-
   board-.html........................................................................................................................6

Press Release, "Sandra Pianalto to Conclude Service to FirstEnergy Board of Directors;
   Melvin Williams Nominated for Election at the 2021 Annual Meeting," FirstEnergy
   Newsroom (March 26, 2021), retrieved from
   https://www.firstenergycorp.com/newsroom/news_articles/sandra-pianalto-to-
   conclude-service-to-firstenergy-board-of-dire.html .................................................................6

## REASONS FOR GRANTING ORAL ARGUMENT

In light of the complexities inherent in a litigation of this scope and the relatively unusual posture of this case and related ones, the Special Litigation Committee respectfully requests the court grant oral argument on this motion. This Action alone involves several consolidated cases brought by various shareholders derivatively on behalf of the Company against its Officers and Directors. The same Plaintiffs and others have also intervened and brought identical claim in actions pending before the United States District Court for the Northern District of Ohio and Court of Common Pleas, Summit County, Ohio. In light of this posture, the Special Litigation Committee believes that oral argument will help the court fully evaluate and resolve this motion.

## INTRODUCTION

It is a fundamental principle of Ohio law that the directors of an Ohio corporation have the power to determine the affairs of the corporation, including decisions about whether to pursue litigation on its own behalf. Where, as here, a majority of a board of directors has been found to be incapable of impartially evaluating the claims at issue, a board may delegate its authority to make decisions about whether to pursue litigation to a special litigation committee composed of one or more disinterested and independent directors. The special litigation committee is empowered to review the allegations of a derivative complaint and decide on behalf of the corporation whether and how the claims at issue will be addressed. Ohio law sets forth a framework for judicial review of the decisions of a special litigation committee, instructing that a special litigation committee's determination will be respected so long as the committee's members are independent and disinterested, the committee conducts its inquiry in good faith, and the committee's recommendation is the product of a thorough investigation.

In recognition of these core principles — and just weeks after this Court's decision denying the Defendants' Motion to Dismiss — the Board of Directors (the "Board") of nominal defendant FirstEnergy Corp., an Ohio corporation, formed a special litigation committee composed of four independent and disinterested directors who joined the Board within the past few months: Lisa Winston Hicks, Paul Kaleta, Jesse A. Lynn, and Melvin D. Williams, effective July 1, 2021 (collectively, the "SLC"). June 30, 2021 Status Report, ECF No. 116 at 2; Status Report, Ex. 1, ECF No. 116-1 at 2. None of the four members of the SLC has been named as a defendant in this action, nor could they be. None served on the Board or had any affiliation with the Company during the period of alleged wrongdoing on which Plaintiffs' causes of action are premised. None is alleged to have had any involvement in that alleged wrongdoing. *See* Board Resolution, Ex. A.[1]

The Board delegated to the SLC authority to investigate all matters related to the derivative claims asserted in this action ("Action") and other derivative litigations brought on the Company's behalf related to the same subject matter and to take all action that it deems advisable, appropriate, and in the best interest of the Company and its shareholders in connection with these derivative claims. The SLC has been delegated full power to act on behalf of the Company, and its determination is not subject to review or approval by FirstEnergy's Board. *See* Board Resolution, Ex. A.

The SLC promptly retained independent counsel and began a thorough investigation of the claims asserted on behalf of the Company. These claims are asserted against 17 Defendants and are set forth in a Complaint spanning 336 paragraphs. The SLC now moves for a six-month stay

---

[1] The Board Resolution forming the SLC is submitted to this Court as Exhibit A to the Declaration of Mary M. Swann, FirstEnergy's Corporate Secretary.

of this Action to facilitate its independent review, investigation and determination with respect to the potential claims asserted by Plaintiffs. For the reasons set forth below, and pursuant to controlling Ohio law, this Court should stay this Action to permit the newly formed SLC reasonable time to investigate and assess the claims asserted on the Company's behalf. [2]

