# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

EMPLOYEES RETIREMENT SYSTEM OF THE
CITY OF ST. LOUIS, *et al.*,

Plaintiffs,

v.

CHARLES E. JONES, *et al.*,

Defendants,

and

FIRSTENERGY CORP.,

Nominal Defendant.

Case No. 2:20-cv-04813

Chief Judge Algenon L. Marbley

Magistrate Judge Kimberly A. Jolson

## <u>STIPULATION AND AGREEMENT OF SETTLEMENT</u>

This Stipulation and Agreement of Settlement, dated as of March 11, 2022 (the "Stipulation") is entered into, by, and among:

(i) Plaintiffs in the above-captioned stockholder derivative action (*Employees Retirement System of the City of St. Louis, et al. v. Jones, et al.*, Case No. 2:20-cv-04813-ALM-KAJ) (the "Southern District Action") pending in the United States District Court for the Southern District of Ohio (the "Southern District of Ohio," the "Southern District Court," or the "Court"): Co-Lead Plaintiffs Employees Retirement System of the City of St. Louis and Electrical Workers Pension Fund, Local 103, I.B.E.W. and Additional Plaintiff Massachusetts Laborers Pension Fund (collectively, the "Southern District Plaintiffs");

(ii) Plaintiffs in the stockholder derivative action captioned *Miller, et al. v. Anderson*, *et al.*, Case No. 5:20-cv-1743-JRA (the "Northern District Action"), pending in the United States District Court for the Northern District of Ohio (the "Northern District of Ohio" or the "Northern

District Court"): Plaintiff-Intervenors Employees Retirement System of the City of St. Louis and Electrical Workers Pension Fund, Local 103, I.B.E.W. and Massachusetts Laborers Pension Fund, and individual Plaintiff Jennifer L. Miller (collectively, the "Northern District Plaintiffs," and together with the Southern District Plaintiffs, "Federal Plaintiffs");

(iii) Plaintiffs in the stockholder derivative action captioned *In re FirstEnergy Corp., Stockholder Derivative Litigation*, Case No. CV-2020-07-2107 (the "Ohio State Court Action," and together with the Southern District Action and the Northern District Action, the "Actions"), pending in the Summit County Court of Common Pleas (the "Ohio State Court"): John Gendrich and Robert Sloan (the "Ohio State Court Plaintiffs," and together with the Southern District Plaintiffs and the Northern District Plaintiffs, "Plaintiffs");

(iv) Defendants in the Actions: Charles E. Jones, Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil, III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Leslie M. Turner, Samuel L. Belcher, Bennett L. Gaines, Christine L. Walker, Gary Benz, Jason L. Lisowski, Irene M. Prezelj, Paul T. Addison, Jerry Sue Thornton, William T. Cottle, George M. Smart, Dennis M. Chack, Michael J. Dowling, James F. Pearson, Robert Reffner, Steven E. Strah, K. Jon Taylor, Ebony Yeboah-Amankwah, Eileen Mikkelsen, and Justin Biltz (collectively, "Defendants" or the "Individual Defendants");

(v) Nominal Defendant FirstEnergy Corp. and all of its affiliates ("FirstEnergy" or the "Company"); and

(vi) the Special Litigation Committee of the Board of Directors of FirstEnergy (the "SLC," and together with Plaintiffs, Defendants, and the Company, the "Settling Parties").

Subject to the approval of the Court and the terms and conditions expressly provided herein, this Stipulation is intended to fully, finally, and forever compromise, settle, release, resolve, and dismiss with prejudice the Actions and all claims asserted therein.

WHEREAS:

On July 21, 2020, the Ohio Speaker of the House Larry Householder ("Householder") and four other individuals not parties to the Actions were arrested as part of an investigation of an alleged $60 million racketeering and bribery scheme.

On July 30, 2020, a federal grand jury indicted Householder, the four other individuals, and 501(c)(4) entity Generation Now in an alleged federal racketeering conspiracy involving approximately $60 million in bribes to pass and uphold a billion-dollar nuclear plant bailout.

On July 22, 2021, FirstEnergy entered into a deferred prosecution agreement ("DPA") with the United States Department of Justice ("DOJ") to resolve allegations that the Company participated in an alleged bribery scheme. In conjunction with the DPA, FirstEnergy agreed to pay a $230 million fine for its role in the alleged bribery scheme.

**The Southern District Action:**

On September 9, 2020, Plaintiff Employees Retirement System of the City of St. Louis ("ERS") commenced a stockholder derivative action captioned as *Employees Retirement System of the City of St. Louis v. Jones, et al.*, Case No. 2:20-cv-04813-ALM-KAJ (S.D. Ohio), on behalf of FirstEnergy as Nominal Defendant against Defendants Charles E. Jones, Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil, III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Leslie M. Turner, Paul T. Addison, Jerry Sue Thornton, William T. Cottle, George M. Smart, Justin Biltz, Michael J. Dowling, James F. Pearson, Steven E. Strah, K. Jon Taylor, Robert Reffner, and Ebony Yeboah-Amankwah

asserting, among other things, claims for breaches of fiduciary duty and violation of Section 14(a) of the Securities Exchange Act.

On September 30, 2020, Plaintiff Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Local 103") commenced a stockholder derivative action captioned as *Electrical Workers Pension Fund, Local 103, I.B.E.W. v. Anderson, et al.*, Case No. 2:20-cv-05128-ALM-KAJ (S.D. Ohio), on behalf of FirstEnergy as Nominal Defendant against Defendants Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Charles E. Jones, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil, III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Leslie M. Turner, James F. Pearson, Steven E. Strah, and K. Jon Taylor asserting, among other things, claims for breaches of fiduciary duty and violation of Section 14(a) of the Securities Exchange Act.

On October 5, 2020, Plaintiff Massachusetts Laborers Pension Fund ("MLPF") commenced a stockholder derivative action captioned as *Massachusetts Laborers Pension Fund v. Jones, et al.*, Case No. 2:20-cv-05237-SDM-CMV (S.D. Ohio), on behalf of FirstEnergy as Nominal Defendant against Defendants Charles E. Jones, Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil, III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Leslie M. Turner, Paul T. Addison, Jerry Sue Thornton, William T. Cottle, George M. Smart, Justin Biltz, Michael J. Dowling, James F. Pearson, Steven E. Strah, K. Jon Taylor, Robert Reffner, Ebony Yeboah-Amankwah, and John Does 1-50 asserting, among other things, claims for breaches of fiduciary duty and violation of Section 14(a) of the Securities Exchange Act.

On October 2, 2020, Plaintiffs ERS and Local 103 filed a Motion of the Institutional Investors to Consolidate Related Derivative Actions, Appoint Co-Lead Plaintiffs, and Appoint Co-Lead Counsel.

On October 23, 2020, Interested Party City of Philadelphia Board of Pensions and Retirement ("City of Philadelphia") filed a cross-motion for Consolidation, Appointment of Lead Plaintiff, and Appointment of Lead Counsel, in opposition to the Motion of the Institutional Investors to Consolidate Related Derivative Actions, Appoint Co-Lead Plaintiffs, and Appoint Co-Lead Counsel.

On November 3, 2020, Plaintiffs ERS and Local 103 filed a Memorandum of Law in Further Support of the Motion of the Institutional Investors to Consolidate Related Derivative Actions, Appoint Co-Lead Plaintiffs, and Appoint Co-Lead Counsel, and in Opposition to the Competing Motion.

On November 6, 2020, Plaintiff MLPF filed a Motion for Joinder in Support of Motion of the Institutional Investors to Consolidate Related Derivative Actions, Appoint Co-Lead Plaintiffs, and Appoint Co-Lead Counsel.

On November 6, 2020, City of Philadelphia filed a Reply in Further Support of Its Motion for Consolidation, Appointment of Lead Plaintiff, and Appointment of Lead Counsel.

On November 16, 2020, the Southern District Court issued an Opinion and Order appointing Plaintiffs ERS and Local 103 Co-Lead Plaintiffs, and appointing Saxena White P.A. and Bernstein Litowitz Berger & Grossmann LLP Co-Lead Counsel. Further, Massachusetts Laborers Pension Fund served as Additional Plaintiff, represented by Cohen Milstein Sellers & Toll PLLC.

On November 19, 2020, Defendants filed a Motion to Stay the Southern District Action (the "November 19, 2020 Motion to Stay"). Southern District Plaintiffs filed a Brief in Opposition to Defendants' November 19, 2020 Motion to Stay on December 4, 2020. Defendants filed a Reply in Support of their November 19, 2020 Motion to Stay on December 11, 2020. The Southern

District Court issued an Opinion and Order denying Defendants' Motion to Stay on December 21, 2020.

On January 19, 2021, Defendants filed a Motion to Enforce Stay of Discovery pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Southern District Plaintiffs filed a Notice of Non-Opposition to Defendants' Motion to Enforce Stay of Discovery pursuant to the PSLRA on January 29, 2021, in light of the Motion to Dismiss briefing schedule. The Southern District Court granted Defendants' Motion to Enforce Stay of Discovery pursuant to the PSLRA on February 4, 2021.

On January 25, 2021, Southern District Plaintiffs filed the Consolidated Verified Shareholder Derivative Complaint on behalf of FirstEnergy as Nominal Defendant against Defendants Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Charles E. Jones, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil, III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Leslie M. Turner, Michael J. Dowling, James F. Pearson, Robert Reffner, Ebony Yeboah-Amankwah, Steven E. Strah, and K. Jon Taylor asserting, among other things, claims for breaches of fiduciary duty and violation of Section 14(a) of the Securities Exchange Act.

On February 24, 2021, Defendants filed their Motions to Dismiss the Consolidated Verified Shareholder Derivative Complaint. On March 24, 2021, Southern District Plaintiffs filed their Opposition to Defendants' Motions to Dismiss the Consolidated Verified Shareholder Derivative Complaint. Defendants filed Replies in Support of their Motions to Dismiss the Consolidated Verified Shareholder Derivative Complaint on April 14, 2021. The Southern District Court denied Defendants' Motions to Dismiss the Consolidated Verified Shareholder Derivative Complaint on May 11, 2021.

On May 28, 2021, Defendants filed a Motion to Certify the Southern District Court's Order denying Defendants' Motion to Dismiss for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b). Southern District Plaintiffs filed their Opposition to Defendants' Motion to Certify the Southern District Court's Order denying Defendants' Motion to Dismiss for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) on June 21, 2021. Defendants filed a Reply in Support of their Motion to Certify the Southern District Court's Order denying Defendants' Motion to Dismiss for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) on July 6, 2021.

On June 14, 2021, the Southern District Court issued an order lifting the PSLRA stay and noted that discovery may commence.

On June 24, 2021, Defendants filed their Answers to the Consolidated Verified Shareholder Derivative Complaint.

On June 30, 2021, Nominal Defendant FirstEnergy Corp. announced the formation of the SLC, effective July 1, 2021.

On July 1, 2021, Magistrate Judge Kimberly A. Jolson issued a notation order directing the SLC to file any motion to stay by July 21, 2021.

On July 20, 2021, the SLC filed its Motion to Stay.

On August 9, 2021, the SLC withdrew the Motion to Certify the Southern District Court's Order denying Defendants' Motion to Dismiss for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) as to Nominal Defendant First Energy.

On August 10, 2021, Southern District Plaintiffs filed their Opposition to the SLC's Motion to Stay.

On August 24, 2021, the SLC filed its Reply in Support of its Motion to Stay.

On October 5, 2021, the parties entered into a Joint Protocol for Production of Documents and Electronically Stored Information.

On October 5, 2021, Southern District Plaintiffs contacted the Southern District Court to request a status conference to obtain documents previously produced to the DOJ.

On October 7, 2021, a status conference was held before Magistrate Judge Kimberly A. Jolson. Judge Jolson entered an order staying discovery for fourteen days to allow the Southern District Court to rule on the SLC's then-pending Motion to Stay.

