IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| EMPLOYEES RET. SYSTEM OF THE CITY OF ST. LOUIS, *et. al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> CHARLES E. JONES, *et. al.*, <br><br> *Defendants*, <br><br> and <br><br> FIRSTENERGY CORP., <br><br> *Nominal Defendant.* | Case No. 2:20-cv-04813 <br><br> Chief Judge Algenon L. Marbley <br><br> Magistrate Judge Kimberly A. Jolson |

**OBJECTION OF THE SPECIAL LITIGATION COMMITTEE OF THE
BOARD OF DIRECTORS OF NOMINAL DEFENDANT FIRSTENERGY CORP.
TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES**

The Special Litigation Committee ("SLC") of Nominal Defendant FirstEnergy Corp. ("FirstEnergy" or the "Company"), by and through its undersigned counsel, submits this objection to Plaintiffs' motion for an award of $48.6 million in attorneys' fees ("Fee Request"), representing 27% of the $180 million monetary benefit to the Company contemplated as part of the proposed Settlement.  ECF No. 179 at 43.

As the parties' Stipulation of Settlement and Plaintiffs' Motion for Final Approval makes clear, the proposed Settlement to resolve the Company's derivative claims was the product of vigorous negotiations among Plaintiffs, the SLC, and Defendants; the proposed Settlement

1

should be approved because it provides substantial monetary and corporate governance benefits to FirstEnergy. Plaintiffs' Fee Request, however, seeks to deprive FirstEnergy of much of the monetary value of the Settlement, proposing that Plaintiffs' counsel receive nearly $50 million that would otherwise be paid to the Company. While the SLC appreciates Plaintiffs' counsel's efforts on the Company's behalf and believes they should receive a reasonable fee award to compensate them for their efforts, Plaintiffs' current Fee Request is not reasonable and should be rejected for two independent reasons. First, Plaintiffs' Fee Request ignores the substantial contributions of the SLC and its counsel in obtaining the corporate governance reforms that are a centerpiece of Plaintiffs' Request. Second, and in any event, the Fee Request is excessive when compared against comparable derivative settlements; while Plaintiffs attempt to rationalize their Request by pointing to purportedly "similar" settlements, Plaintiffs fail to point to any derivative litigation awarding fees of the size requested in similar circumstances. For these reasons, and as described below, the SLC submits that Plaintiffs' fee award should be no greater than 13.5%, or $24.3 million, half of the amount Plaintiffs requested; such an award would more than fairly compensate Plaintiffs' counsel for their work on this litigation and comport with guidance from courts in this Circuit and around the country regarding a reasonable fee award in similar circumstances.[1]

## ARGUMENT

To determine whether a petition for attorneys' fees is reasonable, courts in this Circuit consider a variety of factors, including: (1) the "value of the benefit rendered to the corporation or its shareholders;" (2) "society's stake in rewarding attorneys who produce such benefits in

---

[1] The SLC does not object to the requested service awards for the named Plaintiffs, *see* ECF No. 179 at 54–55. Nor does the SLC object to Plaintiffs' motion for an award of reasonable costs and expenses, though it notes that Plaintiffs have provided almost no information from which it can evaluate whether these costs are reasonable.

order to maintain an incentive to others;" (3) "whether the services were undertaken on a contingent fee basis;" (4) "the value of the services on an hourly basis;" (5) "the complexity of the litigation;" and (6) "the professional skill and standing of counsel involved on both sides." *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).  In this Court, "the preferred method of calculating attorneys' fees is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier" to ensure that the percentage awarded does not result in an unreasonable windfall that is disproportionate to the amount of money invested by counsel in prosecuting the action prior to settlement.  *Rikos v. Proctor & Gamble Co.*, 2018 WL 2009681, at *8 (S.D. Ohio April 30, 2018) (citing *Connectivity Sys., Inc. v. Nat'l City Bank*, 2011 WL 292008 at *13 (S.D. Ohio Jan. 26, 2011) (internal quotes omitted)); *see also Lowther v. AK Steel Corp.*, 2012 WL 6676131 at *1–2 (S.D. Ohio Dec. 21, 2012) (collecting cases).

