# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES E. JONES, et al.,<br><br>Defendants,<br><br>and<br><br>FIRSTENERGY CORP.,<br><br>Nominal Defendant. | Case No. 2:20-cv-04813<br><br>Chief Judge Algenon L. Marbley<br><br>Magistrate Judge Kimberly A. Jolson |

## MEMORANDUM OF LAW IN SUPPORT OF
## TODD AUGENBAUM'S MOTION FOR RECONSIDERATION

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

FACTS ................................................................................................................................... 2

ARGUMENT ......................................................................................................................... 4

    I.    THE NOTICE FAILED TO COMPLY WITH THE REQUIREMENTS OF DUE PROCESS ................................................................................................. 4

    II.    THE SETTLEMENT SHOULD NOT HAVE BEEN APPROVED BASED UPON THE FACTS IN THE RECORD AT THE TIME APPROVAL WAS GRANTED ........................................................................... 6

    III.    NEWLY REVEALED FACTS FURTHER DEMONSTRATE THAT THE SETTLEMENT SHOULD NOT HAVE BEEN APPROVED ..................... 9

        A.    The Court's Finding of Another Potential Major Recovery from the Terminated Executives is Inconsistent With Facts the SLC Recently Disclosed ............................................................................................ 9

        B.    The Parties' Failed to Inform This Court of Facts Relevant to the Claims Asserted Against Strah Released in the Settlement ...................... 10

    IV.    ANY ATTORNEYS' FEES AWARDED SHOULD BE REDUCED ................. 11

CONCLUSION ................................................................................................................... 12

i

Todd Augenbaum (also referred to herein as the "Objector"), by his undersigned counsel, respectfully submits this memorandum of law in support of his motion for reconsideration pursuant to Fed. R. Civ. P. 59(e) or in the alternative pursuant to Fed. R. Civ. P. 60(b).

## INTRODUCTION

The Order of Final Settlement Approval (the "Order") (ECF No. 195) previously entered by this Court should be vacated given facts first entered into the record in Plaintiffs' reply brief (ECF No. 186) concerning the more precise nature of the recovery purportedly achieved as well as other facts which have recently emerged from related proceedings in *In the Matter of the Ohio Edison Co., the Cleveland Electric Illuminating Co, and the Toledo Edison Co.'s Compliance With R.C. 4298.17 and the Ohio Admin. Code Chapter 4901:1-37*, Case No. 17-974-EL-UNC, before the Public Utility Commission of the State of Ohio (the "Ratepayer Case"), *In re FirstEnergy Corp. Securities Litigation*, Civil Action No. 2:20-cv-3785 (S.D. Ohio) (the "Securities Fraud Action" or "SFA"), a related securities fraud class action, and *Miller v. Anderson*, Case No. 3:20-CV-01743 (N.D. Ohio) (the "Northern District Action"). These facts call into question key factual premises supporting this Court's prior decision to approve the Settlement and also demonstrate that the notice of settlement (the "Notice") previously disseminated to shareholders of FirstEnergy Corp. ("FirstEnergy" or the "Company") failed to comply with the Due Process requirements of the U.S. Constitution, and even assuming *arguendo* that approval were warranted – despite the recently disclosed facts demonstrating that the Settlement should not have been approved – that this Court awarding $36 million in attorneys' fees to Plaintiffs' counsel was excessive given the nature and amount of the recovery purportedly achieved.

1

**FACTS**

On July 28, 2022, Plaintiffs disclosed for the first time in a footnote in their reply brief that the Settlement only includes "$72.28 million of insurance that would not have otherwise been available to FirstEnergy." ECF No. 186 at 10 n.6. Prior to that time, Plaintiffs and FirstEnergy failed to state either in the Notice or in their motion papers seeking approval of the Settlement that $107,715,952.64 of the recovery would be otherwise available to resolve other pending claims against the Company including those made in the Securities Fraud Action. *Id.*

On August 4, 2022, the Office of Ohio's Consumer Council ("OCC"), the legal representative of Ohio's residential customers, made a motion in the Ratepayer Action to issue a subpoena to be served on then FirstEnergy President and CEO Steven Strah ("Strah") to appear at a deposition. *See* Ex. A hereto. The OCC's motion, among other things, attached a copy of an April 19, 2019 email on which Strah was copied, discussing the decoupling provision of House Bill 6. *Id.* at FE_CIV_SEC_0203202-03 "The emails made public by the OCC reveal Strah as one of 'several other FirstEnergy Corp. executives' described, but not named, in a statement of facts that accompanied" the Deferred Prosecution Agreement (the "DPA"). Dave Anderson, *FirstEnergy CEO Steven Strah emailed about "under the radar" House Bill 6 provision that cost Ohio ratepayers millions of dollars* (Energy and Policy Institute Aug. 25, 2022) (attached as Ex. B hereto); *see also* Jeremy Pelzer, *FirstEnergy CEO Steven Strah abruptly retires as HB6-related management review ends* (Cleveland.com September 15, 2022).

