IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, *et al.*, | : : : | |
| Plaintiffs, | : : | Case No. 2:20-cv-4813 |
| v. | : : : | Chief Judge Algenon L. Marbley |
| | : : | Magistrate Judge Kimberly A. Jolson |
| CHARLES E. JONES, *et al.*, | : : | |
| Defendants, | : : | |
| FIRSTENERGY CORP., | : : | |
| Nominal Defendant. | : | |

**OPINION & ORDER**

This matter is before the Court on Objector Todd Augenbaum's Motion for Reconsideration (ECF No. 197) of this Court's Order of Final Settlement Approval (ECF No. 195). For the reasons set forth herein, Augenbaum's Motion is **DENIED**.

**I.     BACKGROUND**

This Court provided an extensive background of this case in its August 23, 2022 Order (the "Order") granting final approval to the parties' settlement resolving the claims in this case. The Court thus recounts only those facts that are relevant to the instant motion. This is a shareholder derivative action seeking to hold current and former Directors and Officers of FirstEnergy Corporation ("FirstEnergy" or the "Company") accountable for their roles in orchestrating the "HB6 scandal"—a large bribery, racketeering, and pay-to-play scheme with Ohio politicians—at substantial cost to the Company's long-term interests. (ECF No. 75 ¶¶ 1–14).

On March 11, 2022, the parties in all the FirstEnergy derivative cases, including FirstEnergy's Special Litigation Committee (the "SLC"), filed a stipulation intended to serve as a

1

global settlement of the shareholder derivative cases (the "Settlement"). (ECF No. 186-1). The proposed Settlement resulted from the parties' lengthy mediation before retired United States District Judge Layn R. Phillips. (ECF No. 179 at 15). The proposed Settlement provided FirstEnergy a $180 million recovery funded by the Company's insurers and committed the Company to a series of internal governance reforms. (ECF No. 195 at 2). These reforms included the departure of six Directors, active Board oversight of FirstEnergy's political spending and lobbying activities, and specific disclosures in the annual proxy statements issued to shareholders. (*Id.* at 3).

The Court granted preliminary approval to the proposed Settlement on May 9, 2022, and directed the distribution of notice (the "Notice") to FirstEnergy shareholders. (ECF No. 176). This Court received two objections: one from Augenbaum and one from the SLC. (ECF Nos. 181, 182). Augenbaum challenged, *inter alia*, the Company's planned use of insurance policies to fund the proposed Settlement that would otherwise be available to defend or resolve other claims; the proposed Settlement's release of certain claims against Defendants Jones, Dowling, and Chack ("the terminated executives"); the alleged ambiguity of the proposed Settlement's release clause, which could be potentially interpreted to encompass potential claims against the auditors; and the proposed Settlement's "extraordinarily broad" release of unknown claims. (ECF No. 181).

On August 4, 2022, this court held a fairness hearing on the proposed Settlement (the "Settlement Fairness Hearing"). At the hearing, Augenbaum contested the extent to which the $180 million payout would indeed confer a benefit upon FirstEnergy. (ECF No. 194 at 82–87). This Court noted that, while Augenbaum appeared to disagree with the amount of the stipulated payment, the parties ably defended it. (*Id.* at 85:16–85:24). Augenbaum next argued that the Notice was inadequately transparent because it failed to contain information on "how much insurance in

2

total was potentially available, how much is being cashed out now, how much remains available." (*Id.* at 84:8–84:22). The Court responded that Augenbaum did not provide any authority for his assertion that the Notice should have included the insurance details. (*Id.* at 92:18–92:21). Augenbaum raised further concerns that the proposed Settlement did not release all claims held by the terminated executives. (*Id*. at 90:5–90:21). The Court additionally considered the SLC's concerns about the appropriate amount of attorney fees to be awarded in this case. (*Id*. at 95:15–95:24).

On August 23, 2022, this Court granted final approval of the Settlement. (ECF No. 195). The Order considered and dismissed Augenbaum's objections. Importantly, the Order also considered the SLC's request for lower attorneys' fees to "avoid generating a windfall from the sheer size of the settlement fund." (ECF No. 195 at 18–25). Consequently, this Court reduced attorneys' fees from Plaintiffs' requested figure of $48.6 million to $36 million. (*Id*. at 18, 30).

On September 20, 2022, Augenbaum filed the instant Motion. (ECF No. 197). The Motion is ripe for this Court's review.