## FACTUAL BACKGROUND

### I.      Plaintiffs' Complaint and the Motion to Dismiss

Plaintiffs bring this lawsuit on behalf of the Company, an Ohio corporation, against certain of FirstEnergy's directors and officers (collectively, the "Officer and Director Defendants").[3] They assert claims against the Officer and Director Defendants (i) under Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n, alleging that those defendants caused FirstEnergy to make material misrepresentations in FirstEnergy's Annual Reports and proxy statements, Compl.,

---

[2]     The SLC will also move to stay the other derivative actions asserting related claims on the Company's behalf, *Gendrich v. Anderson, et al.*, Case No. CV-2020-07-2107, pending in the Court of Common Pleas, Summit County, Ohio, and *Miller v. Anderson, et al.*, Case No. 5:20-cv-01743, pending in the United States District Court for the Northern District of Ohio (collectively, the "Other Derivative Actions").

[3]     The Director Defendants include: (1) Charles E. Jones, Chief Executive Officer of FirstEnergy from 2015 until October 29, 2020; (2) Michael J. Anderson, Director since 2007 and Chair of the Audit Committee; (3) Steven J. Demetriou, Director since 2017 and Chair of the Finance Committee; (4) Julia J. Johnson, Director since 2011; (5) Donald T. Misheff, Director since 2012; (6) Thomas N. Mitchell, Director since 2016 and Chair of the Operations and Safety Oversight Committee; (7) James F. O'Neil, III, Director since 2017 and Chair of the Compensation Committee; (8) Christopher D. Pappas, Director since 2011 and current Executive Director; (9) Sandra Pianalto, Director since 2018; (10) Luis A. Reyes, Director since 2013; and (11) Leslie M. Turner, Director since 2018. *See* Compl. ECF No. 75 at ¶¶ 22–33. The Officer Defendants include: (1) Michael J. Dowling, former Senior Vice President, External Affairs; (2) James F. Pearson, former Chief Financial Officer; (3) Robert Reffner, former Senior Vice President and Chief Legal Officer; (4) Steven E. Strah, President and acting Chief Executive Officer; (5) K. Jon Taylor, former Vice President, Controller, and Chief Accounting Officer, former President of Ohio Operations, former Vice President of Utilities, and current Chief Financial Officer; and (6) Ebony Yeboah-Amankwah, former Vice President, General Counsel and Chief Ethics Officer. *Id.* at ¶¶ 34–39.

ECF. No. 75 at ¶¶ 156–216; and, (ii) under Ohio state law, for breach of fiduciary duty, failure to supervise management, unjust enrichment, and corporate waste. *Id*. at ¶¶ 303–36.

Plaintiffs' allegations are based on a criminal complaint filed on July 17, 2020 against the former Ohio House Speaker Larry Householder and certain of his associates, which alleges payments from the Company to Householder in exchange for favorable legislation. Mot. to Dismiss Op., ECF No. 93 at 2; Compl., ECF No. 75 at ¶¶ 1, 2, 7. Plaintiffs claim that the Company's former CEO Charles Jones and other senior executives were "directly and actively involved in the illegal bribery scheme." Compl., ECF No. 75 at ¶ 8. According to the Complaint, the Director and Officer Defendants permitted the Company to make improper payments to Householder, were responsible for misleading statements in FirstEnergy's public filings with the SEC regarding the Company's compliance with laws, and committed waste by paying performance-based compensation to Jones and others who were involved in improper activities.

On May 11, 2021, this Court denied Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint. Mot. to Dismiss Op., ECF No. 93 at 1. With respect to the Section 14(a) claim, it concluded that Plaintiffs adequately pled that Defendants "caused the Company to issue Proxy Statements that concealed an illegal bribery scheme, its implications for FirstEnergy's overall business and financial health, and the deficient governance practices at the Company that allowed it to proceed." Mot. to Dismiss Op., ECF No. 93 at 14. The Court further concluded that Plaintiffs have adequately alleged that Defendants had "ample notice of the corrupt relationship between FirstEnergy and Householder . . . and that they assured the shareholders they were protecting the Company from risk in the same documents they used to seek re-election and compensation approval." *Id*. at 28. The Court also chose to exercise supplemental jurisdiction over the remaining state-law claims. *Id*. at 34.