On October 20, 2021, the Southern District Court issued an Opinion and Order denying the SLC's Motion to Stay, and noting that "[d]iscovery shall commence without further delay."

On October 22, 2021, the SLC filed a Notice of Appeal of the Southern District Court's Opinion and Order denying the SLC's Motion to Stay pursuant to 28 U.S.C. § 1291 under the collateral order doctrine.

On October 25, 2021, Southern District Plaintiffs again requested a status conference before Magistrate Judge Jolson concerning discovery issues.

On October 27, 2021, another status conference was held before Magistrate Judge Kimberly A. Jolson at the Southern District Plaintiffs' request. During that status conference, the Court noted that discovery is open and instructed Defendants to produce documents previously produced to the DOJ.

On October 29, 2021, the SLC filed a Motion to Stay Pending the Outcome of Appellate Proceedings.

On November 9, 2021, Southern District Plaintiffs filed their Opposition to the SLC's Motion to Stay Pending the Outcome of Appellate Proceedings.

On November 12, 2021, the SLC filed its Reply in Support of the SLC's Motion to Stay Pending the Outcome of Appellate Proceedings.

On November 12, 2021, the Southern District Court issued an Opinion and Order denying the Individual Defendants' Motion to Certify Order for Interlocutory Appeal pursuant to 28 U.S.C. §1292(b).

As described in greater detail below (under "Sixth Circuit Proceedings"), the SLC's Motion to Stay Pending the Outcome of Appellate Proceedings was mooted by the Sixth Circuit's December 16, 2021 order granting Southern District Plaintiffs' Motions to Dismiss the Northern District Appeal and the Southern District Appeal, and dismissing the mandamus petitions.

**The Northern District Action:**

On August 7, 2020 Jennifer Miller ("Miller") commenced a stockholder derivative action captioned as *Miller, et al., v. Anderson et al.*, Case No. 5:20-cv-01743-JRA (N.D. Ohio) on behalf of FirstEnergy as Nominal Defendant against Defendants Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Charles E. Jones, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil, III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Leslie M. Turner, Michael J. Dowling, James F. Pearson, Robert Reffner, Steven E. Strah, and Ebony Yeboah-Amankwah asserting, among other things, claims for breaches of fiduciary duty and violation of Section 14(a) of the Securities Exchange Act.

On October 5, 2020, Plaintiffs ERS and Local 103 ("Intervenor Plaintiffs") filed a Motion to Intervene and Transfer the Northern District Action to the United States District Court for the Southern District of Ohio. Defendants filed their Opposition to Plaintiffs ERS and Local 103's Motion to Intervene and Transfer on October 9, 2020. Plaintiffs ERS and Local 103 filed a Reply in Further Support of their Motion to Intervene and Transfer the Northern District Action to the Southern District Court on October 16, 2020. The Northern District Court granted the Intervenor

Plaintiffs' Motion as to intervention but denied the Motion as to transfer to the Southern District of Ohio on May 13, 2021.

Plaintiffs ERS and Local 103 and additional Plaintiff MLPF filed their Intervenors' Verified Shareholder Derivative Complaint on June 3, 2021. Defendants filed their Motions to Dismiss Intervenors' Verified Shareholder Derivative Complaint on June 17, 2021. Intervenor Plaintiffs filed their Opposition to Defendants' Motions to Dismiss Intervenors' Verified Shareholder Derivative Complaint on July 19, 2021.

On July 20, 2021, the SLC filed its Motion to Stay in the Northern District Action. Intervenor Plaintiffs filed their opposition to the SLC's Motion to Stay on August 10, 2021. The SLC filed its reply in further support of its Motion to Stay on August 24, 2021. On September 16, 2021, the Northern District Court issued an Order and Decision denying Defendants' Motions to Dismiss and the SLC's Motion to Stay. On September 30, 2021, the Northern District Court designated the Intervenor Plaintiffs' Verified Shareholder Derivative Complaint as the Operative Complaint, but held in abeyance Intervenor Plaintiffs' Motion for Appointment as Lead Plaintiffs and Appointment of their Counsel as Lead Counsel.

On October 25, 2021, Intervenor Plaintiffs served a Settlement Demand on Defendants pursuant to the Northern District Court's September 16, 2021, Case Management Conference Scheduling Order ("the Case Management Conference Scheduling Order"). On November 1, 2021, Defendants responded to Intervenor Plaintiffs' Settlement Demand pursuant to the Case Management Conference Scheduling Order. On December 15-17, 2021, the parties filed their Settlement Demands and Responses on the Northern District Docket, under seal.

On November 8, 2021, a Case Management Conference was held in Akron, Ohio. A Case Management Plan was entered on November 9, 2021.

On November 22, 2021, Federal Plaintiffs, Defendants, and the Nominal Defendant submitted a Joint Proposed Stipulated Discovery Order stipulating that all written discovery (including discovery served prior to the filing of the Stipulated Discovery Order), depositions, expert disclosures and reports, and documents produced would be coordinated between the Southern District Action and the Northern District Action to avoid duplication and waste of the resources of the parties, the courts, and third parties.

Pursuant to the Case Management Plan, Federal Plaintiffs, Defendants, and the Nominal Defendant filed a deposition schedule on December 3, 2021. Subsequently, two telephonic status conferences were held on January 10, 2022 and January 28, 2022.

**The Sixth Circuit Proceedings:**

On September 16, 2021, the SLC filed a Notice of Appeal of the Northern District Court's Order and Decision denying the SLC's Motion to Stay pursuant to 28 U.S.C. § 1291 under the collateral order doctrine (the "Northern District Appeal").

On September 23, 2021, Northern District Plaintiffs filed their Motion to Dismiss the Northern District Appeal for Lack of Jurisdiction.

On October 4, 2021, the SLC filed its Response to Plaintiffs-Appellants' Motion to Dismiss the Northern District Appeal.

On October 12, 2021, Northern District Plaintiffs filed their Reply in Support of their Motion to Dismiss the Northern District Appeal for Lack of Jurisdiction.

On October 22, 2021, the SLC filed a Notice of Appeal of the Southern District Court's Opinion and Order denying the SLC's Motion to Stay pursuant to 28 U.S.C. § 1291 under the collateral order doctrine (the "Southern District Appeal").

On November 2, 2021, Southern District Plaintiffs filed their Motion to Dismiss the Southern District Appeal for Lack of Jurisdiction.

On November 8, 2021, the SLC filed Writs of Mandamus against Chief Judge Algenon L. Marbley of the Southern District of Ohio and Judge John R. Adams of the Northern District of Ohio.

On November 12, 2021, the SLC filed its Response to Plaintiffs-Appellants' Motion to Dismiss the Southern District Appeal.

On November 16, 2021, the SLC filed a motion to consolidate the Southern District Appeal and the Northern District Appeal, to expedite the appellate briefing schedule, and to stay district court proceedings pending the outcome of the appeals.

On November 19, 2021, Southern District Plaintiffs filed their Reply in Support of their Motion to Dismiss the Southern District Appeal for Lack of Jurisdiction.

On November 26, 2021, Southern District Plaintiffs filed their Opposition to the SLC's motion to consolidate, expedite briefing schedule, and stay district court proceedings pending the outcome of the appeals.

On December 3, 2021, the SLC filed a Reply in Support of its Motion to Expedite, Consolidate, and Stay.

On December 16, 2021, the United States District Court of Appeals for the Sixth Circuit granted Federal Plaintiffs' Motions to Dismiss for lack of jurisdiction the Southern District and Northern District Appeals, and denied the SLC's petitions for a writ of mandamus.

**The State Court Action:**

On July 26, 2020 and July 31, 2020, Ohio State Court Plaintiffs separately initiated stockholder derivative actions on behalf of Nominal Defendant FirstEnergy in the Ohio State Court, captioned *Gendrich v. Anderson, et al.*, No. CV-2020-07-2107 (Summit Cnty. Court of

Common Pleas) ("*Gendrich* Action"), and *Sloan v. Anderson, et al.*, No. CV-2020-08-2161 (Summit Cnty. Court of Common Pleas) ("*Sloan* Action"), respectively.

On September 8, 2020, the Gendrich Action and the Sloan Action were consolidated by court Order under the caption *Gendrich v. Anderson, et al.*, No. CV-2020-07-2107, and thereafter, on September 23, 2020, Johnson Fistel, LLP and Connick Law, LLC, were appointed Co-Lead Counsel in the State Court Action.

On September 22, 2020, Ohio State Court Plaintiffs sent a stockholder inspection demand for books and records under Ohio Statute § 1701.37(C) to the board of directors of the Company. By letter dated October 14, 2020, that inspection demand was declined.

On September 22, 2020, Ohio State Court Plaintiffs issued a public records request to the Ohio Attorney General's Office and a request for records under the Freedom of Information Act to the U.S. Department of Justice. Thereafter, Ohio State Court Plaintiffs' counsel continued to engage in written correspondence in furtherance of the public records request with the Ohio Attorney General's Office.

On November 9, 2020, Ohio State Court Plaintiffs filed a consolidated complaint alleging derivative claims against Defendants for breach of fiduciary duties based on, *inter alia*, participation in the alleged criminal bribery scheme, unjust enrichment, and insider selling, as well as claims for civil conspiracy, contribution and indemnification, and civil liability for criminal acts.

On January 8, 2021, certain Defendants moved to dismiss the Ohio State Court Plaintiffs' consolidated complaint. On March 9, 2021, the Ohio State Court Plaintiffs filed their opposition to the motion to dismiss. On April 8, 2021, defendants filed their reply in further support of their motion to dismiss.

On June 21, 2021, Ohio State Court Plaintiffs served Plaintiffs' First Request for Production of Documents on Defendants, to which Defendants served their various responses and objections on July 19, 2021, with the exception of defendants Eileen Mikkelsen and Justin Biltz, whose responses and objections were served on August 2, 2021 and August, 9, 2021, respectively.

On July 20, 2021, the SLC filed a motion to stay the State Court Action.

On August 9, 2021, the SLC withdrew the previously filed motion to dismiss as to Nominal Defendant FirstEnergy while the SLC investigated and evaluated Ohio State Court Plaintiffs' claims. Ohio State Court Plaintiffs filed their opposition to the SLC's motion to stay on August 19, 2021, and the SLC filed its reply on August 26, 2021.

On November 12, 2021, Ohio State Court Plaintiffs served on Defendants a confidential settlement demand.

**The Parties Litigate The Actions in Federal Court:**

On May 28, 2021, Southern District Plaintiffs propounded their First Request for Production of Documents directed to the Individual Defendants and Nominal Defendant FirstEnergy.

On June 28, 2021, the Individual Defendants and Nominal Defendant FirstEnergy served their Responses and Objections to Plaintiffs' First Request for Production of Documents directed to the Individual Defendants and Nominal Defendant FirstEnergy, with the exception of Defendant Yeboah-Amankwah, who served her Responses and Objections to Plaintiffs' First Request for Production of Documents on July 1, 2021.

On September 29, 2021, Southern District Plaintiffs issued a subpoena to non-party PricewaterhouseCoopers ("PwC") in the Southern District Action (the "Southern District PwC Subpoena"). PwC served its Responses and Objections to the Southern District PwC Subpoena on October 20, 2021. On November 17, 2021, Federal Plaintiffs issued a subpoena to non-party

PwC in the Northern District Action (the "Northern District PwC Subpoena"). PwC served its Responses and Objections to the Northern District PwC Subpoena on December 1, 2021.

On December 2, 2021, Federal Plaintiffs propounded their First Request for Production of Documents to Defendant Chack. Chack served his Responses and Objections to Plaintiffs' First Request for Production of Documents on January 3, 2022.

Federal Plaintiffs propounded their Second Request for Production of Documents to FirstEnergy on December 10, 2021. FirstEnergy served its Objections and Responses to Plaintiffs' Second Request for Production of Documents on January 10, 2022.