I.  **Plaintiffs' Requested Fee Award Must Be Reduced in Light of the SLC's Role in Achieving the Benefits of the Settlement.**

Plaintiffs' Fee Request is premised on the substantial monetary and corporate governance reforms achieved by the Proposed Settlement.  ECF No. 179 at 29–30 (stating that the corporate governance reforms provide "substantial benefits" to the Company"); *id.* at 30 (calling the monetary recovery "historic" and noting that it "would represent the largest monetary recovery in any shareholder derivative action in the history of the Sixth Circuit by a wide margin and one of the largest shareholder derivative recoveries every achieved"); *id.* at 47 (stating that the fee award is supported by the "unprecedented [corporate] governance reforms achieved."). However, Plaintiffs' Motion fails to acknowledge that these reforms were not achieved by Plaintiffs alone; to the contrary, the SLC—which is comprised of four indisputably independent directors who joined the Board of Directors in the spring of 2021, well after the events giving

3

rise to this litigation—played a substantial role in obtaining the significant reforms that Plaintiffs emphasize throughout their motion. The Declaration of Layn R. Phillips, the mediator in this action, notes participation of members of the SLC and its counsel in advance of and during the parties' mediation session. *See* ECF No. 170-6 at ¶¶ 7, 9–12.

In particular, Plaintiffs emphasize that the corporate governance reforms agreed upon as part of the Settlement included that several long-standing members of the FirstEnergy Board agreed to step down. ECF No. 179 at 28–29 (noting that the Board turnover "alone represents an extraordinary corporate benefit" and that the reforms as a whole will "create significant, extensive, and long-lasting value for FirstEnergy and its public shareholders"); *id*. at 47 (arguing that these corporate governance reforms "may ultimately prove even more valuable . . . than the monetary consideration."). But this outcome could not have been achieved without the SLC's independent work on the Company's behalf. Notably, the long-standing directors stepped down two months ago—in May 2022—well before the scheduled date of the final fairness hearing and obviously before any settlement was finally approved. *See, e.g.*, Press Release, "FirstEnergy Holds Annual Meeting, Announces New Board Leadership," FirstEnergy Newsroom (May 17, 2022), retrieved from https://www.firstenergycorp.com/newsroom/news_articles/firstenergy-holds-annual-meeting--announces-new-board-leadership.html (announcing that six directors were leaving the board); *see also* FirstEnergy, Corp., Form 8-K, at 139 (May 16, 2022) (detailing the Company's corporate governance reforms, including the determination that six directors will not stand for re-election in 2022, a decision that was initially announced in the Company's Form 8-K issued February 11, 2022). Moreover, the Company's press release announcing the proposed settlement—which Plaintiffs' Motion cites—notes that the reforms agreed to as part of the proposed Settlement build upon the substantial measures already taken by the Company to

"strengthen FirstEnergy's governance and compliance program."  Press Release, "FirstEnergy Holds Annual Meeting, Announces New Board Leadership," FirstEnergy Newsroom (May 17, 2022), retrieved from https://www.firstenergycorp.com/newsroom/news_articles/firstenergy-holds-annual-meeting--announces-new-board-leadership.html.

Plaintiffs cannot meaningfully dispute that the very significant value provided to the Company by virtue of the corporate governance reforms in the Settlement (and of the Settlement as a whole) cannot be attributed solely to Plaintiffs, and the Fee Request must be reduced accordingly, as other courts have done in similar circumstances.  *See, e.g.*, *Pope v. Cliffs Nat. Resources, Inc.*, 2014 WL 4930681, at *2–3 (N.D. Ohio Oct. 1, 2014) (denying a fee request where the "Court finds that there is no evidence to suggest that this litigation had any causal effect" on the Company's decision to enact corporate governance reforms); *In re Emerson Radio S'holder Deriv. Litig.*, 2011 WL 1135006, at *6 (Del. Ch. March 28, 2011) (reducing the value of the benefit for purpose of calculating fees where the Company's counsel and Board were partly responsible for the benefit to the Company); *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1076 (Del. Ch. 2015) (noting that there must be a causal connection between the benefit and counsel's efforts in order for a fee award to be justified).

II.     **Plaintiffs' Fee Request Should Be Reduced For Additional Reasons.**

Plaintiffs' Fee Request should be reduced for the additional reason that the requested fee award is excessive when compared to awards for comparable derivative settlements.