On August 19, 2022, Magistrate Judge Jolson granted the motion made by Defendants Jones and Dowling in the Securities Fraud Action to compel FirstEnergy to produce one or more corporate representatives for a second Rule 30(b)(6) deposition while also ordering FirstEnergy to pay attorneys' fees associated with that motion to compel. See SFA ECF No. 333. Jones and

2

Dowling are seeking to demonstrate, among other things, that the $4.33 million payment to ex-Public Utility Commission Chair Sam Randazzo, identified in the DPA as a criminal act was, in fact, disclosed or discussed at a December 2018 Executive Council meeting. *See* SFA ECF No. 122 at p. 18/25; ECF No. 122-7 at p.7/8. The Executive Council consisted of FirstEnergy's most senior executives, including C-Suite executives and corporate vice presidents, such as Strah, who was FirstEnergy's CFO at the time of the relevant events and the CEO at the time the Settlement was approved by this Court. *See* Ex. D at 549/680 (FirstEnergy confirming Strah was on the Executive Council in 2018); Ex. E (quoting a FirstEnergy representative declining to answer whether Strah attended Executive Council meetings in 2018).

On September 8, 2022, Christine L. Walker ("Walker"), Senior Vice President and Chief Human Resources Officer of FirstEnergy submitted a declaration (the "Walker Declaration," attached as Ex. F hereto) in the Northern District Action in connection with the special litigation committee (the "SLC") opposing Mr. Augenbaum's motion to intervene. The accompanying SLC submission makes it clear that FirstEnergy (and the SLC) believe any claims for recovery of incentive compensation from Defendants Jones, Dowling and Chack (the "Terminated Executives") is limited by the Company's Executive Compensation Recoupment Policy (the "Recoupment Policy") and does *not* include any legal or equitable claim including those for the breach of fiduciary duty claims asserted in this action. *See* Northern District Action ECF No. 359 (attached as Ex. G hereto) at 5. Walker states that the Company has taken the position that any amounts payable to Defendants Jones and Chack pursuant to the FirstEnergy Amended and Restated Executive Deferred Compensation Plan (the "EDCP") will be set off against any claims the Company is making pursuant to the Recoupment Policy. Walker Decl. (Ex. F) ¶¶7 and 11. Walker, however, failed to quantify the amounts at issue under the EDCP or whether they are

3

included in the $56 million of incentive compensation previously reported to have been received by the Terminated Executives. Walker also states that "the Company has the option to pursue recovery" of the amounts due under the Recoupment Policy but fails to state whether any such action has been commenced (*id.* ¶¶8, 12) and states that a tolling agreement has been entered into with Dowling. *Id.* at ¶9.

On September 15, 2022, FirstEnergy filed a Form 8-K with the SEC (attached as Ex. H hereto) stating, *inter alia*, that:

> On September 15, 2022, Mr. Strah decided to retire, as the President and Chief Executive Officer of the Company, effective as of September 16, 2022. Mr. Strah also resigned from the Board on September 15, 2022, effective as of September 16, 2022, and the size of the Board was reduced from twelve to eleven directors.
>
> Mr. Strah will receive no severance payments or severance benefits. However, as is the case generally for executive officers who retire from the Company, Mr. Strah is eligible to receive certain retirement benefits, generally described in the Company's most recent definitive proxy statement filed with the Securities and Exchange Commission. These other retirement benefits generally include vested amounts and payments under the FirstEnergy Corp. Master Pension Plan and the FirstEnergy Corp. Amended and Restated Executive Deferred Compensation Plan, a prorated award for 2022 under the Company's Short-Term Incentive Program, certain prorated performance-based award payouts (based on actual performance) under the Company's Long-Term Incentive Program, and the value of Mr. Strah's unused banked and frozen vacation at the time of his retirement.