## II.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration. *Doyle v. Pollit*, No. 2:08-CV-761, 2010 WL 658652, at *1 (S.D. Ohio Feb. 22, 2010) (citing *Rodriquez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)). Nonetheless, such motions are typically construed in the Sixth Circuit as either a Rule 59(e) motion to alter or amend judgment or as a Rule 60(b) motion for relief from judgment. *Peake v. First Nat'l Bank & Trust Co. of Marquette*, 717 F.2d 1016, 1019 (6th Cir. 1983).

Motions for reconsideration serve a limited function and are justified only when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct

3

a clear error or prevent manifest injustice. *Id.* Motions for reconsideration are "not intended to relitigate issues previously considered by the Court or to present evidence that could have been raised earlier." *Doyle*, 2010 WL 658652 at *1 (citing *J.P v. Taft*, No. C2-04-692, 2006 U.S Dist. LEXIS 14595, 2006 WL 689091, at *13 (S.D. Ohio Mar. 15, 2006)).

"[M]otions to alter or amend, or for reconsideration, are not intended as a mechanism for a plaintiff to relitigate issues previously considered and rejected, or to submit evidence which in the exercise of reasonable diligence could have been submitted earlier." *Kittle v. State,* No. 2:05-CV-1165, 2007 WL 543447, at *1 (S.D. Ohio Feb. 15, 2007) (Marbley, J.) (citing *Helton v. ACS Grp.,* 964 F. Supp. 1175, 1182 (E.D. Tenn. 1997)). Due to the importance of finality in the justice system, a motion to reconsider a final order should be granted only in extraordinary circumstances, such as a complete failure to address an issue or claim. *Solly v. Mausser,* No. 2:15-CV-956, 2016 WL 74986, at *1 (S.D. Ohio Jan. 7, 2016) (Marbley, J.). Further, it is not the function of a motion to reconsider to renew arguments that the Court has already considered and rejected. *See Lloyd v. City of Streetsboro*, No. 5:18-cv-73, 2018 WL 2985098, at *1 (N.D. Ohio June 14, 2018) (citing *McConocha v. Blue Cross & Blue Shield Mut. of Ohio,* 930 F. Supp. 1182, 1184 (N.D. Ohio 1996)).

### III.    LAW AND ANALYSIS

In his Motion for Reconsideration, Augenbaum asks this Court to reconsider its Order granting final approval of the Settlement. In the Settlement Fairness Hearing, this Court noted that it disfavors motions for reconsideration brought absent new precedent or the "misapplication of existing precedent." (ECF No. 194 at 91:2–91:18). Augenbaum nonetheless raises the following challenges to the Order: (1) the Notice failed to comply with due process requirements and contains evidence of fraud or collusion because it failed to disclose "that only $72.28 million of the $180 million related to insurance policies which uniquely covered the claims at issue in this action"; (2)

4

although this Court found that the Settlement retains valuable claims that could be brought against the terminated executives—despite releasing some claims—a new declaration in a related proceeding shows that the Company will not pursue recoupment from the terminated executives; (3) the Settlement improperly releases claims against Defendant Steven E. Strah[1], although newly-public emails show that Strah was culpable for some of the Company's alleged misdeeds; and (4) the attorneys' fee award should be reduced to 20% of the *actual* financial benefit conferred upon the Company by the Settlement—$72.28 million instead of the total $180 million.

### A. The Amount of the Settlement's Financial Benefit

Augenbaum's first and fourth objections question the financial benefit produced by the Settlement. Both of Augenbaum's arguments were already addressed by this Court. Augenbaum's first argument is that the Settlement was unfair (and the attorneys' fees unjustified) because FirstEnergy did not actually receive a $180 million benefit given the insurance allocation. His second argument is that the Notice did not comply with due process requirements because it failed to include adequate information about the insurance allocation.

Augenbaum does not present *new* evidence calling into question the Court's conclusions on either point. The Sixth Circuit explained that "newly discovered evidence" for the purposes of reconsideration is evidence that was previously *unavailable*. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Augenbaum nonetheless acknowledges in his reply brief that Plaintiffs disclosed, prior to the hearing, "that only $72.28 million of the $180 million related to insurance policies which uniquely covered the claims at issue in this action." (ECF No. 201 at 3). Augenbaum makes much of the fact that this information was only included in a footnote in Plaintiffs' reply brief submitted seven days before the hearing. But the slightest

---

[1] Defendant Strah is the former President and CEO of FirstEnergy. (ECF No. 75 at 17–18). He was the Company's CFO prior to that. (*Id*.).

5

amount of reasonable diligence would have revealed this information. The fact that Augenbaum did not exercise this diligence does not make the evidence "newly discovered." *See Gatlin v. Shoe Show, Inc.*, No. 3:14-CV-00446-TBR, 2014 WL 4727289, at *1 (W.D. Ky. Sept. 23, 2014) (explaining that a Rule 59(e) motion should not be "used as a vehicle for submitting evidence which in the exercise of reasonable diligence could have been submitted before.").