4

The Court found that each of the eleven Director Defendants lacked the ability to properly consider a pre-suit demand because they faced a substantial threat of personal liability for Plaintiffs' claims and were alleged to have been involved in the conduct at issue in the Complaint. *Id*. at 39-43.

## II.     The Special Litigation Committee

On June 29, 2021, following a search to identify candidates to serve as new independent board members for appointment to a special litigation committee, the Board increased its size from 14 to 16 directors and appointed two new, independent directors of the Company to fill such vacancies, Lisa Winston Hicks and Paul Kaleta.  The Board then formed the SLC, composed of newly appointed directors Hicks and Kaleta, plus Jesse A. Lynn, Melvin D. Williams, who joined the Company's Board in March 2021.  All four SLC members are independent and disinterested.

Pursuant to a resolution approved during the  June 29, 2021 Board meeting, the Board empowered the SLC to evaluate this suit, other pending derivative actions, and demands received by shareholders, and take any action it deems appropriate and in the best interests of the Company and its shareholders ("Board Resolution").  *See* June 30, 2021 Status Report, ECF No. 116 at 2; *see also* Board Resolution, Ex. A.  The Board delegated its "full authority to take all actions" to the SLC to investigate the claims asserted on the Company's behalf, to determine whether this Action and the Other Derivative Actions are in FirstEnergy's best interests, and to determine whether and how to continue all or part of the Action and the Other Derivative Actions.  June 30, 2021 Status Report, ECF No. 116 at 2; *see also* Board Resolution, Ex. A.  The Board Resolution makes clear that the SLC's determinations and decisions are final and binding on the Company and are not subject to Board review or objection.  *See* Board Resolution, Ex. A

Each of the four SLC members is an accomplished professional with no personal or professional ties to the Company and none of them had any role in the events giving rise to this

Action or the Other Derivative Actions.  None of the four members of the committee has any personal interest in or prior relationship with the Company or any of the officers and directors that are likely to be the subject of the SLC's investigation.  *See* Board Resolution, Ex. A.

Lisa Winston Hicks is the Chair of the Board of MV Transportation, Inc. and formerly served as the Executive Vice President and General Counsel for MV Transportation.  *See* Press Release, "Lisa Winston Hicks and Paul Kaleta Elected to FirstEnergy Board of Directors," FirstEnergy Newsroom (June 30, 2021), retrieved from https://firstenergycorp.com/ newsroom/news_articles/lisa-winston-hicks-and-paul-kaleta-elected-to-firstenergy-board-.html. Paul Kaleta is the Managing Director of SERC Consulting, an energy policy and strategy firm, and the former Executive Vice President and General Counsel at First Solar, Inc.  *Id*.  Jesse A. Lynn is the General Counsel of Icahn Enterprises, LP and a Director on the Boards of Cloudera, Inc. and Conduent Inc.  *See* Press Release, "FirstEnergy Announces Agreement with Icahn Capital," FirstEnergy Newsroom (March 16, 2021), retrieved from https://firstenergycorp.com/ newsroom/news_articles/firstenergy-announces-agreement-with-icahn-capital.html.  Melvin D. Williams recently retired as the President of Nicor Gas and Senior Vice President of Southern Company Gas.  *See* Press Release, "Sandra Pianalto to Conclude Service to FirstEnergy Board of Directors; Melvin Williams Nominated for Election at the 2021 Annual Meeting," FirstEnergy Newsroom (March 26, 2021), retrieved from https://www.firstenergycorp. com/newsroom/news_articles/sandra-pianalto-to-conclude-service-to-firstenergy-board-of- dire.html.

The Board empowered the SLC to retain, at the Company's expense, such legal and other advisers as it may deem necessary to discharge its duties.  *See* Board Resolution, Ex. A.  Shortly after its formation, the SLC retained the undersigned to assist the SLC in conducting its work.