Federal Plaintiffs propounded their Second Request for Production of Documents to the Individual Defendants on December 15, 2021. The Individual Defendants served their Responses and Objections to Plaintiffs' Second Request for Production of Documents on January 14, 2022.

Federal Plaintiffs propounded their First Set of Interrogatories Directed to FirstEnergy on December 15, 2021. FirstEnergy served its Responses and Objections to Plaintiffs' First Set of Interrogatories Directed to FirstEnergy on January 14, 2022.

Federal Plaintiffs propounded their First Set of Interrogatories Directed to the Individual Defendants on December 17, 2021. The Individual Defendants served their Responses and Objections to Plaintiffs' First Set of Interrogatories Directed to the Individual Defendants on January 18, 2022.

Federal Plaintiffs propounded their Third Request for Production of Documents to the Individual Defendants on December 17, 2021. The Individual Defendants served their Responses and Objections to Plaintiffs' Second Request for Production of Documents on January 18, 2022.

Federal Plaintiffs propounded their First Requests for Admission to FirstEnergy, Charles E. Jones, and Michael J. Dowling on December 17, 2021. FirstEnergy, Jones, and Dowling served their Responses and Objections to Plaintiffs' First Requests for Admission on January 18, 2022.

On December 6, 2021, Federal Plaintiffs issued a subpoena to non-party Clearsulting. Clearsulting served its Responses and Objections to Plaintiffs' subpoena on December 17, 2021.

On December 7, 2021, Federal Plaintiffs issued a subpoena to non-party Nathan Cummings Foundation. Nathan Cummings Foundation served its Responses and Objections to Plaintiffs' subpoena on December 23, 2021.

On December 17, 2021, Federal Plaintiffs issued a subpoena to non-party Green Century Capital Management.

On January 13, 2022, Federal Plaintiffs issued a subpoena to non-party Verizon.

On December 6, 9, and 23, 2021, Federal Plaintiffs subpoenaed certain former directors of FirstEnergy. The former directors of FirstEnergy responded to Plaintiffs' subpoenas on December 20 and 23, 2021 and January 6, 2022.

Federal Plaintiffs negotiated discovery protocols with eighteen different defendants, represented by eight different sets of counsel. FirstEnergy and the Individual Defendants initially objected to the production of documents dated before January 1, 2017 or after Householder's arrest in July 2020. Ultimately, Federal Plaintiffs obtained agreement of FirstEnergy and the Individual Defendants to produce relevant information dated or created on January 1, 2016 through at least mid-June 2021. Federal Plaintiffs also obtained FirstEnergy's agreement to search the Company's custodial ESI for nearly 200 search terms and the Individual Defendants' agreement to search their custodial ESI for 260 search terms pursuant to the operative search term protocols. Federal

Plaintiffs also obtained Defendants' agreement to review and produce relevant text messages between each Defendant and 30 counterparties, without the application of search terms.

Ultimately, Defendants and non-parties collectively produced, and Federal Plaintiffs reviewed, over 500,000 pages of documents, including all the documents produced to the DOJ in connection with its investigation.

In addition to serving offensive discovery, Federal Plaintiffs responded to discovery directed toward Plaintiffs. On December 10, 2021, the Director & Officer Defendants served their First Request for Production, First Set of Interrogatories, and First Request for Admission directed to Plaintiffs. On January 10, 2022, Federal Plaintiffs served their Responses and Objections to the Director & Officer Defendants First Request for Production. On January 18, 2022, Plaintiffs served their Responses and Objections to the Director & Officer Defendants' First Set of Interrogatories and First Request for Admission directed to Plaintiffs.

On December 14, 2021, Defendant Pearson served his First Request for Production of Documents and First Set of Interrogatories directed to Plaintiffs. On January 13, 2022, Federal Plaintiffs served their Responses and Objections to Pearson's First Request for Production of Documents directed to Plaintiffs. On January 18, 2022, Federal Plaintiffs served their Responses and Objections to Pearson's First Set of Interrogatories directed to Plaintiffs.

On December 17, 2021, Defendants Chack, Reffner, and Yeboah-Amankwah served their First Requests for Production of Documents and First Sets of Interrogatories directed to Plaintiffs, and Defendant Reffner served his First Requests for Admission directed to Plaintiffs. On January 18, 2022, Federal Plaintiffs served their Responses and Objections to Defendants Chack, Reffner and Yeboah-Amankwah's First Requests for Production of Documents and First Set of

Interrogatories directed to Plaintiffs. Also on January 18, 2022, Federal Plaintiffs served their Responses and Objections to Reffner's First Requests for Admission directed to Plaintiffs.

On December 23, 2021, Defendant Dowling served his First Request for Production of Documents and First Set of Interrogatories directed to Plaintiffs. On January 24, 2022, Federal Plaintiffs served their Responses and Objections to Dowling's First Request for Production of Documents and First Set of Interrogatories directed to Plaintiffs.

**The Parties Conduct Arm's-Length Negotiations To Resolve The Actions:**

Beginning on December 14, 2021, the Settling Parties engaged in numerous telephonic conversations, including conversations among the Settling Parties and conversations between certain of the Settling Parties and former United States District Court Judge Layn R. Phillips (the "Mediator").

On February 1, 2022, the Settling Parties participated in a full day mediation session before the Mediator. In advance of that session, the Settling Parties exchanged mediation statements, reply statements, and exhibits with the Mediator and among the Settling Parties, which addressed the issues of both liability and damages. In advance of the mediation, the Federal Plaintiffs and the SLC also discussed governance improvements as part of a potential settlement. The session ended without any agreement being reached.

Following the mediation, the Settling Parties engaged in additional negotiations under the supervision and guidance of the Mediator.

As a result of extensive, arm's-length negotiations, before, during, and after the mediation session, the Settling Parties reached an agreement in principle to settle the Actions that was memorialized in a Settlement Term Sheet executed on February 9, 2022 (the "Term Sheet").

The Term Sheet set forth, among other things, the Settling Parties' agreement to resolve the Actions in exchange for (i) a cash payment of $180,000,000.00 (United States Dollars), which,

together with any and all interest earned thereon, and less any Court-approved attorneys' fees and expenses awarded to Plaintiffs' Counsel, any service awards awarded to Plaintiffs, and any Taxes, will be paid to the Company and (ii) the corporate governance reforms set forth in Exhibit A thereto ("Reforms"), subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers. The Settlement does not release the Company's claims for recoupment of compensation from Defendants Jones, Dowling, or Chack, including such claims that the Company is pursuing or may pursue (which for avoidance of doubt Jones, Dowling, and Chack deny have any basis and reserve their right to oppose and defend against on any and all grounds available and to assert any related claims).

This Stipulation (together with the exhibits hereto) reflects the final and binding agreement among the Settling Parties and supersedes the Term Sheet.

In connection with settlement discussions and negotiations leading to the proposed Settlement set forth in this Stipulation, counsel for the Settling Parties did not discuss the amount of any application by Plaintiffs' Counsel for an award of attorneys' fees and expenses until the substantive terms of the Settlement were negotiated at arm's-length and agreed upon.

Plaintiffs brought their claims in good faith and continue to believe that their claims have merit, but based upon Plaintiffs' and Plaintiffs' Counsel's investigation, prosecution, and mediation of the Actions, Plaintiffs and Plaintiffs' Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to the Company and its stockholders. Based on Plaintiffs' direct oversight of the prosecution of this matter and with the advice of their counsel and outside experts, Plaintiffs have agreed to settle the claims asserted in the Actions pursuant to the terms and provisions of this Stipulation, after considering (a) the significant monetary payment to be made to the Company by insurance policies that were eroding;

(b) the corporate governance reforms provided under the proposed Settlement that could not have been obtained through a verdict; (c) the uncertain outcome, inherent delays, significant cost to the Company and its insurers, and significant risks of continued litigation; and (d) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

Defendants have denied, and continue to deny, that they committed, or aided and abetted in the commission of, any violation of law or duty or engaged in any wrongful acts whatsoever, including specifically those alleged in the Actions, and expressly maintain that they have complied with their statutory, fiduciary, and other legal duties, and are entering into this Stipulation and the Settlement to eliminate the burden, expense, and uncertainties inherent in further litigation.

Each of the Settling Parties recognizes and acknowledges that the Actions have been initiated, filed, and prosecuted by Plaintiffs in good faith and defended by Defendants in good faith, that the Actions are being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, reasonable, and adequate.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among the Settlings Parties through their respective undersigned attorneys and subject to the approval of the Court, that, in consideration of the benefits flowing to the Settling Parties from the Settlement, all Released Plaintiffs' Claims as against the Released Defendants' Persons and all Released Defendants' Claims as against the Released Plaintiffs' Persons shall be settled and released, upon and subject to the terms and conditions set forth below.

**<u>CERTAIN DEFINITIONS</u>**

1.     As used in this Stipulation and all exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

(a) "Actions" means the Southern District Action, the Northern District Action, and the Ohio State Court Action.

(b) "Complaints" means the Northern District Complaint, the Ohio State Court Complaint, and the Southern District Complaint.

(c) "Court" means the United States District Court for the Southern District of Ohio.

(d) "Defendants' Counsel" means: (i) Jones Day, counsel for Defendants Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Leslie M. Turner, Steven E. Strah, K. Jon Taylor, Samuel L. Belcher, Bennett L. Gaines, Christine L. Walker, Gary Benz, Jason J. Lisowski, Irene M. Prezelj, Paul T. Addison, Jerry Sue Thornton, William T. Cottle, and George M. Smart; (ii) Baker & Hostetler LLP and Gibson, Dunn & Crutcher LLP, counsel for Defendant Charles E. Jones; (iii) Tucker Ellis LLP, counsel for Defendant Michael J. Dowling; (iv) Skadden, Arps, Slate, Meagher & Flom, LLP, counsel for Defendant Ebony Yeboah-Amankwah; (v) McDermott, Will, & Emery, LLP and Brouse McDowell, counsel for Defendant Robert P. Reffner; (vi) Ballard Spahr LLP, counsel for Defendant James F. Pearson; (vii) Morgan, Lewis & Bockius LLP and Lape Mansfield Nakasian & Gibson LLC, counsel for Defendant Dennis M. Chack (viii) Boies Schiller Flexner LLP, counsel for Eileen Mikkelsen; and (ix) Walter Haverfield LLP, counsel for Justin Biltz.

(e) "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions specified in paragraph 22 of this Stipulation have been met and have occurred or have been waived.

(f) "Escrow Account" means an account maintained at Citibank, N.A. wherein the Settlement Amount shall be deposited and held in escrow under the control of Co-Lead Counsel in the Southern District Action.

(g) "Escrow Agent" means Citibank, N.A.

(h) "Federal Plaintiffs" means Southern District Plaintiffs and Northern District Plaintiffs, collectively.

(i) "Final" with respect to the Judgment or any other court order means: (i) if no appeal is filed, the expiration date of the time for filing or noticing of any appeal of the Judgment or order; or (ii) if there is an appeal from the Judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the Judgment or order is finally affirmed on appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to attorneys' fees or expenses shall not in any way delay or preclude the Judgment from becoming Final.

(j) "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit F, to be entered by the Court approving the Settlement.

(k) "Notice" means the Notice of (I) Pendency and Proposed Settlement of Stockholder Derivative Actions; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Litigation Expenses, substantially in the form attached hereto as Exhibit D.

(l)     "Northern District Court" means the United States District Court for the Northern District of Ohio.

(m)     "Northern District Action" means the stockholder derivative action captioned *Miller, et al. v. Anderson et al.*, Case No. 5:20-cv-1743-JRA, pending in the Northern District of Ohio.

(n)     "Northern District Complaint" means the Intervenors' Verified Shareholder Derivative Complaint filed in the Northern District Action on June 3, 2021.