First, this Court and jurisdictions around the country have recognized that where, as here, the monetary recovery of a settlement is significant, a lower percentage of recovery in fees is appropriate to avoid an unreasonable windfall to plaintiffs' counsel.  *See In re Cardinal Health Inc., Sec. Litig.*, 528 F. Supp. 2d. 752, 763–64 (S.D. Ohio 2007) (acknowledging that the

5

"percentage fee approach . . . can result in a windfall for the plaintiffs' attorneys because the size of the settlement does not necessarily reflect the skill, efficiency, and hard-work of counsel," and that the declining percentage principle "address[es] this flaw of the percentage approach." Considering this principle, along with the *Ramey* factors, the court reduced the fee award to 18%); *see also Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1261 (Del. 2012) (acknowledging the declining percentage principle, while noting that the most important inquiry is the benefit obtained by Plaintiffs for the Company and its shareholders). Indeed, the derivative cases on which Plaintiffs rely to support their request for a 27% fee all involved fee awards that were significantly lower in absolute terms than the award Plaintiffs are seeking, even where discovery was much further along. For example, both *In re Pfizer, Inc.*, 780 F. Supp. 2d 336 (S.D.N.Y. 2011), and *Cumming v. Edens*, Case No. 13-007 (Del. Ch. 2019), reproduced at ECF No. 179, Ex. 33, settled *after* the completion of fact discovery (including depositions) and the parties' summary judgment motions had been fully briefed but resulted in fee awards well below the requested $48.6 million. *See In re Pfizer, Inc.*, 780 F. Supp. 2d at 342–43 (awarding $22 million in fees); *Cumming*, No. 13-007, Ex. 33 (awarding $14.5 million in fees); *see also Kaprik v. Huntington Bancshares, Inc.*, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) (in a direct action, approving a $3.5 million fee award after several depositions had been taken). The other derivative cases on which Plaintiffs rely, *see* ECF No. 179 at 46–48, similarly resulted in fee awards of less than $25 million. *See, e.g.*, *Rudi v. Wexner*, 2022 WL 1682297 (S.D. Ohio May 16, 2022) (awarding $21 million in fees following some document discovery, but no depositions); *City of Monroe Empls. Ret. Sys v. Murdoch*, No. 2017-0833 (Del. Ch. 2018), reproduced at ECF No. 179 Ex. 34 (awarding $22 million following a separate proceeding to examine the company's books and records and after some document discovery in the present

6

action); *In re Community Health Sys.*, Case No. 3:11-cv-00489 (M.D. Tenn. 2017), reproduced at ECF No. 179, Ex. 26 (awarding $20 million in fees after some document discovery); *In re BigLots S'holder Litig.*, 2018 WL 11356561 (S.D. Ohio 2018) (awarding $1.25 million in fees following extensive document discovery, including litigation over several discovery motions); *cf. also In re Boeing Deriv. Litig.*, No. 2019-0907 (Del. Ch. 2022), reproduced at ECF No. 179, Ex. 28 (awarding $18.26 million of a $237.5 million monetary recovery following some document discovery and in a case involving a wide array of parallel actions and ongoing investigations).

Second, while the SLC fully supports the proposed settlement and agrees that the parties undertook substantial discovery prior to participating in the mediation session that ultimately resulted in the proposed Settlement, the proposed Settlement was nonetheless reached before more labor-intensive discovery took place, further counseling for a lower fee award.[2] As Plaintiffs agree, the proposed Settlement was agreed to before any depositions were taken and Plaintiffs had not yet moved for summary judgment motion or prepared for (or undertaken) a trial. Though counsel certainly bore some risk as a result of litigating this case on a contingent basis, an award of $48.6 million, representing a lodestar multiplier of 3.54 times, is disproportionate and significantly higher than necessary to compensate counsel for their time and the risk they bore. *See, e.g., In re Cardinal Health Inc., Sec. Litig.*, 528 F. Supp. 2d at 764

---

[2] To be sure, the parties have enough information about their relative positions and the risks associated with continued litigation to make a reasoned decision regarding settlement, and the lack of depositions is not a basis to reject the Settlement. *In re BigLots*, 2018 WL 11356561, at *3–4. However, the question whether the parties can reasonably negotiate a settlement in light of the information produced during discovery is entirely separate from the question whether an award of attorneys' fees—meant to compensate counsel for their time—is reasonable. *See In re Wendy's Co. S'holder Deriv. Action*, 2021 WL 2000518, at *8 (S.D. Ohio May 19, 2021) ("Although an application for attorney fees will inevitably be considered in conjuncture with determining whether the settlement should be approved, attorney fees should not be the driving factor for approving (or disapproving) a settlement that benefits (or fails to benefit) the company.").