## ARGUMENT

### I. THE NOTICE FAILED TO COMPLY WITH DUE PROCESS REQUIREMENTS

The Federal Rules of Civil Procedure require that notice of a proposed settlement of a shareholder derivative action be provided to shareholders. *See* Fed. R. Civ. P. 23.1. That requirement is grounded in the Due Process clause of the U.S. Constitution. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); ECF No. 170 at 25 (preliminary approval motion acknowledging notice must satisfy the requirements of Rule 23.1 and the requirements of due process). The notice must provide shareholders with enough information to

4

permit them to make a rational decision whether to object or seek to intervene in the settlement-approval process. *See* Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d §1839 & n.14 (citing cases). Ordinarily great detail need not be provided if the information relevant to a proposed settlement's fairness is otherwise publicly and easily available. *See, e.g.*, *Int'l Union, UAW v. Gen. Motors Corp.,* 497 F.3d 615, 630 (6th Cir. 2007).

Here, however, the Notice failed that very easy and basic test by failing to disclose that the purported $180 million settlement consisted of "$72.28 million of insurance that would not have otherwise been available to FirstEnergy." ECF No. 186 at 10 n.6. This fact could not have been discovered by any FirstEnergy shareholder prior to its having been publicly disclosed for the first time by Plaintiffs in their July 28, 2022 filing with this Court. More importantly, describing the Settlement as being worth $180 million when its terms deprived FirstEnergy of more than $107 million in insurance coverage which would otherwise be available to (and certainly used by) the Company is materially misleading. This is particularly true since the Securities Fraud Action has survived a dismissal motion and presents the Company with potential liability of billions of dollars (*see* SFA ECF No. 72, ¶13) with FirstEnergy stating "that it is probable that it will incur a loss in connection with the resolution of" the Securities Fraud Action." *See* Ex. I at p.27.

The Notice also fails that very basic test of providing sufficient information by contending that "[t]he Settlement does not release any claims by the Company for recoupment of compensation from Defendants Jones, Dowling, or Chack, including such claims that the Company is pursuing or may pursue (which for avoidance of doubt Jones, Dowling, and Chack deny have any basis and reserve their right to oppose and defend against on any and all grounds available and to assert any related claims)." Notice at 13-14. This portion of the Notice is materially misleading because the SLC, in fact, is seeking to release the breach of fiduciary duty claims asserted by

5

Plaintiffs with prejudice and to confine any claims to those which the Company has the "option" to bring pursuant to its Recoupment Policy. The SLC's intent is further evidenced by the parties seeking to obtain a release of all the breach of fiduciary duty claims including those asserted against the Terminated Executives with prejudice. *See* Ex. J (joint motion to dismiss the Northern District Action with prejudice).

## II. THE SETTLEMENT SHOULD NOT HAVE BEEN APPROVED BASED UPON THE FACTS IN THE RECORD AT THE TIME APPROVAL WAS GRANTED

The first factor relied upon by the Court in approving the Settlement was a finding that there was no evidence of fraud or collusion. Order at 12-13. However, the belated disclosure that only $72.28 million of the $180 million settlement fund is attributable to insurance that would not otherwise have been available to FirstEnergy – especially when combined with the concerted effort to avoid the jurisdiction of the U.S. District Court for the Northern District of Ohio – calls that conclusion into question because the Company signing on to that materially misleading presentation of the relevant facts relates directly to the issue of attorneys' fees.

Indeed, it is well-recognized that a risk exists in shareholder derivative litigation that "the lawyers might urge a [] settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013) (citations omitted). Traditionally the problem arises from the over-valuation of the benefit of corporate governance reforms. *See*, *e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("Precisely because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund."). The same rationale supports extending the concept of collusion to exaggerating the purported monetary benefits of a proposed settlement where it is understood that the purported size of the monetary recovery serves as the basis for an attorney fee award.

Here, precisely such evidence of collusion exists with respect to claiming that the Settlement achieved a $180 million recovery given this Court's history in awarding fees based upon a percentage of the stated recovery. *See, e.g.*, ECF No. 179 at p.44 (recognizing a percentage of the fund approach is the preferred method for awarding attorneys' fees in the Sixth Circuit and citing *Rikos v. Proctor & Gamble Co.*, 2018 WL 2009681, at *8 (S.D. Ohio Apr. 30, 2018), quoting *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011), and *Rudi v. Wexner*, 2022 WL 1682297, at *4 (S.D. Ohio May 16, 2022)). Any questionable feature of the fee provision, including exaggerating the amount of the common fund recovery, requires greater scrutiny to ensure that it did not cause Plaintiffs' counsel to betray the interests of the representative party on whose behalf the claim was being pursued. *See, e.g.*, *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 949 (9th Cir. 2011).[1]