Augenbaum likewise fails to demonstrate that this Court's conclusions were clearly erroneous or manifestly unjust. Like this Court observed at the Settlement Fairness Hearing, Augenbaum provides no authority for the proposition that the Notice must contain more specific information about the insurance allocation. (ECF No. 194 at 92:18–92:21). This Court already considered Augenbaum's objections concerning the insurance allocation itself, noting that "[he] might have preferred a lesser amount with less coming from the insurance company and more coming from some of the directors or other individuals." (*Id.* at 84:8–84:14). This Court concludes once again that parties' counsel defended the Settlement ably, although "[Augenbaum] might not agree with the final number." (*Id.* at 85:16–85:24).

Augenbaum's objections concerning the insurance allocation underlying the Settlement are thus rejected. Because the validity of Augenbaum's objection to the attorneys' fees is dependent upon this Court's acceptance of his insurance allocation argument, that contention also fails.

### B. The Scope of the Settlement's Claims Release

Augenbaum's second and third objections concern the scope of the Settlement's claims release. Namely, Augenbaum argues that two pieces of new evidence show that the claims releases are insufficient consideration for the Settlement: (1) a declaration from FirstEnergy Senior Vice President Christine Walker (the "Walker Declaration") purportedly revealing that the Company will not pursue breach of fiduciary duty claims against the terminated executives despite having

6

negotiated for that option; and (2) an April 19, 2019 email thread purportedly demonstrating Defendant Strah's direct culpability in the Company's alleged wrongdoing. According to Augenbaum, the Walker Declaration shows that the claims retained by the Company lack the negotiated-for value because they are unlikely to be pursued. The email, Augenbaum contends, shows that the claims released against Defendant Strah are more valuable than previously believed because Strah's culpability is now more apparent.

Although this Court will assume that this evidence constitutes *newly discovered* evidence, there is more to the analysis. This Court can *consider* the evidence but dismiss it if the new evidence is "neither material nor controlling" and "would not have changed the final disposition of the case." *See Green v. BP Prod. of N. Am., Inc.*, 169 F. App'x 951, 960 (6th Cir. 2006). Neither piece of Augenbaum's proffered evidence undermines this Court's approval of the Settlement.

The Walker Declaration indicates that the Company has presently chosen to recoup compensation previously paid to Defendants Jones and Chack by using money otherwise payable under FirstEnergy's Executive Deferred Compensation Plan to offset recoupment debts owed to it. (ECF No. ¶¶ 7, 11). According to the Declaration, the Company entered into a tolling agreement with Defendant Dowling and retained the ability to evaluate claims for recoupment against him. (*Id.* ¶ 9). Contrary to Augenbaum's framing, the Declaration nowhere indicates that the Company waived its right to seek additional recovery by other means even if it has presently chosen *this* avenue. As such, the Declaration does not undermine this Court's finding that "a second major recovery source . . . remains available for the Company to pursue via salary clawback claims." (ECF No. 195 at 7). Further, this Court did not predicate its final approval of the Settlement upon the finding that the Company will *certainly* recover the compensation paid to Defendants Jones,

7

Dowling, and Chack. To the contrary, this Court explicitly noted that "[r]ecovery is not a certainty, as those Defendants deny liability." (*Id.*).

Augenbaum also submits emails purportedly indicating Defendant Strah's culpability in the Company's alleged misconduct. (ECF No. 197-2 at 22–23). As characterized by Augenbaum, the emails contain discussion from Defendant Strah concerning the fraudulent, "under the radar" decoupling provision of House Bill 6. (EFC No. 197-1 at 4). This provision allegedly "cost Ohio ratepayers millions of dollars." (*Id.*). Augenbaum does not contest parties' representations that these emails were already in the record; he instead argues that, as a non-party, *he* lacked access to the emails prior to the Order's issuance. Even if the emails were newly discovered evidence, Augenbaum has not shown that the information they contain undermines the Order. Augenbaum faces the significant challenge of showing that the emails are material and non-cumulative of the information contained in the 500,000 pages of discovery present in the record. In other words, Augenbaum must show that the parties' negotiations relied upon their ignorance of the possibility of Defendant Strah's direct culpability in the Company's alleged misdeeds. He fails to do so.

This Court has considered Augenbaum's arguments and found them inadequate to disturb its final approval of the Settlement. As such, Augenbaum's Motion is **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above, Objector Todd Augenbaum's Motion for Reconsideration (ECF No. 197) is **DENIED**.

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATED:  May 22, 2023**