## ARGUMENT

**I.   The Court Should Stay the Action, Including All Discovery by Plaintiffs.**

It is a bedrock principle of Ohio law that the directors of a corporation are "charged with the responsibility of making decisions on behalf of the corporation." *Drage v. Procter & Gamble*, 119 Ohio App. 3d 19, 24 (Ohio Ct. App. 1997) (citing R.C. 1701.59).  Ohio law recognizes that a corporation's directors "are the proper parties to bring suit on behalf of the corporation or, in their business judgment, to forgo a lawsuit." *Id.*; *see also Holmstrom v. Coastal Indus., Inc.*, 645 F. Supp. 963, 964 (N.D. Ohio 1984) (the business judgment rule "constitutes judicial recognition of the fact that a private corporation should, generally speaking, have the right to control its destiny respecting the prosecution of claims held by the corporation"); *Miller v. Bargaheiser*, 70 Ohio App. 3d 702, 706 (Ohio App. Ct. 1990) (under Ohio law, "corporations should be permitted to manage themselves without interference from the courts").

A company's power to decide whether and how to assert corporate claims includes the power to appoint a special litigation committee to determine whether the prosecution of derivative litigation is in the best interests of the company. *In re Gas Natural, Inc.*, 2015 WL 3557207 at *26 (N.D. Ohio June 4, 2015) (quoting *Booth Family Trust v. Jeffries*, 640 F.3d 134, 138 (6th Cir. 2011)); *see also Drage*, 119 Ohio App. 3d at 24 (citing R.C. 1701.59).  Ohio law contemplates that where (as here) a majority of a board of directors have been found insufficiently disinterested or independent to consider a demand, the board may delegate its authority to a special litigation committee of one or more disinterested and independent directors to review the allegations of a derivative complaint and decide whether and how the corporation's claims will be pursued. *See Miller*, 70 Ohio App. 3d at 707.

Any decision by the SLC regarding the prosecution or termination of this Action is subject to judicial review in a procedure prescribed by Ohio law, which requires a court to defer to the

judgment of a special litigation committee regarding whether to pursue litigation on a company's behalf so long as (1) the special litigation committee "is comprised of independent, disinterested [directors];" (2) the special litigation committee "conducts its inquiry in good faith;" and (3) the special litigation committee's "recommendation is the product of a thorough investigation." *Id.*; *see also Holmstrom*, 645 F. Supp. at 966 (quoting *McDonald v. Medical Mutual of Cleveland, Inc.*, 41 Ohio Misc. 158, 162 (Ohio Ct. Comm. Pleas 1974)) ("A business judgment of the corporate directors will not be set aside absent a showing of 'fraud, abuse of discretion or bad faith.'").[4]

Where a board of directors delegates its authority to a special litigation committee, Ohio law contemplates that a derivative action advanced by a shareholder should be stayed except if "special circumstances" are shown. *In re BigLots, Inc. S'holder Litig.*, 2017 WL 2215461 at *5 (S.D. Ohio May 19, 2017). Such a stay permits a special litigation committee time to investigate and assess whether pursuit of potential claims would be in a company's best interest. Indeed, under Delaware law, on which Ohio law explicitly relies in this regard, courts have a "*duty* to stay derivative actions at the insistence of a special litigation committee, 'pending the investigation and report of the [special litigation committee]." *In re Oracle Corp. Deriv. Litig.*, 808 A.2d 1206, 1211 (Del. Ch. 2002) (quoting *Kaplan v. Wyatt*, 484 A.2d 501, 510 (Del. Ch. 1984)) (emphasis added); *see also In re InfoUSA, Inc. S'holder Litig.*, 2008 WL 762482 at *2 (Del. Ch. May 17, 2008) (holding that courts "routinely grant[] reasonable stays to allow [special litigation committees] to

---

[4] In so holding, the court in *Miller* expressly referenced the seminal decision of the Delaware Supreme Court in *Zapata v. Maldonado*, 430 A.2d 779 (Del. 1981), regarding the power of a special litigation committee to control litigation brought on a company's behalf. *Miller*, 70 Ohio App. Ct. at 706. Notably, the Ohio court chose to reject one aspect of the *Zapata* framework, which required that a court reviewing the decision of a special litigation committee, courts analyze whether that decision was reasonable. *Id.* at 707. Because such a requirement would be "irreconcilable with the spirit of the business judgment rule", *id.*, the court concluded that Ohio law is even more deferential to the business judgment of a special litigation committee than Delaware law.

complete their investigations"). Unless the undisputed facts establish that the members of a special litigation committee could *never* be found sufficiently disinterested or independent at the end of its inquiry to meet the requirements of Ohio law, a stay should be granted. *See, e.g., Booth Family Trust*, 640 F.3d at 142-43, 145 (courts will defer to the judgment of the special litigation committee unless "reasonable doubt exists as to the special litigation committee's independence"); *Zapata Corp. v. Maldonado*, 430 A.2d 779, 785 (Del. 1981).