(o)     "Northern District Plaintiffs" means plaintiff-intervenors Employees Retirement System of the City of St. Louis, Electrical Workers Pension Fund, Local 103, I.B.E.W., and Massachusetts Laborers Pension Fund, and individual plaintiff Jennifer L. Miller.

(p)     "Ohio State Court" means the Summit County Court of Common Pleas.

(q)     "Ohio State Court Action" means the stockholder derivative action captioned *In re FirstEnergy Corp., Stockholder Derivative Litigation*, Case No. CV-2020-07-2107, pending in the Ohio State Court.

(r)     "Ohio State Court Complaint" means the Verified Consolidated Shareholder Derivative Complaint filed in the Ohio State Court Action on November 9, 2020.

(s)     "Ohio State Court Plaintiffs" means plaintiffs John Gendrich and Robert Sloan.

(t)     "Notice Costs" means all costs, fees, and expenses related to providing notice of the Settlement.

(u)     "Plaintiffs" means the Federal Plaintiffs and the Ohio State Court Plaintiffs.

(v)     "Plaintiffs' Counsel" means Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Saxena White P.A., Co-Lead Counsel for the Southern District Plaintiffs and

counsel for Plaintiff-Intervenors in the Northern District Action; Cohen Milstein Sellers & Toll PLLC, counsel for Additional Plaintiff Massachusetts Laborers Pension Fund in the Southern District Action and in the Northern District Action; Law Offices of John C. Camillus, liaison counsel for Co-Lead Plaintiffs in the Southern District Action and counsel for Plaintiff-Intervenors in the Northern District Action; Edelson Lechtzin LLP and Rosca Scarlato, LLC, counsel for Plaintiff Jennifer L. Miller in the Northern District Action; Johnson Fistel, LLP, Connick Law, LLC, and Law Office of George W. Cochran, counsel for the Ohio State Court Plaintiffs; and all other firms listed in the Complaints.

(w)     "Released Claims" means each and any of the Released Defendants' Claims and each and any of the Released Plaintiffs' Claims.

(x)     "Released Defendants' Claims" means any and all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common, or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Actions, except for claims relating to the enforcement of the Settlement. For avoidance of doubt, Released Defendants' Claims does not include any claims that Charles Jones, Michael Dowling, and Dennis Chack have or may assert against FirstEnergy, including but not limited to, claims for compensation, pensions, deferred compensation, incentive compensation, equity, and any and all benefits under any plan, program, arrangement, or other vehicle, in which any of them participated, accrued benefits, or any other claim for benefits or compensation that is otherwise related to their employment with the Company, and further including any claims for wrongful termination and/or any and all claims relating thereto.

(y)     "Released Defendants' Persons" means Defendants, any other individual named as a defendant in any complaint filed in any of the Actions, the Company, the SLC, and any entity in which the Company has a controlling interest, as well as their respective current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, committees, joint ventures, trustees, trusts, employees, immediate family members, heirs, insurers and reinsurers (in their capacities as such), and consultants, experts, and attorneys (provided, however, that consultants, experts and attorneys are only "Released Defendants' Persons" insofar as they were engaged by Defendants and are not released under this Stipulation if and to the extent that they were engaged by the Company).

(z)     "Released Plaintiffs' Claims" means any and all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, local, statutory, regulatory, common, foreign or other law or rule, that Plaintiffs, the Company, or the SLC (i) asserted in the Complaints or (ii) could have asserted on behalf of the Company that in any way are based on, arise from or relate to the allegations, transactions, facts, matters, disclosures or nondisclosures set forth in the Complaints, including but not limited to the conduct, actions, inactions, deliberations, votes, statements or representations of any Released Defendants' Person.  For the avoidance of doubt, this release will not cover, include, or release (i) any direct claims of Plaintiffs or any other FirstEnergy stockholder, including without limitation any direct claims asserted under the federal securities laws, including without limitation claims asserted in *In re FirstEnergy Corp. Sec. Litig.*, Case No. 20-cv-03785-ALM-KAJ (S.D. Ohio) (and all consolidated cases), or direct claims of Plaintiffs or any other FirstEnergy stockholder asserted in any of the related actions or proceedings identified in Exhibit B hereto; (ii) any claims relating to the enforcement of the Settlement; or (iii) any claims of the Company to recoup compensation

from Charles Jones, Michael Dowling, and Dennis Chack (which for avoidance of doubt Jones, Dowling, and Chack deny have any basis and reserve their right to oppose and defend against on any and all grounds available and to assert any related claims including, but not limited to, claims for compensation, pensions, deferred compensation, incentive compensation, equity, and any and all benefits under any plan, program, arrangement, or other vehicle, in which any of them participated, accrued benefits, or any other claim for benefits or compensation that is otherwise related to their employment with the Company, and further including any claims for wrongful termination and/or any and all claims relating thereto).

(aa) "Released Plaintiffs' Persons" means Plaintiffs, Plaintiffs' Counsel, and any entity in which any Plaintiff has a controlling interest, as well as their respective current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, committees, joint ventures, trustees, trusts, employees, immediate family members, heirs, insurers and reinsurers (in their capacities as such), consultants, experts, and attorneys.

(bb) "Released Persons" means each and any of the Released Defendants' Persons and each and any of the Released Plaintiffs' Persons.

(cc) "Releases" means the releases set forth in paragraphs 8-9 of this Stipulation.

(dd) "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit C, to be entered by the Court preliminarily approving the Settlement and directing notice of the Settlement.

(ee) "Settlement" means the resolution of the Actions on the terms and conditions set forth in this Stipulation.

(ff)     "Settlement Fairness Hearing" means the hearing set by the Court to, among other things, consider final approval of the Settlement.

(gg)     "Settling Parties" means Plaintiffs, Defendants, the Company, and the SLC, on behalf of itself and the Company.

(hh)     "SLC Counsel" means Debevoise & Plimpton, counsel for the SLC of Nominal Defendant FirstEnergy.

(ii)     "Southern District Action" means the stockholder derivative action captioned *Employees Retirement System of the City of St. Louis, et al. v. Jones, et al.*, Case No. 2:20-cv-04813-ALM-KAJ, pending in the Southern District of Ohio.

(jj)     "Southern District Court" means the United States District Court for the Southern District of Ohio.

(kk)     "Southern District Complaint" means the Consolidated Verified Shareholder Derivative Complaint filed in the Southern District Action on January 25, 2021.

(ll)     "Southern District Plaintiffs" means co-lead plaintiffs Employees Retirement System of the City of St. Louis and Electrical Workers Pension Fund, Local 103, I.B.E.W., and additional plaintiff Massachusetts Laborers Pension Fund.

(mm)     "Summary Notice" means the Summary Notice of (I) Pendency and Proposed Settlement of Stockholder Derivative Actions; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Litigation Expenses, substantially in the form attached hereto as Exhibit E.

(nn)     "Taxes" means: (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; and (ii) the expenses and costs incurred by Co-Lead Counsel in connection with determining the amount of,

and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants).

(oo) "Term Sheet" means the Settlement Term Sheet executed by the Settling Parties on February 9, 2022.

(pp) "Unknown Claims" means any Released Plaintiffs' Claims which any Plaintiff, the Company, the SLC, or any other FirstEnergy stockholder does not know or suspect to exist in its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant or the Company does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to this Settlement. With respect to any and all Released Plaintiffs' Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date of the Settlement, Plaintiffs, Defendants, the Company, and the SLC shall expressly waive, and each of the other FirstEnergy stockholders shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Plaintiffs, Defendants, the Company, and the SLC, on behalf of itself and the Company, acknowledge, and each of the other FirstEnergy stockholders shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement.

## SETTLEMENT CONSIDERATION

2.      In consideration for the full settlement and release of all Released Plaintiffs' Claims against the Released Defendants' Persons and the dismissal with prejudice of the Actions on the terms and conditions set forth in this Stipulation, Defendants, the Company, and the SLC, on behalf of itself and the Company, agree to the following:

(a)      **Monetary Consideration:**  No later than twenty (20) business days after the later of: (i) entry of an order preliminarily approving the Settlement or (ii) Defendants' Counsel's receipt of wiring instructions that include the bank name and ABA routing number, account name and number, and a signed W-9 for the Escrow Account, Defendants shall cause their insurers to pay $180,000,000.00 (United States Dollars) in cash (the "Settlement Amount") into the Escrow Account.  The Settlement Amount plus any and all interest earned thereon (the "Settlement Fund"), less (i) any Court-awarded attorneys' fees and litigation expenses paid or payable to Plaintiffs' Counsel, including any service awards paid or payable to Plaintiffs, and/or any reserve to account for any potential future awards to Plaintiffs' Counsel or Plaintiffs; and (ii) any Taxes with respect to any interest earned on the Settlement Fund while on deposit in the Escrow Account (the "Net Settlement Fund"), shall be paid from the Escrow Account to the Company no later than ten (10) business days after the Effective Date.

(b)      **Corporate Governance Reforms:**  The Company, acting through its Board of Directors ("Board"), shall implement the corporate governance reforms set forth in Exhibit A hereto ("Reforms") not later than ten (10) business days following final approval of the Settlement by the Court, unless otherwise specified in Exhibit A hereto.  Any agreement to acquire the Company reached within twelve (12) months of the approval of

the Settlement shall be conditioned on the acquirer's written agreement to maintain the Reforms set forth in the Exhibit A hereto, or functionally equivalent measures, for not less than twenty-four (24) months following the announcement of the acquisition. Unless otherwise specified, each of the provisions of Exhibit A shall remain binding on the Company for no less than five (5) years following the Effective Date.

3.      All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court. The Escrow Agent shall invest any funds in the Escrow Account exclusively in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC. In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States. Additionally, if short-term placement of the funds is necessary, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States.

4.      The Settling Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Co-Lead Counsel in the Southern District Action, as administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without

limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. Co-Lead Counsel in the Southern District Action shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. The Released Defendants' Persons shall not have any liability or responsibility for any such Taxes. Upon written request, Defendants will provide to Co-Lead Counsel in the Southern District Action the statement described in Treasury Regulation § 1.468B-3(e). Co-Lead Counsel in the Southern District Action, as administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

5. All Taxes shall be paid out of the Settlement Fund, and shall be timely paid, or caused to be paid, by Co-Lead Counsel in the Southern District Action and without further order of the Court. Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

### BOARD RESOLUTION

6. FirstEnergy hereby acknowledges that the Company's Board, including all of the non-defendant, independent directors, has approved a resolution reflecting their determination, in a good faith exercise of their business judgment that: (a) Plaintiffs' litigation and settlement efforts in the Actions are a primary factor in the Board's agreement to adopt, implement, and maintain

the Reforms; (b) the Reforms confer substantial corporate benefits under Ohio law on the Company and its stockholders; and (c) the Settlement is fair, adequate, reasonable, and in the best interests of the Company and its stockholders.

## RELEASE OF CLAIMS

7.      The obligations incurred pursuant to this Stipulation are in consideration of the full and final disposition of the Actions and the Releases provided for herein.

8.      Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Plaintiffs, the Company, and the SLC, on behalf of itself and the Company, and the Company's stockholders shall be deemed to have, and by operation of law and of the Judgment, shall have, fully, finally, and forever discharged, relinquished, settled, and released any and all of the Released Plaintiffs' Claims against each and all of the Released Defendants' Persons, and shall forever be barred and enjoined from commencing, instituting, or prosecuting any action or proceeding in any court, tribunal, or forum asserting any of the Released Plaintiffs' Claims against any of the Released Defendants' Persons. This Release shall have res judicata, collateral estoppel, and all other preclusive effects in all pending and future lawsuits, arbitrations, or other suits, actions, or proceedings involving any of the Released Defendants' Persons.