(citing *Ramey*, 508 F.2d at 1196 and *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006)) (noting that attorneys' fees awards must "accurately reflect the work of counsel"); *City of Plantation Police Officers' Empls. Ret. Sys. v. Jeffries*, 2014 WL 7404000, at *11 (S.D. Ohio Dec. 30, 2014) (awarding fees based on a 3x multiplier of counsel's lodestar amount, for a total of $1.6 million, following eight months of discovery).  Courts have frequently reduced fee awards in cases that settled at a relatively early stage of discovery to reflect the work actually performed.  *See, e.g.*, *In re Emerson Radio S'holder Deriv. Litig.*, 2011 WL 1135006, at *3–4 (citing, *inter alia*, *Aylor v. Lindsley*, 456 F.2d 896, 900 (2d Cir. 1972), and *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986)); *Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d at 1070–71; *cf. Seinfeld v. Coker*, 847 A.2d 330, 338 (Del. Ch. 2000) (awarding 10% of the fund after finding that the amount "more than offsets the opportunity costs of plaintiffs' counsel, the costs associated with the risks involved in bringing the suit, as well as an appropriate incentive premium.").

Indeed, Delaware law, which Ohio courts look to for guidance on issues of corporate law (including derivative litigation), supports an award between 10% and 15% of the common fund in cases settled at this stage.  *See, e.g.*, *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d at 1070–71 (quoting *Americas Mining Corp.*, 51 A.3d at 1259–60) (acknowledging that "[w]hen a case settles early, the Court of Chancery tends to award 10–15% of the monetary benefit conferred" but awarding between 22.7% and 24.5% because the case settled on the eve of trial); *see also In re Keithley Inst. Inc. Deriv. Litig.*, 599 F. Supp. 2d 875, 888 n.10 (N.D. Ohio 2008) ("Ohio courts routinely look to Delaware case law for guidance in deciding corporate law issues generally."); *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 151–52 (S.D. Ohio 1986) (reducing the fee award to 15% where "settlement was pursued early on," after counsel

8

reviewed a "vast array" of materials related to parallel litigation into the "heart and substance of their lawsuit").

While Plaintiffs' counsel is entitled to a reasonable fee in connection with the Settlement, these precedents make clear that Plaintiffs' Request for an award of nearly $50 million is excessive, and the SLC respectfully submits that Plaintiffs' award should be no greater than $24.3 million, 13.5% of the monetary value of the Settlement and representing approximately 1.7x the lodestar figure. *Cf. City of Plantation Police Officers' Empls. Ret. Sys*, 2014 WL 7404000, at *18 (noting that in cases with non-monetary settlements, courts have awarded fees based on a multiplier between 1.25 and 2.29 and collecting cases).[3]

## CONCLUSION

For the foregoing reasons, the SLC requests this Court to reduce any award of attorneys' fees to $24.3 million, representing approximately 13.5% of the monetary recovery to the Company as a result of the Settlement.

Respectfully Submitted,

*/s/ Susan Reagan Gittes*
Susan Reagan Gittes (admitted *Pro Hac Vice*)
Maeve O'Connor (admitted *Pro Hac Vice*)
John Gleeson (admitted *Pro Hac Vice*)
DEBEVOISE & PLIMPTON, LLP
919 Third Avenue
New York, New York 10022

---

[3] The SLC further notes that Plaintiffs' counsel has provided no information from which either the SLC or the court can determine how counsel allocated their time. *See City of Plantation Police Officers' Empls. Ret. Sys.*, 2014 WL 7404000, at *13 (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008)) (requiring documentation sufficient to "enable the court to determine with a high degree of certainty that [those] hours were actually and reasonably expended in the prosecution of the litigation."); *In re Alphabet, Inc. S'holder Deriv. Litig.*, Case No. 19-341522 (Sup. Ct. Cal. Nov. 30, 2020), reproduced at ECF No. 179 Ex. 25 (noting that counsel's submissions in support of a fee application were inadequate where those submissions included only a general declaration describing the time spent by each timekeeper, without any information as to task or category).

        Telephone:  212-909-6000
        Facsimile:   212-909-6836
        E-Mail:      mloconnor@debevoise.com
                      jgleeson@debevoise.com
                      srgittes@debevoise.com

Kerin Lyn Kaminski (0013522)
Karen L. Giffen (0042663)
Kathleen A. Nitschke (0073397)
GIFFEN & KAMINSKI, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone: 216-621-5161
Facsimile:  216-621-2399
E-Mail:      kkaminski@thinkgk.com
                  kgiffen@thinkgk.com
                  knitschke@thinkgk.com

***Counsel for the Special Litigation Committee of the Board of Directors of Nominal Defendant FirstEnergy Corp.***

10

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2022 a copy of the foregoing *Objection to Plaintiffs' Motion for Award of Attorneys' Fees* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to counsel of record for all parties as indicated on the electronic filing receipt.  Parties and their counsel may access this filing through the Court's system.

／s／ *Susan Reagan Gittes*
Susan Reagan Gittes (admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP

***Counsel for the Special Litigation Committee of the Board of Directors of Nominal Defendant FirstEnergy Corp.***