Plaintiffs' counsel, knowing that a large fee representing a very generous multiple to reported time is available, and without evidence of Plaintiffs exercising billing discretion concerning potential duplicate billing created by effectively having the same case pending in three separate jurisdictions, had every incentive to take the path of least resistance for the highest possible attorneys' fees rather than do the additional heavy lifting of pursuing disputed discovery issues and taking depositions. *See* Northern District Action ECF No. 274; *accord* ECF No. 195 at 14 (recognizing that "more discovery would have been desirable"). This includes, for example,

---

[1] The same is true with respect to each of the Plaintiffs seeking an incentive fee award of $10,000. *See* ECF No. 179 at 54-55I. Accepting such a preferential payment "provide[s] a *disincentive*" for Plaintiffs "to care about the adequacy of the relief afforded" and, instead, encouraged them "to compromise the interest of the class for personal gain." *Dry Max Pampers*, 724 F.3d at 722; *see also In re UnumProvident Corp. Deriv. Litig.*, 2010 WL 289179, at *10 (E.D. Tenn. Jan. 20, 2010) (disapproving incentive award to plaintiff in a shareholder derivative action because "the possibility of incentive awards could put named plaintiffs in a different position than the rest of the shareholders and could interfere with their ability to judge the settlement's fairness.").

7

looking the other way with respect to the release of claims against defendant Strah even as defendant Jones was pointing the finger at him in the Securities Fraud Action and the OCC was doing the same in the Ratepayer Case.

Similarly, although shareholder derivative actions are undoubtedly complex (*see* Order at 13), that does not mean that each aspect of the case is complex. Thus, for example, proving the facts related to Strah's knowledge or derogation of his duties as CFO – as Jones ironically seems to be attempting to do in the Securities Fraud Action and the OCC is doing in the Ratepayer Case – is not complex but, instead, within the wheelhouse of almost every lawyer litigating cases with disputed issues of fact. Learning the truth concerning the involvement of Strah and other former FirstEnergy officers and directors also implicates the public interest (*see* Order at 17) as well as FirstEnergy's interest in not having a CEO lead the Company who is directly implicated in the wrongful conduct at issue in this action.

The amount of discovery (Order at 13-14) is, therefore, plainly lacking, which could be explained by the prospect of a lucrative attorney fee award, which in this case amounted to $36 million, representing a 3.54 multiple of purported lodestar. Order at 18. That the SLC sought to limit the attorney fee award to $27 million (ECF No. 182) matters little given that also represents a very lucrative attorney fee award based upon a reported total lodestar of $11.36 million (ECF No. 179 at 51), again with apparently no effort to account for duplication of effort across multiple cases in three separate jurisdictions.

These are concerns that cannot be washed away through the presence of an independent mediator declaring that the mediation process was "hard fought." Order at 13 (quoting ECF No. 179-5 (Phillips Decl.) ¶12. Instead, the paragraph of the Phillips Declaration quoted by this Court is so vague and lacking in detail as to make it a mere boilerplate representation not entitled to any

8

meaningful weight. Indeed, a proposed settlement of a shareholder derivative action negotiated utilizing the very same mediator through a process that was also represented to have been "hard fought" was very recently rejected another U.S. District Court Judge as "inadequate." *See In re Altria Group, Inc. Deriv. Litig.*, 3:20-cv-00772 (DJN), Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Settlement (attached hereto as Ex. K) at 3-4; Order (Denying Motion for Preliminary Approval of Settlement) (attached hereto as Ex. L); and Minute Sheet (attached hereto as Ex. M).

### III. NEWLY REVEALED FACTS FURTHER DEMONSTRATE THAT THE SETTLEMENT SHOULD NOT HAVE BEEN APPROVED

The Ratepayer Case and the Securities Fraud Action both continue to be litigated with almost all the discovery being conducted outside of public view. However, even the limited discovery which has emerged through random motions to compel in those actions, as well as through filings in the Northern District Action, demonstrate that this Court was sold a bill of goods in the Settlement approval process which failed to reveal material facts relevant to the Court's analysis. Those facts demonstrate that the Settlement – which includes a broad release of claims – should not have been approved.

#### A. The Court's Finding of Another Potential Major Recovery from the Terminated Executives is Inconsistent With Facts the SLC Recently Disclosed

Counts II and III of the operative complaint sought to recover the Officer Defendants' compensation pursuant to the Company's well-pled equitable claims for breaches of fiduciary duties. *See* ECF No. 75 ¶¶312-22 & Prayer F (seeking disgorgement of all compensation all Defendants obtained from FirstEnergy). Jones and Dowling are "Officer Defendants" (*id*. ¶40.) while Chack is named as an Officer Defendant in the Northern District Action (*see* Northern

District Action ECF No. 75 at ¶¶35, 42) causing the Settlement to implicate claims brought against Chack as well.