Here, the Board of FirstEnergy properly constituted and empowered the SLC to evaluate and determine whether and how to proceed with claims brought on the Company's behalf in this litigation. *See* Status Report, ECF No. 116 at 2. None of the four members of the SLC is named as a defendant in this litigation and there is no basis to suggest that the members of the SLC have any "potential conflicts of interest or divided loyalties" that would call their independence into question. *See Lewis v. Fuqua*, 502 A.2d 962, 967 (Del. Ch. 1985) (cited by *Booth Family Trust*, 640 F.3d at 146). Indeed, each of the four members of the SLC was appointed months after the events at issue.[5] There is otherwise no allegation that any member of the SLC lacks independence or is interested and there is no basis to doubt that the SLC's recommendation would be respected by this Court once it has completed its investigation. *Biondi v. Scrushy*, 820 A.2d 1148, 1163–64 (Del. Ch. 2003). Consequently, this Action should not be allowed to progress before the SLC has had the opportunity to evaluate the claims asserted here.

Additionally, there are no "special circumstances" that would indicate a stay should not be entered in this Action. *See In re BigLots, Inc. S'holder Litig.*, 2017 WL 2215461 at *5 (S.D. Ohio May 19, 2017). The decision in *In re Big Lots* is instructive. In *Big Lots*, the court granted a special

---

[5]    In any event, questions of committee independence are ordinarily only considered "when a committee seeks to dismiss a derivative action," not when the committee initially seeks a stay. *In re Gas Natural, Inc.*, 2015 WL 3557207 at *25.

litigation committee an initial stay of four months, recognizing the deference owed under Ohio law to a special litigation committee's ability to assess claims asserted on behalf of a corporation. *See* Case No. 2:12-cv-00445-MHW-KAJ at Dkt. No. 81 (S.D. Ohio Dec. 15, 2016). When the special litigation committee sought an additional stay to permit it to move to dismiss the action, the court partially denied the request, finding that "special circumstances" justified departing from the general rule that a special litigation committee should be given time to complete its work. *In re BigLots, Inc., S'holder Litig.*, 2017 WL 2215461 at *5. Specifically, the Court noted that the company had waited *four years* after litigation began to form the special litigation committee, and the parties had already engaged in "extensive merits discovery" before the SLC was formed. *Id*. As the court noted in rejecting the special litigation committee's request to extend the stay of discovery, "if Big Lots wished to avoid merits discovery, the [special litigation committee] should have been assembled years ago." *Id.*

In contrast, here the SLC was formed almost immediately after this Court found that demand was excused and denied Defendants' Motion to Dismiss. Mot. to Dismiss Op., ECF No. 93 at 1; Status Report, ECF No. 116 at 2. The SLC makes this Motion to Stay in advance of the deadline set by this Court. Notation Order, ECF No. 117. The parties have not started producing documents or expended substantial time or effort on discovery. The "policy considerations [that] support a stay" are indisputably present here. *See in re BigLots Inc. S'holder Litig.*, 2017 WL 2215461 at *5. Indeed, without a stay, "the entire rationale of [creating a special litigation committee], *i.e.,* the inherent right of the board of directors to control and look to the well-being of the corporation in the first instance, collapses." *Kaplan v. Wyatt*, 484 A.2d 501, 510 (Del. Ch. 1984).

Moreover, a stay at this early stage presents no meaningful hardship to Plaintiffs that could justify overriding the Board's right to delegate control over these claims to the SLC. This is

especially true because Plaintiffs seek to assert claims that belong to FirstEnergy and have not yet incurred significant costs in prosecuting those claims. This Court should therefore stay all litigation, including discovery, to allow the SLC adequate time to evaluate Plaintiffs' claims and make a recommendation as to the appropriate course of action.