9.      Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Defendants, the Company, and the SLC, on behalf of itself and the Company, shall be deemed to have, and by operation of law and of the Judgment, shall have, fully, finally, and forever discharged, relinquished, settled, and released any and all of the Released Defendants' Claims against each and all of the Released Plaintiffs' Persons, and shall forever be barred and enjoined from commencing, instituting, or prosecuting any action or proceeding in any court, tribunal, or forum asserting any of the Released Defendants' Claims against any of the

Released Plaintiffs' Persons. This Release shall have res judicata, collateral estoppel, and all other preclusive effects in all pending and future lawsuits, arbitrations, or other suits, actions, or proceedings involving any of the Released Plaintiffs' Persons.

10. Notwithstanding Paragraphs 8-9 above, nothing in the Judgment shall bar any action by any of the Settling Parties to enforce or effectuate the terms of this Stipulation or the Judgment.

## PRELIMINARY APPROVAL ORDER AND NOTICE

11. Within three (3) business days of execution of this Stipulation, the Southern District Plaintiffs will move the Southern District of Ohio for preliminary approval of the Settlement, authorization to provide notice of the Settlement, and the scheduling of a hearing for consideration of final approval of the Settlement, which motion shall be unopposed by Defendants, the Company, and the SLC, on behalf of itself and the Company. Concurrently with the motion for preliminary approval, the Southern District Plaintiffs will apply to the Southern District of Ohio for, and Defendants, the Company, and the SLC, on behalf of itself and the Company, will agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit C.

12. In accordance with the terms of the Preliminary Approval Order to be entered by the Court, no later than five (5) business days after the date of entry of the Preliminary Approval Order, the Company (or its successor-in-interest) shall cause: (a) the filing with the SEC of a Current Report on Form 8-K, attaching the Notice, substantially in the form attached hereto as Exhibit D, and this Stipulation (including copies of Exhibits A and E hereto); (b) the publication of the Summary Notice, substantially in the form attached hereto as Exhibit E, once in the *Investor's Business Daily* or similar publication; and (c) the posting of the Notice, substantially in the form attached hereto as Exhibit D, and this Stipulation on the "Investor Relations" portion of

the Company's website, which documents shall remain posted thereto through the Effective Date of the Settlement. The Company shall pay or cause to be paid any and all Notice Costs regardless of the form or manner of notice ordered by the Court and regardless of whether the Court approves the Settlement or the Effective Date of the Settlement otherwise fails to occur, and in no event shall Defendants, Plaintiffs, or their respective attorneys be responsible for any such costs or expenses.

## DISMISSAL OF THE ACTIONS

13. If the Settlement contemplated by this Stipulation is approved by the Court, the parties to the Southern District Action shall request that the Southern District Court enter the proposed Judgment, substantially in the form attached hereto as Exhibit F, which will, among other things, finally approve the proposed Settlement and dismiss the Southern District Action with prejudice. The proposed Judgment will also contain a statement to reflect compliance with Rule 11 of the Federal Rules of Civil Procedure by the parties to the Southern District Action.

14. Within five (5) business days of final approval of the Settlement by the Southern District of Ohio, the parties to the Northern District Action and the parties to the Ohio State Court Action will jointly move to dismiss the Northern District Action and Ohio State Court Action, respectively. The dismissal papers to be filed in the Northern District Action will contain a statement reflecting compliance with Rule 11 of the Federal Rules of Civil Procedure by the parties to the Northern District Action, and the dismissal papers to be filed in the Ohio State Court Action will contain a statement reflecting compliance with Ohio Civ.R. 11 by the parties to the Ohio State Court Action.

15. The Settling Parties agree to work collaboratively and in good faith in jointly seeking the dismissals, including in seeking appellate relief if a joint motion for dismissal is denied.

A denial of the joint dismissal motion by the Northern District of Ohio or the Ohio State Court does not impact the Effective Date.

**ATTORNEYS' FEES AND LITIGATION EXPENSES**

16.     Defendants, the Company, and the SLC, on behalf of itself and the Company, acknowledge that Plaintiffs' Counsel are entitled to an award of reasonable attorneys' fees and expenses in connection with the Actions and the Settlement.

17.     Plaintiffs' Counsel and the SLC, on behalf of itself and the Company, will attempt in good faith to negotiate an appropriate award of attorneys' fees and litigation expenses for all Plaintiffs' Counsel based upon the substantial benefits conferred upon the Company by the Settlement and the risks of undertaking the prosecution of the Actions on a contingent basis. If Plaintiffs' Counsel and the SLC are unable to reach agreement on an appropriate award of attorneys' fee and litigation expenses for Plaintiffs' Counsel, Co-Lead Counsel in the Southern District Action intend to apply, on behalf of all Plaintiffs' Counsel, for an award of attorneys' fees and litigation expenses in the Southern District of Ohio in an amount not to exceed 27% of the Settlement Fund based upon the substantial benefits conferred upon the Company by the Settlement and the risks of undertaking the prosecution of the Actions on a contingent basis. Additionally, Co-Lead Counsel in the Southern District Action intend to apply to the Court for service awards for each of the Plaintiffs ("Service Awards") in an amount not to exceed $10,000 for each Plaintiff, to be paid out of the Court-awarded attorneys' fees and litigation expenses.

18.     The full amount of any attorneys' fees and litigation expenses awarded by the Court to Plaintiffs' Counsel, including any Service Awards to Plaintiffs ("Fee and Expense Award") shall be paid to Co-Lead Counsel in the Southern District Action from the Escrow Account immediately upon award, notwithstanding the existence of any timely filed objections thereto, or

potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Co-Lead Counsel in the Southern District Action's obligation to make appropriate refunds or repayments if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed and such order reducing or reversing the award has become Final. Plaintiffs' Counsel shall make the appropriate refund or repayment in full no later than thirty (30) days after: (a) receiving from Defendants' Counsel notice of the termination of the Settlement; or (b) any order reducing or reversing Fees and Expenses Award has become Final. In the event that the final determination of the amount of attorneys' fees and expenses payable to Plaintiffs' Counsel does not occur prior to the Effective Date, Co-Lead Counsel in the Southern District Action may withhold up to the full amount of the requested fee and expense award from the amount transferred from the Escrow Account to the Company under paragraph 2(a) above.

19.     Plaintiffs' Counsel shall allocate the Fee and Expense Award among themselves. Plaintiffs' Counsel agree that any disputes regarding the allocation of the Fee and Expense Award among them shall be presented to and be mediated by the Mediator, and if mediation is unsuccessful, decided on a final, binding, non-appealable basis by the Mediator, on the terms and subject to the processes and procedures set forth by the Mediator in his sole discretion. The Mediator's fees and costs for any such mediation and/or arbitration shall be borne solely by Plaintiffs' Counsel and split evenly among Plaintiffs' Counsel. In no event shall such allocation matters affect or delay the enforceability of the Settlement, provide any Settling Party with the right to terminate the Settlement, impose any obligation on any Defendant or the Company, subject Defendants in any way to an increase in the amount paid by them or on their behalf in connection

with the Settlement, or affect or delay the binding effect or finality of the Settlement and the releases by any Settling Party against Released Defendants' Persons.

20. The Released Defendants' Persons shall have no responsibility for or liability whatsoever with respect to the allocation or award of the Fee and Expense Award amongst Plaintiffs' Counsel. Any dispute regarding any allocation of fees or expenses among Plaintiffs' Counsel shall have no effect on the Settlement.

21. An award of attorneys' fees and/or litigation expenses to Plaintiffs' Counsel is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein. The Court may consider and rule upon the fairness, reasonableness, and adequacy of the Settlement independently of the consideration of any award of attorneys' fees and litigation expenses, and the failure of the Court to approve any requested award of attorneys' fees and litigation expenses, in whole or in part, shall have no effect on the Settlement. Neither Plaintiffs nor Plaintiffs' Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or litigation expenses.

## **CONDITIONS OF SETTLEMENT AND EFFECT OF TERMINATION**

22. The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

(a) the Southern District Court has entered the Preliminary Approval Order, substantially in the form set forth in Exhibit C attached hereto;

(b) Plaintiffs have not exercised their option to terminate the Settlement pursuant to paragraph 24 below;

(c) Defendants have not exercised their option to terminate the Settlement pursuant to paragraph 24 below;

(d)     the Southern District Court has approved the Settlement as described herein, following notice to Company stockholders and a hearing, and entered the Judgment, substantially in the form set forth in Exhibit F attached hereto, and the Judgment has become Final; and

(e)     the full Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of paragraph 2(a) above.

23.     The Settlement shall not be conditioned upon the obtaining of, or judicial approval of, any releases between or among any settling Defendants and/or any third parties. The Settlement shall also not be conditioned upon the settlement, or the approval of the settlement, of any other lawsuits or claims.

24.     Plaintiffs (provided they unanimously agree amongst themselves) and Defendants (provided they unanimously agree amongst themselves) shall each have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so ("Termination Notice") to the other Settling Parties within thirty (30) calendar days of: (a) the Court's final refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's final refusal to approve the Settlement or any material part thereof; (c) the Court's final refusal to enter the Judgment in any material respect as to the Settlement; or (d) the date upon which an order vacating, modifying, revising, or reversing the Judgment becomes Final, and the provisions of paragraph 25 below shall apply. In addition, Plaintiffs (provided they unanimously agree amongst themselves) shall have the right to terminate the Settlement if the Settlement Amount is not deposited into the Escrow Account in accordance with the provisions of paragraph 2(a) above. However, any decision or proceeding, whether in this Court or any appellate court, solely with respect to an application for an award of attorneys' fees or litigation expenses shall not be considered material

to the Settlement, shall not affect the finality of the Judgment, and shall not be grounds for termination of the Settlement.

25. In the event the Settlement is terminated pursuant to paragraph 24 above, then: (a) the Settlement and the relevant portions of this Stipulation shall be canceled; (b) the Settling Parties shall each revert to their respective litigation positions in their respective Actions as of immediately prior to the execution of the Term Sheet on February 9, 2022; (c) the terms and provisions of the Term Sheet and this Stipulation, with the exception of this paragraph 25 and paragraphs 12, 18, 27, and 52 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Action or in any other proceeding for any purpose, and the Settling Parties shall proceed in all respects as if the Term Settlement and this Stipulation had not been entered; (d) the Judgment and any other order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*; and (e) all amounts in the Escrow Account, less any Taxes paid, due, or owing on any interest earned on the Settlement Amount while on deposit in the Escrow Account, shall be promptly returned to the insurers who funded the Escrow Account in proportion to their respective payments to the Escrow Account.

## NO ADMISSION OF WRONGDOING

26. Defendants deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever in the Actions.

27. Neither the Term Sheet, this Stipulation (whether or not consummated), including the exhibits hereto, the negotiations leading to the execution of the Term Sheet and this Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)	shall be offered against any of the Released Defendants' Persons as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Defendants' Persons with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in the Actions or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Defendants' Persons or in any way referred to for any other reason as against any of the Released Defendants' Persons, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)	shall be offered against any of the Released Plaintiffs' Persons, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Plaintiffs' Persons that any of their claims are without merit, that any of the Released Defendants' Persons had meritorious defenses, or that damages recoverable under the Complaints would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Released Plaintiffs' Persons, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)	shall be construed against any of the Released Defendants' Persons or the Released Plaintiffs' Persons as an admission, concession, or presumption that the consideration to be given hereunder represents the consideration which could be or would have been recovered after trial; *provided, however*, that if this Stipulation is approved by the Court, the Settling Parties and the Released Defendants' Persons, the Released Plaintiffs' Persons, and their respective counsel

may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

## MISCELLANEOUS PROVISIONS

28.    All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

29.    Defendants warrant that, as to the payments made or to be made on behalf of them, at the time of entering into this Stipulation and at the time of such payment they, or to the best of their knowledge any persons or entities contributing to the payment of the Settlement Amount, were not insolvent, nor will the payment required to be made by or on behalf of them render them insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.  This representation is made by each of the Defendants and not by their counsel.