This Court opined that, post-settlement, "a second major recovery source — the compensation paid to Defendants Jones, Dowling, and Chack — remains available for the Company to pursue via salary clawback claims." ECF No. 195 at 7. However, it is now clear based upon the Walker Declaration that the Company has no intention of pursuing any claims for breach of fiduciary duty against the Terminated Executives as the form of Order submitted to and entered by this Court with prejudice as to those claims demonstrates. *See* Ex. F. In addition, the Walker Declaration disclosed that the Company is foregoing those potential claims while limiting any potential recovery to the Recoupment Policy which the Company is seeking to offset against claims the Terminated Executives might have received pursuant to the EDCP. *Id.*

Also, left unsaid by the SLC (or the other parties) in prior submissions to the Court is that the claims are, in fact, *not* being actively pursued by the Company, with FirstEnergy only retaining the "option" to pursue the claims and seemingly only seeking the EDCP benefits. The amount of those EDCP benefits and whether those amounts were included in the $56 million of incentive compensation subject to disgorgement are unknown based upon the record the SLC (and Plaintiffs) have placed before this Court. In other words, it is highly doubtful that there will be any second major recovery from the Recoupment Policy claims which the Company may or may not pursue.

  **B.** **The Parties' Failed to Inform This Court of Facts Relevant to the Claims Asserted Against Strah Released in the Settlement**

Plaintiffs contended the release of claims as being justified because of the difficulty of proceeding with oversight claims, a position which this Court ultimately adopted. *See* ECF No. ECF No. 179 at 35, 39-40; Order at 14-15. The SLC remained silent on the issues limiting its objection to the amount of attorneys' fees sought by Plaintiffs' counsel. *See* ECF No. 182.

10

That analysis, however, was clearly flawed as it relates to the claims asserted against Strah, who was the Company's CFO at the time of the relevant wrongdoing. In addition, the emails very recently made public by the OCC in the Ratepayer Case are sufficiently damning to evidence Strah's knowledge of and participation in at least some of the same conduct which is the subject of the DPA. At the same time, Jones is pointing his finger directly at Strah and suggesting that Strah was informed of even more of the underlying conduct which is the subject of the DPA. Strah's abrupt decision to "retire" and the Company's decision not to make any severance payments to Strah further demonstrate Strah's culpability in this action.

Nonetheless, the Settlement effectively gives Strah a free pass. Thus, although Strah may have relinquished his rights to certain severance payments, he still gets to keep all his past incentive payments and not to have account for any damages his actions caused FirstEnergy. This despite the fact that the claims against Strah are ***not*** ones for oversight but, instead, ones for direct collusion in the wrongful conduct and do ***not*** involve "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." Order at 15 (quoting *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)).

### IV.   ANY ATTORNEY FEE AWARD SHOULD BE REDUCED

The net financial benefit to the Company from the Settlement as approved has not been shown – assuming *arguendo* that Plaintiffs' statement in their reply brief is sufficient to support any showing – to be any more than $72.28 million. This Court fixed 20% as a reasonable fee in this action. *See* ECF No. 195 at p. 25. As a result, the attorneys' fees should be reduced to $14,456,809.47 (20% of $72,284,047.36) rather than the $36 million previously awarded by this Court – a difference of more than $21,500,000.00 even assuming *arguendo* that this Court does not vacate its prior approval of the Settlement for all the reasons discussed above.

**CONCLUSION**

Therefore, this Court should reconsider and vacate its prior order approving the Settlement or, in the alternative, reconsider and reduce the amount of attorneys' fees to be paid to Plaintiffs' counsel.

Dated: September 20, 2022 /s/ *W.B. Markovits*
W. B. Markovits, Esq. (0018514)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, Ohio 45202
(513) 651-3700 – Telephone
(513) 665-0219 – Facsimile
E-mail: BMarkovits@msdlegal.com

Jeffrey S. Abraham (*pro hac vice* forthcoming)
Michael J. Klein (*pro hac vice* forthcoming)
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
450 Seventh Avenue, 38th Floor
New York, NY 10123
(212) 279-5050 – Telephone
(212) 279-3655 – Facsimile
E-mail: jabraham@aftlaw.com
E-mail: mklein@aftlaw.com

*Counsel for Todd Augenbaum*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 20, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/   *W.B. Markovits*
W. B. Markovits, Esq. (0018514)

13