## II.    The Requested Six-Month Stay Is Consistent with Precedent and Reasonable under the Circumstances.

A special litigation committee should be given reasonable time to complete its investigation. *In re InfoUSA, Inc., S'holders Litig.*, 2008 WL 762482 at *2; *see also Abbey v. Computer & Comm. Tech. Corp.*, 457 A.2d 368, 375 (Del. Ch. 1983). The "length of the stay of discovery must be related to the complexity of the derivative action," *Katell v. Morgan Stanley Group*, 1993 WL 390525 at *4 (Del. Ch. Sept. 27, 1993), and the "stay should be sufficient to ensure the [special litigation committee] has a reasonable time to conduct an expeditious, thorough and disinterested investigation." *Silverstein v. Larson*, 2005 WL 435241, at *3 (D. Minn. Feb. 25, 2005) (citing *Abbey*, 457 A.2d at 375).

Consistent with this objective, "courts generally allow [special litigation committees] between six and ten months to investigate and report on pending derivative actions." *Id.*; *see also, e.g.*, *Kahn v. Kolberg Kravis Roberts & Co., L.P.*, 23 A.3d 831, 842 n.53 (Del. 2011) (nine-month period for the special litigation committee's investigation and report); *Strougo ex rel. Brazil Fund, Inc. v. Padegs*, 986 F. Supp. 812, 815-16 (S.D.N.Y. 1997) (granting stay to permit approximately six-month SLC investigation); *in re Oracle Corp. Deriv. Litig.*, 2019 WL 6522297 at *7 (Del. Ch. Dec. 4, 2019) (granting a six-month stay to allow the special litigation committee to decide whether to pursue the suit and then allowing a reasonable extension of the stay).

The six-month stay requested by the SLC is consistent with these precedents and reasonable under the circumstances. The Complaint spans 123 pages and 336 paragraphs,

asserting claims against 17 defendants over a nearly three year period. The Complaint's allegations are drawn from a lengthy criminal complaint, A thorough investigation of these allegations will require the SLC to review and evaluate the merits of the claims brought by Plaintiffs and others and exercise judgment as to whether and to what extent the pursuit of any of FirstEnergy's claims is in the best interests of the Company. A stay of six months will ensure that the SLC has sufficient time to fulfill its responsibilities and exercise the discretion committed to it by the Board and Ohio law.

## CONCLUSION

For the foregoing reasons, the SLC respectfully requests that this Court grant its motion to stay all aspects of the Action for six months.

Respectfully Submitted,


*/s/ Kathleen A. Nitschke*
Kerin Lyn Kaminski (0013522)
Karen L. Giffen (0042663)
Kathleen A. Nitschke (0073397)
GIFFEN & KAMINSKI, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone: 216-621-5161
Facsimile: 216-621-2399
E-Mail:     kkaminski@thinkgk.com
            kgiffen@thinkgk.com
            knitschke@thinkgk.com
**Counsel for the Special Litigation Committee of
the Board of Directors of Nominal Defendant
FirstEnergy Corp.**


Maeve O'Connor (*Pro Hac Vice Motion Forthcoming*)
John Gleeson (*Pro Hac Vice Motion Forthcoming*)
Susan Gittes (*Pro Hac Vice Motion Forthcoming*)
DEBEVOISE & PLIMPTON, LLP
919 Third Avenue
New York, New York 10022
Telephone:  212-909-6000
Facsimile:  212-909-6836
E-Mail:     mloconnor@debevoise.com
            jgleeson@debevoise.com
            srgittes@debevoise.com
**Counsel for the Special Litigation Committee of
the Board of Directors of Nominal Defendant
FirstEnergy Corp.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2021 a copy of the foregoing *Memorandum in Support of Motion to Stay* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to counsel of record for all parties as indicated on the electronic filing receipt.  Parties and their counsel may access this filing through the Court's system.

*/s/ Kathleen A. Nitschke*
Kathleen A. Nitschke (0073397)
**Counsel for the Special Litigation Committee of the Board of Directors of Nominal Defendant FirstEnergy Corp.**