30.    In the event any proceedings by or on behalf of Defendants or the Company, whether voluntary or involuntary, are initiated under any chapter of the United States Bankruptcy Code, including any act of receivership, asset seizure, or similar federal or state law action ("Bankruptcy Proceedings"), the Settling Parties agree to use their commercially reasonable best efforts to obtain all necessary orders, consents, releases, and approvals for effectuation of the Stipulation and Court approval of the Settlement in a timely and expeditious manner.  By way of example only, the Settling Parties agree to cooperate in making applications and motions to the bankruptcy court, including, for relief from any stay, approval of the Settlement, authority to release funds, authority to release claims and indemnify officers and directors, and authority for

the Court to enter all necessary orders and judgments, and any other actions reasonably necessary to effectuate the terms of the Settlement.

31.     If any Bankruptcy Proceedings by or on behalf of Defendants or the Company are initiated prior to the payment of the Settlement Amount, the Settling Parties agree to seek an order from the bankruptcy court presiding over such Bankruptcy Proceedings: (i) either lifting the automatic stay for the limited purpose of authorizing such payment(s), or finding that the payment of the Settlement Amount by Defendants and/or their insurance carriers does not violate the automatic stay; and (ii) finding that the payment of the Settlement Amount by Defendants and/or their insurance carriers does not constitute utilization of estate proceeds and/or a preference, voidable transfer, fraudulent transfer, or similar transaction. In addition, in the event of any Bankruptcy Proceedings by or on behalf of Defendants or the Company, the Settling Parties agree that all dates and deadlines in the Actions, if any, or any dates and deadlines associated with any appeals, will be extended for such periods of time as necessary to obtain necessary orders, consents, releases, and approvals from the bankruptcy court to carry out the terms and conditions of the Settlement.

32.     In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Plaintiffs, the parties to the Southern District Action shall jointly move the Court to vacate and set aside the Releases given and the Judgment entered in favor of Defendants and the Released Defendants' Persons or the Released Plaintiffs' Persons pursuant to this Stipulation, in which event the Releases and Judgment shall be null and

void, and the Parties shall be restored to their respective positions in the litigation as provided in paragraph 25 above and any cash amounts in the Escrow Account (less any Taxes paid, due, or owing with respect to any interest earned on the Settlement Amount while on deposit in the Escrow Account) shall be returned as provided in paragraph 25 above.

33.     The Settling Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Plaintiffs against the Released Defendants' Persons with respect to the Released Plaintiffs' Claims.  Each of the Settling Parties agree that, throughout the course of the Actions, all parties and their counsel each complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure, and all similar state law provisions, including without limitation Ohio Civ.R. 11, and no Settling Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure, or any similar state law provisions, including without limitation Ohio Civ.R. 11, relating to the institution, prosecution, defense, or settlement of the Actions.

34.     The Settling Parties agree that the Settlement consideration and the other terms of the Settlement were negotiated at arm's length and in good faith by the Settling Parties, including through a mediation process supervised and conducted by the Mediator, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

35.     Defendants, the Company, the SLC, and their respective counsel, shall not make any public statement (whether or not for attribution) that the Actions were commenced or prosecuted in bad faith, nor will they deny that the Actions were commenced and prosecuted in good faith and are being settled voluntarily after consultation with competent legal counsel.

Plaintiffs, Defendants, the Company, and the SLC and their respective counsel shall not suggest that the Settlement constitutes an admission of any claim or defense alleged.

36. The Settling Parties and their respective counsel shall not issue any press release regarding the proposed Settlement until agreed to by all Settling Parties. Any description of the proposed Settlement by any Party or their counsel on any public website shall be consistent with the Stipulation and Exhibit A.

37. Nothing in this Agreement shall be construed to limit the Company's ability to make such disclosures regarding the Settlement as it believes are required or advisable under the securities laws and disclosure requirements applicable to the Company.

38. The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived except by a writing signed on behalf of each of the Settling Parties (or their successors-in-interest).

39. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

40. The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of: (a) entering orders providing for awards of attorneys' fees and litigation expenses to Plaintiffs' Counsel and (b) enforcing the terms of this Stipulation.

41. The waiver by one Settling Party of any breach of this Stipulation by any other Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

42. This Stipulation and its exhibits constitute the entire agreement among the Settling Parties concerning the Settlement and this Stipulation and its exhibits. All Settling Parties

acknowledge that no other agreements, representations, warranties, or inducements have been made by any Settling Party concerning this Stipulation and its exhibits other than those contained and memorialized in such documents.

43.     This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

44.     This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Settling Parties, including any and all Released Persons and any corporation, partnership, or other entity into or with which any Settling Party may merge, consolidate, or reorganize.

45.     The construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it shall be governed by the internal laws of the State of Ohio without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

46.     Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court.

47.     This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

48.     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority

to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

49.     The Settling Parties agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.  The Settling Parties further agree that, pending final approval of the Settlement, they shall not prosecute any of the Actions and agree to oppose any such prosecution by any non-Settling Party.  The Settling Parties agree to work collaboratively and in good faith if any joint motion for a stay is denied while any other deadline is approaching or coming due, including but not limited to an agreement to continue or reschedule depositions unless expressly prohibited by judicial order and to seek appellate relief as needed.

50.     If any Settling Party is required to give notice to another Settling Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or facsimile or email transmission, with confirmation of receipt.  Notice shall be provided as follows:

If to Plaintiffs or Plaintiffs' Counsel:     Bernstein Litowitz Berger & Grossmann LLP
Attn:  Jeroen van Kwawegen, Esq.
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
Email: Jeroen@blbglaw.com

Saxena White P.A.
Attn: Thomas Curry
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 485-0480
tcurry@saxenawhite.com

Cohen Milstein Sellers
& Toll PLLC
Attn: Steven J. Toll
1100 New York Ave. NW, Fifth Floor
Washington, D.C. 20005
Telephone: (202) 408-4600
stoll@cohenmilstein.com

Johnson Fistel, LLP
Attn: Michael I. Fistel, Jr., Esq.
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (770) 200-3101
Email: MichaelF@johnsonfistel.com

Connick Law, LLC
Attn: Thomas J. Connick, Esq.
25550 Chagrin Blvd., Suite 101
Beachwood, OH 364-0512
Telephone: (216) 364-0512
Facsimile: (216) 609-3446
Email: tconnick@connicklawllc.com

If to the SLC or the Company:        Maeve O'Connor
                                     John Gleeson
                                     919 Third Avenue
                                     New York, NY 10022
                                     Telephone: 212-909-6000
                                     mloconnor@debevoise.com
                                     jgleeson@debevoise.com


If to Defendants Michael J.          JONES DAY
Anderson, Steven J. Demetriou,       Attn: Geoffrey J. Ritts
Julia L. Johnson, Donald T.          North Point
Misheff, Thomas N. Mitchell,         901 Lakeside Avenue
James F. O'Neil III, Christopher D.  Cleveland, OH 44114-1190
Pappas, Sandra Pianalto, Luis A.     Telephone: (216) 586-3939

Reyes, Leslie M. Turner, Steven E. Strah, K. Jon Taylor, Samuel L. Belcher, Bennett L. Gaines, Christine L. Walker, Gary Benz, Jason J. Lisowski, Irene M. Prezelj, Paul T. Addison, Jerry Sue Thornton, William T. Cottle, and George M. Smart

Facsimile:  (216) 579-0212
Email: gjritts@jonesday.com


If to Defendant Charles E. Jones

BAKER & HOSTETLER LLP
Attn:  Daniel R. Warren
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone:  (216) 621-0200
Facsimile:  (216) 696-0740
Email: dwarren@bakerlaw.com

GIBSON, DUNN & CRUTCHER LLP
Attn:  William S. Scherman
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
Email:  wscherman@gibsondunn.com


If to Defendant Michael J. Dowling

TUCKER ELLIS LLP
Attn:  John F. McCaffrey
John A. Favret
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:  (216) 592-5000
Facsimile:  (216) 592-5009
Email:  john.mccaffrey@tuckerellis.com


If to Defendant Ebony Yeboah-Amankwah

SKADDEN, ARPS, SLATE, MEAGHER, FLOM, LLP
Attn:  Marcella L. Lape
155 N. Upper Wacker Drive
Chicago, IL 60606-1720
Telephone:  (312) 407-0700
Facsimile:  (312) 407-0411

Email:  marcie.lape@skadden.com

| | |
|---|---|
| If to Defendant Robert P. Reffner | MCDERMOTT, WILL, & EMERY, LLP<br>Attn:  Steven S. Scholes<br>444 West Lake Street<br>Chicago, IL 60606-0029<br>Telephone:  (312) 372-2000<br>Facsimile:  (312) 984-7700<br>Email:  sscholes@mwe.com |
| If to Defendant James F. Pearson | BALLARD SPAHR LLP<br>Attn:  Timothy D. Katsiff<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103-7599<br>Telephone: (215) 665-8500<br>Facsimile: (215) 864-8999<br>Email: katsifft@ballardspahr.com |
| If to Defendant Dennis M. Chack | MORGAN, LEWIS & BOCKIUS<br>Attn:  Michael L. Kichline<br>1701 Market Street<br>Philadelphia, PA 19103<br>Telephone: (215) 963-5000<br>Facsimile: (215) 963-5001<br>Email: michael.kichline@morganlewis.com |
| If to Defendant Eileen Mikkelsen | BOIES SCHILLER FLEXNER LLP<br>Attn:  Lauren Bell<br>1401 New York Avenue, NW<br>11th Floor<br>Washington, DC 20005<br>Telephone:  (202) 237-2727<br>Facsimile:  (202) 237-6131<br>Email:  lbell@bsfllp.com |
| If to Defendant Justin Biltz | WALTER | HAVERFIELD LLP<br>Attn:  Ralph E. Cascarilla<br>1301 E. Ninth Street, Suite 3500<br>Cleveland, OH  44114<br>Telephone:  (216) 781-1212<br>Facsimile:  (216) 575-0911 |

51.     Except as otherwise provided herein, each Settling Party shall bear its own costs.

52.     Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Settling Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed, and proceedings in connection with the Stipulation confidential.

53.     Subject to applicable Court rules, all agreements made and orders entered during the course of the Actions relating to the confidentiality of information shall survive this Settlement.

**IN WITNESS WHEREOF,** the Settling Parties have caused this Stipulation to be executed, by their duly authorized attorneys, as of March 11, 2022.

[Signatures on Next Page]

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

_____

Jeroen van Kwawegen
Alla Zayenchik
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 554-1400
Jeroen@blbglaw.com
Alla.Zayenchik@blbglaw.com

*Co-Lead Counsel for Lead Plaintiffs in*
*Southern District Action and counsel for*
*Plaintiff-Intervenors in the Northern*
*District Action*

DEBEVOISE & PLIMPTON LLP

_____

Maeve O'Connor
John Gleeson
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
mloconnor@debevoise.com
jgleeson@debevoise.com

*Counsel for the Special Litigation Committee*
*of the Board of Directors of Nominal*
*Defendant FirstEnergy and counsel to*
*Nominal Defendant FirstEnergy*

JONES DAY

Thomas Curry
1000 N. West Street
Suite 1200, Office 1265
Wilmington, DE 19801
Telephone: (302) 485-0480
tcurry@saxenawhite.com

-- and --

Maya Saxena
Joseph E. White, III.·
Lester R. Hooker
Dianne M. Pitre
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Phone: (561) 394-3399
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com
dpitrc@saxenawhite.com

-- and --

Steven B. Singer
Sara DiLeo
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
ssinger@saxenawhite.com
sdileo@saxenawhitc.com
*Co-Lead Counsel for lead Plaintiffs in
Southern District Action and counsel for
Plaint1ff-lntervenors in the Northern District
Action*

Geoffrey .J. Ritts
Robert S. Faxon
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: gjritts@jonesday.com
Email: rfaxon@jonesday.com

-- and --

Mai:jorie P. Duffy
Jordan M. Baumann
325 John H. McConnell Boulevard, Ste 600
Columbus, OH 43215
Telephone: (614) 469-3939
Facsimile: (614) 461-4198
Email: mpduffy@jonesday.corn
Email: jbaurnann@jonesday.com

*Attorneys/or Defendants Michael J.
Anderson, Steven J. Demetriou, Julia L.
Johnson, Donald T. Mishefr,-Thomas N.
Mitchell, James F. 0 'Neil 111, Christopher D.
Pappas, Sandra Pianalto, Luis A. Reyes,
Leslie M. Turner, Steven E. Strah, K. Jon
Taylor, Samuel L. Belcher, Bennett L.
Gaines, Christine L. Walker, Ga,y Benz,
Jason J. Lisowski, Irene M. Prezelj, Paul T.
Addison, Jerry-Sue Thornton, William T
Cottle, and George M. Smart*

**SAXENA** WHITE P.A.

Thomas Curry
1000 N. West Street
Suite 1200, Office 1265
Wilmington, OE 1980l
Telephone: (302) 485-0480
tcuny@saxenawhite.com

-and-

Maya Saxena
Joseph E. White, m
Lester R. Hooker
Dianne M. Pitre
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Phone:(S61)394-3399
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawbite.com
dpitre@saxenawhite.com

--and-

Steven B. Singer
SaraDi.Leo
10 Bank Street, 8th Floor
White Plains, NY I0606
Telephone: (914) 437-SSSI
ssinger@saxenawhite.com
sdileo@saxenawhite.com
*Co-Lead* Counsel for Lead Plaintiffs in
*Southern District Action and counsel for*
*Plaintiff-lntervenors in the Northem District*
**Action**

JONES DAY



Geoffrey J. Ritts
Robert S. Faxon
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: gjritts@jonesday.com
Email: rfax.on@jonesday.com

-and-

Marjorie P. Duffy
Jordan M. Baumann
325 John H. McConnell Boulevard, Ste 600
Columbus, OH 43215
Telephone:.. (614) 469-3939
Facsimile: (614) 461-4198
Email: mpduffy@jonesday.com
Email: jbamnann@jonesday.com

*Attorneys for Defendants Michael J.*
*Anderson, Steven J. Demetriou, Julia L*
*Johnson, Donald T. Misheff, Thomas N*
*Mitchell, James F. O'Neil III, Christopher D.*
*Pappas, Sandra Pianalto, Luis A. Reyes,*
*Leslie M. Turner, Steven E. Strah, K. Jon*
*Taylor, Samuel L. Belcher, Bennett L.*
*Gaines, Christine L. Walker, Gary Benz,*
*Jason J. Lisowski. Irene M. Prezelj, Paul T.*
*Addison, Jerry Sue Thornton. William T.*
*Cottle, and George M. Smart*

COHEN MILSTEIN SELLERS
& TOLL PLLC

_____
Steven J. Toll
Daniel S. Sommers
Molly J. Bowen
1100 New York Ave. NW, Fifth Floor
Washington, D.C. 20005
Telephone: (202) 408-4600
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
mbowen@cohenmilstein.com


-- and –

Christopher Lometti
Richard A. Speirs
Amy Miller
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838 7745
clometti@cohenmilstein.com
rspeirs@cohenmilstein.com
amiller@cohenmilstein.com

*Counsel for Additional Plaintiff*

*Massachusetts Laborers Pension Fund in
Southern District Action and in the
Northern District Action*

John C. Camillus
LAW OFFICES OF JOHN C.
CAMILLUS LLC
P.O. Box 141410
Columbus, OH 43214
Telephone: (614) 992-1000
jcamillus@camilluslaw.com

*Liaison Counsel for Co-Lead Plaintiffs in
Southern District Action and counsel for
Plaintiff-Intervenors in the Northern District*

BAKER & HOSTETLER LLP


_____
Daniel R. Warren
Carole S. Rendon
Douglas L. Shively
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Email: dwarren@bakerlaw.com
Email: crendon@bakerlaw.com
Email: dshively@bakerlaw.com


GIBSON, DUNN & CRUTCHER LLP

William S. Scherman
Jason J. Mendro
Jason R. Meltzer
Robert K. Hur
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
Email: wscherman@gibsondunn.com
Email: jmendro@gibsondunn.com
Email: jmeltzer@gibsondunn.com
Email: rhur@gibsondunn.com


*Attorneys for Defendant Charles E. Jones*

COHEN MILSTEIN SELLERS
& TOLL PLLC

BAKER & HOSTETLER LLP

_____

Steven J. Toll
Daniel S. Sommers
Molly J. Bowen
1100 New York Ave. NW, Fifth Floor
Washington, D.C. 20005
Telephone: (202) 408-4600
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
mbowen@cohenmilstein.com

-- and –

Christopher Lometti
Richard A. Speirs
Amy Miller
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838 7745
clometti@cohenmilstein.com
rspeirs@cohenmilstein.com
amiller@cohenmilstein.com

Counsel for Additional Plaintiff

Massachusetts Laborers Pension Fund in
*Southern District Action* and in the
*Northern District Action*

_____

John C. Camillus
LAW OFFICES OF JOHN C.
CAMILLUS LLC
P.O. Box 141410
Columbus, OH 43214
Telephone: (614) 992-1000
jcamillus@camilluslaw.com

Liaison Counsel for Co-Lead Plaintiffs in
Southern District Action and counsel for
Plaintiff-Intervenors in the Northern District
Action

_____

Daniel R. Warren
Carole S. Rendon
Douglas L. Shively
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Email: dwarren@bakerlaw.com
Email: crendon@bakerlaw.com
Email: dshively@bakerlaw.com

GIBSON, DUNN & CRUTCHER LLP

William S. Scherman
Jason J. Mendro
Jason R. Meltzer
Robert K. Hur
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
Email: wscherman@gibsondunn.com
Email: jmendro@gibsondunn.com
Email: jmeltzer@gibsondunn.com
Email: rhur@gibsondunn.com

Attorneys for Defendant Charles E. Jones

COHEN MILSTEIN SELLERS
& TOLL PLLC

_____

Steven J. Toll
Daniel S. Sommers
Molly J. Bowen
1100 New York Ave. NW, Fifth Floor
Washington, D.C. 20005
Telephone: (202) 408-4600
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
mbowen@cohenmilstein.com


-- and –

Christopher Lometti
Richard A. Speirs
Amy Miller
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838 7745
clometti@cohenmilstein.com
rspeirs@cohenmilstein.com
amiller@cohenmilstein.com

*Counsel for Additional Plaintiff*

*Massachusetts Laborers Pension Fund in Southern District Action and in the Northern District Action*

John C. Camillus
LAW OFFICES OF JOHN C. CAMILLUS LLC
P.O. Box 141410
Columbus, OH 43214
Telephone: (614) 992-1000
jcamillus@camilluslaw.com

*Liaison Counsel for Co-Lead Plaintiffs in Southern District Action and counsel for Plaintiff-Intervenors in the Northern District Action*

BAKER & HOSTETLER LLP



_____

Daniel R. Warren
Carole S. Rendon
Douglas L. Shively
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone:  (216) 621-0200
Facsimile:  (216) 696-0740
Email:  dwarren@bakerlaw.com
Email:  crendon@bakerlaw.com
Email:  dshively@bakerlaw.com


GIBSON, DUNN & CRUTCHER LLP

William S. Scherman
Jason J. Mendro
Jason R. Meltzer
Robert K. Hur
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539
Email:  wscherman@gibsondunn.com
Email:  jmendro@gibsondunn.com
Email:  jmeltzer@gibsondunn.com
Email:  rhur@gibsondunn.com


*Attorneys for Defendant Charles E. Jones*

COHEN MILSTEIN SELLERS
& TOLL PLLC

_____
Steven J. Toll
Daniel S. Sommers
Molly J. Bowen
1100 New York Ave. NW, Fifth Floor
Washington, D.C. 20005
Telephone: (202) 408-4600
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
mbowen@cohenmilstein.com

-- and –

Christopher Lometti
Richard A. Speirs
Amy Miller
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838 7745
clometti@cohenmilstein.com
rspeirs@cohenmilstein.com
amiller@cohenmilstein.com

*Counsel for Additional Plaintiff*

*Massachusetts Laborers Pension Fund in
Southern District Action and in the
Northern District Action*

John C. Camillus
LAW OFFICES OF JOHN C.
CAMILLUS LLC
P.O. Box 141410
Columbus, OH 43214
Telephone: (614) 992-1000
jcamillus@camilluslaw.com

*Liaison Counsel for Co-Lead Plaintiffs in
Southern District Action and counsel for
Plaintiff-Intervenors in the Northern District
Action*

BAKER & HOSTETLER LLP

_____
Daniel R. Warren
Carole S. Rendon
Douglas L. Shively
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Email: dwarren@bakerlaw.com
Email: crendon@bakerlaw.com
Email: dshively@bakerlaw.com

GIBSON, DUNN & CRUTCHER LLP


_____
William S. Scherman
Jason J. Mendro
Jason R. Meltzer
Robert K. Hur
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
Email: wscherman@gibsondunn.com
Email: jmendro@gibsondunn.com
Email: jmeltzer@gibsondunn.com
Email: rhur@gibsondunn.com

*Attorneys for Defendant Charles E. Jones*

**O:lefs"on**

Eric Lechtzin
3 Terry Drive, Suite 205
Newtown, PA 18940
Phone: (215) 867-2399
Facsimile: (267) 685-0676
medelson@edelson-law.com
elechtzin@edelson-law.com

*Counsel for Plaintiff Jennifer L. Miller in
the Northern District Action*

John F. McCaffrey
John A. Favret
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:  (216) 592-5000
Facsimile:  (216) 592-5009
Email: john.mccaffrey@tuckerellis.com
Email: john.favret@tuckerellis.com

*Attorneys for Defendant Michael J Dowling*

EDELSON LECHTZIN LLP

TUCKER ELLIS LLP

_____

Marc H. Edelson
Eric Lechtzin
3 Terry Drive, Suite 205
Newtown, PA 18940
Phone: (215) 867-2399
Facsimile: (267) 685-0676
medelson@edelson-law.com
elechtzin@edelson-law.com

*Counsel for Plaintiff Jennifer L. Miller in the Northern District Action*

John F. McCaffrey
John A. Favret
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone: (216) 592-5000
Facsimile: (216) 592-5009
Email: john.mccaffrey@tuckerellis.com
Email: john.favret@tuckerellis.com

*Attorneys for Defendant Michael J Dowling*

JOHNSON FISTEL, LLP

_____

Michael I. Fistel, Jr.
Mary Ellen Conner
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (770) 200-3101
Email:  MichaelF@johnsonfistel.com
Email:  MaryEllenC@johnsonfistel.com

-- and --

Frank J. Johnson
501 West Broadway, Suite 800
San Diego, CA 92101
Tel: 619.230.0063
Fax: 619.255.1856
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
Email:  FrankJ@johnsonfistel.com

*Co-Lead Counsel for Ohio State Court
Plaintiffs John Gendrich and Robert Sloan*

-- and --

Thomas J. Connick
CONNICK LAW, LLC
25550 Chagrin Blvd., Suite 101
Beachwood, OH 364-0512
Telephone: (216) 364-0512
Facsimile: (216) 609-3446
Email: tconnick@connicklawllc.com

*Co-Lead Counsel for Ohio State Court
Plaintiffs John Gendrich and Robert Sloan*

-- and --

George W. Cochran
LAW OFFICE OF GEORGE W.
COCHRAN
1981 Crossfield Circle
Kent, Ohio 44240

SKADDEN, ARPS, SLATE, MEAGHER,
   FLOM, LLP

_____

Marcella L. Lape
Gail Lee
155 N. Upper Wacker Drive
Chicago, IL 60606-1720
Telephone:  (312) 407-0700
Facsimile:  (312) 407-0411
Email:  marcie.lape@skadden.com
Email:  gail.lee@skadden.com
*Attorneys for Defendant Ebony Yeboah-
Amankwah*

JOHNSON FISTEL, LLP

_____

Michael I. Fistel, Jr.
Mary Ellen Conner
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (770) 200-3101
Email: MichaelF@johnsonfistel.com
Email: MaryEllenC@johnsonfistel.com

-- and --

Frank J. Johnson
501 West Broadway, Suite 800
San Diego, CA 92101
Tel: 619.230.0063
Fax: 619.255.1856
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
Email: FrankJ@johnsonfistel.com

*Co-Lead Counsel for Ohio State Court
Plaintiffs John Gendrich and Robert Sloan*

-- and --

Thomas J. Connick
CONNICK LAW, LLC
25550 Chagrin Blvd., Suite 101
Beachwood, OH 364-0512
Telephone: (216) 364-0512
Facsimile: (216) 609-3446
Email: tconnick@connicklawllc.com

*Co-Lead Counsel for Ohio State Court
Plaintiffs John Gendrich and Robert Sloan*

-- and --

George W. Cochran
LAW OFFICE OF GEORGE W.
COCHRAN
1981 Crossfield Circle
Kent, Ohio 44240

SKADDEN, ARPS, SLATE, MEAGHER,
FLOM,LLP



Marcella L. Lape
Gail Lee
155 N. Upper Wacker Drive
Chicago, IL 60606-1720
Telephone: (312) 407-0700
Facsimile: (312) 407-0411
Email: marcie.lape@skadden.com
Email: gail.lee@skadden.com
*Attorneys for Defendant Ebony Yeboah-
Amankwah*

Telephone: (330) 607-2187
Email: lawchrist@gmail.com

*Additional Counsel for Ohio State Court*
*Plaintiffs John Gendrich and Robert Sloan*

MCDERMOTT, WILL, & EMERY, LLP

Steven S. Scholes
David S. Rosenbloom
Paul Helms
444 West Lake Street
Chicago, IL 60606-0029
Telephone:  (312) 372-2000
Facsimile:  (312) 984-7700
Email:  sscholes@mwe.com
Email:  drosenbloom@mwe.com
Email:  phelms@mwe.com

BROUSE McDOWELL

John C. Fairweather (0018216)
Lisa S. DelGrosso (0064938)
 388 South Main Street, Suite 500
Akron, OH 44311
Telephone:  (330) 535-5711
Facsimile:  (330) 253-8601
Email: jfairweather@brouse.com
Email:  ldelgrosso@brouse.com
*Attorneys for Defendant Robert P. Reffner*



Jeremy R. Teaberry
Timothy D. Katsiff
David L. Axelrod
Emilia McKee Vassallo

1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
Email: teaberryj@ballardspahr.com
Email: katsifft@ballardspahr.com
Email: axelrodd@ballardspahr.com
Email: mckeevassalloe@ballardspahr.com

*Attorneys for Defendant James F. Pearson*


MORGAN, LEWIS & BOCKIUS


_____
Laura Hughes McNally
Michael L. Kichline
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
Email: laura.mcnall y@morganlewis.com
Email: michael.kichline@morganlewis.com

LAPE MANSFIELD NAKASIAN
& GIBSON, LLC

Douglas M. Mansfield
9980 Brewster Lane, Suite 150
Powell, OH 43065
Telephone: (614) 763-2316
Email: dmansfield@lmng-law.com
*Attorneys for Defendant Dennis M. Chack*

BALLARD SPAHR LLP

_____

Jeremy R. Teaberry
Timothy D. Katsiff
David L. Axelrod
Emilia McKee Vassallo

1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
Email: teaberryj@baUardspahr.com
Email: katsifft@ballardspahr.com
Email: axelrodd@ballardspahr.com
Email: mckeevassalloe@ballardspahr.com

*Attorneys for Defendant James F. Pearson*

MORGAN, LEWIS & BOCKIUS



Laura Hughes McNally
Michael L. Kichline
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
Email: laura.mcnally@morganlewis.com
Email: michael.kichline@morganlewis.com

LAPE MANSFIELD NAKASIAN
& GIBSON, LLC

Douglas M. Mansfield
9980 Brewster Lane, Suite 150
Powell, OH 43065
Telephone: (614) 763-2316
Email: dmansfield@lmng-law.com
*Attorneys/or Defendant Dennis M Chack*

BOIES  SCHILLER  FLEXNER  LLP

~~Richard Pock~~  ══════
300 South Fourth Street
Suite 800
Las Vegas, NV 89101
Telephone:  (702) 382-7300
Facsimile:  (702) 382-2755
Email: rpocker@bsfllp.com
*Attorneys.for  Defendant  Eileen Mikkelsen*

WALTER ı HAVER.FIELD LLP

Ralph E. Cascarilla
1301 E. Ninth Street, Suite 3500
Cleveland, OH  44114
Telephone:  (216) 781-1212
Facsimile:  (216) 575-0911
Email:  rcascarilla@walterhav.com

*Attorney.for  Defendant  Justin Biltz*

BOIES SCHILLER FLEXNER LLP

_____

Richard Pocker
300 South Fourth Street
Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
Email: rpocker@bsfllp.com
*Attorneys for Defendant Eileen Mikkelsen*


WALTER | HAVERFIELD LLP

Ralph E. Cascarilla
1301 E. Ninth Street, Suite 3500
Cleveland, OH 44114
Telephone: (216) 781-1212
Facsimile: (216) 575-0911
Email: rcascarilla@walterhav.com


*Attorney for Defendant Justin Biltz*

# EXHIBIT A

**Exhibit A: Corporate Governance Reforms**

**1.**     Six directors who have been on the Board a minimum of five years will not stand for re-election in 2022.  On February 11, 2022, the Company issued a Form 8-K announcing the Board changes.

**2.**     The Board shall implement a process to review the current c-suite executives. This process shall be commenced within 30 days after the next annual meeting by the newly constituted Board.  The review must be completed no more than 90 days after the commencement date. The review shall be conducted by a special committee consisting of independent directors who joined the Board on or after 2019 and will include at least three members. The special committee will have the power to retain, at the Company's expense, outside advisors if the special committee deems outside advisors necessary.  After conducting its review, the special committee will make a recommendation to the full Board, which retains the authority to make the final determinations in executive session, outside the presence of any Company officers.

**3.**     The full Board shall take responsibility for actively overseeing FirstEnergy's lobbying, political contributions, and political activities as a critical aspect of FirstEnergy's business.

- On an annual basis, management shall prepare a political and lobbying action plan, covering all such activities on behalf of FirstEnergy on a state and federal level ("Political and Lobbying Action Plan").

- The Company shall, consistent with the process set forth in Ohio Revised Code Section 1701.11, make the following amendments to FirstEnergy's Code of Regulations:

  - The "Directors" section of FirstEnergy's Code of Regulations shall be amended to add the following language: "<u>All directors and the full Board have responsibility to actively oversee FirstEnergy's lobbying, political contributions, and political activities.</u>"

  - The "Directors" section of the FirstEnergy's Code of Regulations shall be amended to add the following language, "<u>The full Board shall review and approve a political and lobbying action plan prepared annually by management, covering all such activities on behalf of FirstEnergy on a state and federal level ("Political and Lobbying Action Plan").</u>"

- Within 10 business days after the May 2022 annual meeting the Corporate Governance and Corporate Responsibility Committee of the Board shall be reconstituted to consist of a majority of independent directors who joined the Board in 2019 or later.  The

reconstituted Corporate Governance and Corporate Responsibility Committee shall oversee management's implementation of the Political and Lobbying Action Plan.

- The reconstituted Corporate Governance and Corporate Responsibility Committee agrees to change its name to include "Political Oversight."

- The Corporate Governance and Corporate Responsibility Committee shall amend its charter to add the following language:

    - The "Purpose" section of the Corporate Governance and Corporate Responsibility Committee's charter shall be amended to add the underlined language: The purpose of the Corporate Governance and Corporate Responsibility Committee (the "Committee") of the Board of Directors (the "Board") of FirstEnergy Corp. (the "Company") is to carry out the responsibilities delegated by the Board relating to the Company's director nominations process, the Company's corporate governance policies and oversight of the Company's policies and practices relating to corporate responsibility, including a particularized focus on enhancing oversight of lobbying, political contributions, and political activities, among other issues. While certain aspects of oversight have been delegated to the Committee (including oversight over management's implementation of the Political and Lobbying Action Plan), the full Board has responsibility to actively oversee FirstEnergy's lobbying, political contributions, and political activities.

- The Charter of the Corporate Governance and Corporate Responsibility Committee shall be further amended to include the following:

    - The Chief Legal Officer and Chief Ethics & Compliance Officer shall have direct access to the Corporate Governance and Corporate Responsibility Committee.

    - The Chief Legal Officer and Chief Ethics & Compliance Officer, together with senior executives directly responsible for implementing the Political and Lobbying Action Plan, shall report to the Corporate Governance and Corporate Responsibility Committee on a quarterly basis.

    - The Corporate Governance and Corporate Responsibility Committee shall report its findings to the full Board on a quarterly basis.

    - The Corporate Governance and Corporate Responsibility Committee shall retain (and the Company shall pay for) an independent third party to audit the implementation of the Board-approved Political and Lobbying Action Plan.

The independent third party shall continue to conduct annual audits of management's implementation of the Board-approved Political and Lobbying Action Plan to ensure compliance. Violation or instances of non-compliance with the Board-approved Political and Lobbying Action Plan will immediately be reported to the full Board for immediate investigation/remediation overseen by the Political Oversight Committee. The independent third party engaged to perform this audit shall not simultaneously be serving as the Company's financial auditor or as a consultant to the Compensation Committee.

4.      The Board shall provide enhanced disclosure to shareholders of FirstEnergy's lobbying, political contributions, and political activities. These enhanced disclosures shall include:

- The proxy statement for each year of the duration of this Settlement shall include a section titled "Transparency in Corporate Contributions" that shall list all payments, if any, made in the previous year to entities incorporated under 26 U.S.C. § 501(c)(4) ("501(c)(4)" entities) and (2) all payments, if any, made in the previous year to entities known by FirstEnergy to be operating for the benefit of a public official, either directly or indirectly. The list shall include the following information: the entity's name and address, date of contribution, amount of contribution, and purpose of contribution.

- The annual proxy statement shall also include a report from the third-party auditor of the Board-approved Political and Lobbying Action Plan disclosing the number of violations and issues of non-compliance with the law or the Board-approved Political and Lobbying Action Plan, if any, and the date(s) each issue was reported to the full Board.

5.      The Board shall further align financial incentives of senior executives with proactively complying with legal and ethical obligations.

- A majority of the Compensation Committee shall consist of directors who joined the Board in 2019 or later. The Company agrees to reconstitute the Compensation Committee to meet these requirements within 10 business days of the May 2022 annual meeting .

- The Compensation Committee shall review its clawback policy for senior executive compensation and implement any enhancements necessary to ensure the below requirements are met. The clawback policy, and any enhancements, will be described in the Company's proxy.

  - The Compensation Committee shall be authorized to review alleged misconduct and determine whether a clawback of compensation is

appropriate.

- The clawback policy shall be incorporated into all agreements with senior executives concerning the senior executives' compensation.

- The clawback system shall apply to stock-based compensation and bonuses, and shall not apply to an employee's base salary.

- The clawback system shall include an arbitration provision in case of a dispute.

**6.**     Unless otherwise specified, each of the provisions of this exhibit shall remain binding on the Company for no less than five (5) years following the Settlement's Effective Date. If the Company is acquired during the five-year period, then all terms will remain in effect for at least twenty-four (24) months after the Company's acquisition.