**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed:  February 16, 2024

Mr. Jeffrey S. Abraham
Abraham, Fruchter & Twersky
450 Seventh Avenue
38th Floor
New York, NY 10123

Mr. David L. Axelrod
Ballard Spahr
1735 Market Street
51st Floor
Philadelphia, PA 19103-0000

Ms. Molly Judith Bowen
Cohen Milstein Sellers & Toll
1100 New York Avenue, N.W.
Suite 500
Washington, DC 20005

Mr. John C. Camillus
Law Offices
P.O. Box 141410
Columbus, OH 43214

Mr. Ralph Edward Cascarilla
Walter Haverfield
1500 W. Third Strett
Suite 300
Cleveland, OH 44114

Mr. Thomas Curry
Saxena White
824 N. Market Street, Suite 1003
Wilmington, DE 19801

Ms. Alexandra Victoria Dattilo
Walter Haverfield
1500 W. Third Strett
Suite 300
Cleveland, OH 44114

Ms. Lisa S. DelGrosso
Brouse McDowell
388 S. Main Street
Suite 500
Akron, OH 44311

Ms. Marjorie P. Duffy
Jones Day
325 John H. McConnell Boulevard
Suite 600
Columbus, OH 43215

Mr. Jeremy Dunnaback
BakerHostetler
127 Public Square
Suite 2000
Cleveland, OH 44114-3485

Mr. John C. Fairweather
Brouse McDowell
388 S. Main Street
Suite 500
Akron, OH 44311

Mr. John Arnold Favret III
Tucker Ellis
950 Main Avenue
Suite 1100
Cleveland, OH 44113

Ms. Susan Reagan Gittes
Debevoise & Plimpton
66 Hudson Boulevard
New York, NY 10001

Mr. John Gleeson
Debevoise & Plimpton
66 Hudson Boulevard
New York, NY 10001

Ms. Rachael L. Israel
BakerHostetler
127 Public Square
Suite 2000
Cleveland, OH 44114

Mr. Timothy D. Katsiff
Ballard Spahr
1735 Market Street
51st Floor
Philadelphia, PA 19103-0000

Mr. Michael B. Kimberly
McDermott, Will & Emery
500 N. Capitol Street, N.W.
Washington, DC 20001

Mr. Michael Jason Klein
Abraham, Fruchter & Twersky
450 Seventh Avenue
38th Floor
New York, NY 10123

Ms. Marcella L. Lape
Skadden, Arps, Slate, Meagher & Flom
155 N. Wacker Drive
Suite 2700
Suite 2700
Chicago, IL 60606

Mr. Wilbert Benjamin Markovits
Markovits, Stock & DeMarco
119 E. Court Street
Suite 530
Cincinnati, OH 45202

Mr. John F. McCaffrey
Tucker Ellis
950 Main Avenue
Suite 1100
Cleveland, OH 44113

Ms. Elanor A. Mulhern
Ballard Spahr
1735 Market Street, 51st Floor
Philadelphia, PA 19103-0000

Ms. Maeve O'Connor
Debevoise & Plimpton
66 Hudson Boulevard
New York, NY 10001

Ms. Carole S. Rendon
Mr. Douglas Lloyd Shively
Mr. Daniel R. Warren
BakerHostetler
127 Public Square
Suite 2000
Cleveland, OH 44114-3485

Mr. Geoffrey John Ritts
Jones Day
901 Lakeside Avenue, E.
Cleveland, OH 44114

Mr. Jeroen Van Kwawegen
Bernstein, Litowitz, Berger & Grossmann
1251 Avenue of the Americas
44th Floor
New York, NY 10020

                    Re:  Case No. 23-3512, *Empl Ret Sys of St. Louis, et al v. Charles Jones, et al*
                           Originating Case No. : 2:20-cv-04813

Dear Counsel,

    The Court issued the enclosed opinion today in this case.

    Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                                  Sincerely yours,

                                                  s/Cathryn Lovely
                                                  Opinions Deputy

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0066n.06

No. 23-3512

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS (20-cv-4813), ELECTRICAL WORKERS PENSION FUND, LOCAL 103, I.B.E.W. (20-cv-5128), and MASSACHUSETTS LABORERS PENSION FUND, (2:20-cv-5237), derivatively on behalf of FirstEnergy Corp.,<br><br>    Plaintiffs-Appellees,<br><br>TODD AUGENBAUM,<br><br>    Objector-Appellant,<br><br>v.<br><br>CHARLES E. JONES; et al.,<br><br>    Defendants-Appellees.<br><br>FIRSTENERGY CORPORATION,<br><br>    Nominal Defendant-Appellee. | **FILED**<br>Feb 16, 2024<br>KELLY L. STEPHENS, Clerk<br><br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO<br><br>OPINION |

Before: BATCHELDER, STRANCH, and DAVIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Shareholders of FirstEnergy Corporation filed this derivative action against current and former FirstEnergy executives to mitigate losses from the Company's role in the "HB6 Scandal," a bribery, racketeering, and pay-to-play scheme between FirstEnergy executives and Ohio politicians that, once exposed, cost the Company upwards of $1 billion in cumulative fallout. After the Plaintiffs defeated a motion to dismiss and completed substantial discovery, the parties reached a settlement agreement that secured shareholders a $180 million recovery and a series of corporate governance reforms. The district court notified

No. 23-3512, *Emps. Ret. Sys. of City of St. Louis v. Jones*

FirstEnergy shareholders of the proposed settlement, and one of those shareholders, Todd Augenbaum, timely objected. Over Augenbaum's objections, the district court approved the settlement and entered a final settlement order. Augenbaum now appeals the district court's entry of that order. For the reasons that follow, we AFFIRM.

## I. BACKGROUND

This consolidated derivative action stems from the "HB6 Scandal," a public corruption scheme through which FirstEnergy funneled approximately $60 million to Ohio public officials, including Ohio Speaker of the House Larry Householder, in exchange for those officials advancing and passing a favorable nuclear energy bill, House Bill 6, that bailed out Ohio nuclear energy companies like FirstEnergy. The scheme became public in July 2020 when the Department of Justice filed a criminal complaint against Householder and two FirstEnergy lobbyists in the U.S. District Court for the Southern District of Ohio.

One year later, in July 2021, the Government entered a deferred prosecution agreement with FirstEnergy. Under the terms of the agreement, FirstEnergy acknowledged that its executives "conspired with public officials and other individuals and entities to pay millions of dollars to and for the benefit of public officials in exchange for specific official action for FirstEnergy Corp.'s benefit," and agreed "to pay a criminal monetary penalty totaling $230,000,000."

This $230 million fine, coupled with the $60 million FirstEnergy disbursed in bribes, $100 it million paid in compensation to culpable executives, and $37.5 million it spent to settle a separate class action lawsuit, amounted to "at least $427.5 million in measurable direct costs," on top of which FirstEnergy incurred "other indeterminate damages, such as reputational harm, ongoing defense costs, and prospective liabilities in the remaining class actions and regulatory investigations," all of which likely pushed "the total harm over $1 billion." The Company's stock

No. 23-3512, *Emps. Ret. Sys. of City of St. Louis v. Jones*

price also fell 45% after the Householder prosecution was announced, "eliminating billions of dollars of shareholder value."

In response to the Householder indictment and FirstEnergy's accompanying financial losses, FirstEnergy shareholders filed a series of derivative actions against the Company's executives. The first two lawsuits were brought in Ohio state court in July 2020. A federal derivative action was subsequently filed in the Northern District of Ohio in August 2020. Ten more derivative actions, which underlie this appeal, followed in the Southern District of Ohio. Three of those suits were voluntarily dismissed, and the district court consolidated the remaining seven into this case.

On January 25, 2021, the Plaintiffs filed a consolidated verified shareholder derivative complaint. The Defendants moved to dismiss the complaint, and the district court denied the motion. Discovery opened on June 14, 2021, and continued until the parties reached a proposed settlement agreement (the "Settlement Agreement") on March 11, 2022.

The Settlement Agreement requires FirstEnergy to "obtain a $180 million recovery funded by the Company's insurers" and to implement "a series of internal governance reforms, crafted with the assistance of Columbia Law Professor and corporate governance expert Jeffrey Gordon." The "reforms include the departure of six Directors, active Board oversight of FirstEnergy's political spending and lobbying activities, and specific disclosures in the annual proxy statements issued to shareholders." Professor Gordon submitted a declaration explaining that these reforms would "significantly improve shareholder welfare at FirstEnergy" because they would "significantly reduce the likelihood of a recurrence of the corrupt conduct identified in the criminal proceedings." The Agreement also requested $48.6 million in attorney's fees.

-3-

No. 23-3512, *Emps. Ret. Sys. of City of St. Louis v. Jones*

The district court granted preliminary approval of the Settlement Agreement on May 9, 2022, and directed the parties to notify FirstEnergy shareholders of the proposal. FirstEnergy filed the agreed upon notice (the "Notice") with the Securities and Exchange Commission in its Form 8-K, published a summary notice, and posted the Notice to its investor relations webpage. One shareholder, Augenbaum, who owns 200 FirstEnergy shares or 0.000035% of the company, timely objected to the Agreement. The Company's Shareholder Litigation Committee also objected to the amount of requested attorney's fees. The court heard these objections at a fairness hearing on August 4, 2022.

On August 23, 2022, the district court approved the Settlement Agreement over Augenbaum's objections and entered an order of final settlement approval. It revised the attorney's fee award, however, reducing it from the requested $48.6 million to $36 million. Augenbaum filed a motion for reconsideration, which the court denied, and then this appeal.

## II. ANALYSIS

The scope of this appeal is limited to Augenbaum's objections to the district court's final settlement approval and attorney's fees award. Augenbaum argues that (1) FirstEnergy's shareholders were provided inadequate notice of the settlement; (2) settlement approval was improper in the first instance because the parties both colluded and conducted inadequate discovery; (3) subsequent developments undermined the settlement's validity; (4) the Settlement Agreement required approval from the U.S. District Court for the Northern District of Ohio; and (5) the district court awarded excessive attorney's fees. The district court's management of the settlement and accompanying attorney's fee award are reviewed under an abuse of discretion

-4-

No. 23-3512, *Emps. Ret. Sys. of City of St. Louis v. Jones*

standard. *See Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 294 (6th Cir. 2016).

### A. Forfeiture

As a preliminary matter, Appellees explain that we need not reach the merits of Augenbaum's appellate arguments because they are forfeited. An appellant forfeits arguments raised for the first time in a motion for reconsideration or on appeal. *Evanston Ins. Co. v. Cogswell Properties, LLC*, 683 F.3d 684, 692 (6th Cir. 2012); *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022). A forfeited claim in a civil case may be considered on appeal only "in 'exceptional' circumstances or when a 'plain miscarriage of justice' would otherwise result." *Bannister*, 49 F.4th at 1011 (quoting *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 445 (6th Cir. 2021)); *see Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996).

At the fairness hearing stage in the district court, Augenbaum filed five objections to the Settlement Agreement. He claimed that the Agreement (1) unnecessarily released "potentially valuable claims against" third parties; (2) failed to articulate FirstEnergy's expected liabilities in collateral litigation and the amount of insurance coverage that would be left available to satisfy those liabilities; (3) left $40 million of insurance coverage "on the table" by accepting a $180 million settlement despite the Company's $220 million insurance policy; (4) released certain FirstEnergy executives from individual liability without requiring those individuals to release the Company from reciprocal liability for their termination; and (5) unreasonably released additional unknown claims of untold value. *See* R. 181, Augenbaum Objections, PageID 4025-34. The district court rejected each of these objections in its order of final settlement approval.

After the district court approved the Settlement Agreement, Augenbaum moved for reconsideration. His motion contended that the district court had erred because (1) the Notice

Case: 2:20-cv-04813-ALM-KAJ Doc #: 210 Filed: 02/16/24 Page: 10 of 19 PAGEID #: 6173

No. 23-3512, *Emps. Ret. Sys. of City of St. Louis v. Jones*

failed to provide due process; (2) the Settlement Agreement should not have been approved in the first instance given evidence of collusion and inadequate discovery; (3) subsequent developments undermined the court's assessment of the Agreement; and (4) the attorney's fee award was excessive. *See* R. 197-1, Mem. in Support of Mot. for Reconsideration, PageID 5093-5100.

As set out above, Augenbaum's appellate arguments are that the Settlement Agreement (1) provided inadequate notice (raised for the first time in the motion for reconsideration); (2) suffered from collusion and inadequate discovery (raised for the first time in the motion for reconsideration); (3) was undermined by subsequent developments (raised for the first time in the motion for reconsideration); (4) requires approval from the U.S. District Court for the Northern District of Ohio (raised for the first time on appeal); and (5) awarded excessive attorney's fees (raised for the first time in the motion for reconsideration).

Augenbaum asserts that he could not have raised these objections earlier because their factual basis emerged "for the first time in" the Plaintiffs' "reply brief in support of settlement approval" when the Plaintiffs disclosed that "only $72.28 million of the $180 million settlement fund" was "attributable to insurance that would not otherwise have been available to FirstEnergy." The district court found, however, that Augenbaum could have discovered this fact himself through "the slightest amount of reasonable diligence." Augenbaum provides us with no reason to believe that finding was erroneous.

All told, Augenbaum forfeited each of his appellate arguments by raising them for the first time in his motion for reconsideration or on appeal and has provided no justification for entertaining them despite the forfeiture. We can affirm the district court on that basis alone. For the sake of completeness, however, and because the district court considered the merits of

No. 23-3512, *Emps. Ret. Sys. of City of St. Louis v. Jones*

Augenbaum's arguments at the motion for reconsideration stage, we will also briefly address the substance of his objections.

### B. Notice

Starting with the first step of the settlement approval process, Augenbaum objects to the Notice that was distributed to FirstEnergy shareholders. The parties to a proposed settlement agreement in a shareholder derivative action must distribute a reasonable notice to all shareholders "'who would be bound' by the settlement." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)(1)(B)). "The notice should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Augenbaum's main objection to the Notice is that it did not "disclose that the purported $180 million settlement only consisted of '$72.28 million of insurance that would not have otherwise been available to FirstEnergy.'" The Notice did explain, however, that the monetary component of the Settlement Agreement would be paid by the Defendants' "insurers," R. 170-3, Mot. for Approval of Settl., PageID 2580, and the district court found that Augenbaum could have discovered the insurance allocation through "the slightest amount of reasonable diligence." Shareholders like Augenbaum thus had ample notice and opportunity to assess FirstEnergy's funding mechanism and raise any corresponding objections.

Augenbaum also argues that the Notice's description of the Settlement Agreement's claims release was deceptive. The Notice represented that the Agreement would "not release any claims by the Company for recoupment of compensation" against former FirstEnergy executives Charles Jones, Michael Dowling, and Dennis Chack, "including such claims that the Company is pursuing

-7-

No. 23-3512, *Emps. Ret. Sys. of City of St. Louis v. Jones*

or may pursue against" them. Augenbaum contends that the Plaintiffs intend to "confine" their recoupment claims "to those made pursuant to the Recoupment Policy" while releasing their breach of fiduciary duty claims in the Northern District, an approach he believes contradicts the Notice. His suspicion is based on the declaration of FirstEnergy Senior Vice President and Chief Human Resources Officer Christine L. Walker. Augenbaum views the declaration as evidence that the Company plans to limit its "efforts to claw back compensation paid to" Jones, Dowling, and Chack to offsets "under the Company's Executive Compensation Recoupment Policy." Walker Decl. ¶ 4, *Miller v. FirstEnergy Corp.*, 20-cv-01743 (N.D. Ohio Sept. 8, 2022), ECF No. 359-1.

Contrary to Augenbaum's fears, the Company is actively pursuing recoupment. It has offset payments otherwise due to Jones and Chack under the Company's Executive Deferred Compensation Plan, and it has entered a tolling agreement with Dowling that preserves its ability to evaluate recoupment claims against him. Walker Decl. ¶¶ 7-12, *Miller*, 20-cv-01743. The declaration contains no suggestion that the Company intends to abandon these efforts or to forgo supplementing them through other avenues should they prove inadequate. The breach of fiduciary duty claims the Plaintiffs dismissed in the Northern District are, moreover, separate and distinct from the recoupment claims referenced in the Notice. The Company's recoupment efforts are therefore consistent with both the Settlement Agreement and the Notice.

Because the Notice accurately described the Settlement Agreement's funding mechanism and the nature of the claims the Agreement would release, Augenbaum has not shown that the district court abused its discretion in approving it.

-8-

No. 23-3512, *Emps. Ret. Sys. of City of St. Louis v. Jones*

### C. Settlement Approval

Moving to the substance of the Settlement Agreement itself, Augenbaum asserts that the district court abused its discretion in approving the Agreement in the first instance. A final settlement agreement must be "reasonable, fair and adequate." *In re Wendy's Co. S'holder Derivative Action*, 44 F.4th 527, 536 (6th Cir. 2022) (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). Various factors inform whether these requirements are met, including: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties;" (4) the plaintiffs' "likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. Augenbaum contends that the first and third factors, the risk of collusion and the sufficiency of discovery, invalidate the Settlement Agreement.

Augenbaum's principal objection—and the core of his appellate arguments—is that the value of the settlement is overstated because although it purports to secure a $180 million return for investors, "only $72.28 million of the $180 million settlement fund" would "not otherwise have been available to FirstEnergy" as insurance against other claims. The value of this action is, in Augenbaum's view, capped at the $72.28 million FirstEnergy could not otherwise have recovered. Characterizing its value as $180 million, he believes, is so misleading that it amounts to "evidence of collusion" between the parties.

Augenbaum's argument seems to be that when a collection of insurance claims exceeds the insured's total coverage amount, the real value of each claim must be understood as its pro rata share of the total policy. Presumably, although Augenbaum does not explain the finer points, the policy value would be allocated across claims in a manner that adjusts for the total potential value,

No. 23-3512, *Emps. Ret. Sys. of City of St. Louis v. Jones*

likelihood of success, and cost of recovery for each claim and that is agnostic to the timing of claim recovery throughout a coverage period. But Augenbaum offers no authority for the proposition that such a method should be applied to shareholder derivative actions, supplies no proposal for how such a formula would operate here, and, critically, fails to explain why such a mechanism is necessary to accurately measure the value of a settlement from a shareholder standpoint.

At bottom, shareholder derivative actions are fiduciary ventures, brought "to enforce a right of a corporation," *Owen v. Mod. Diversified Indus.*, Inc., 643 F.2d 441, 444 (6th Cir. 1981) (quoting Fed. R. Civ. P. 23.1), and shareholders have a legitimate interest in taking a "bird in the hand instead of a prospective flock in the bush," *UAW v. Gen. Motors Corp.*, No. 07-CV-14074-DT, 2008 WL 2968408, at *25 (E.D. Mich. July 31, 2008) (abrogated on other grounds) (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)). As the district court explained, an "insurance policy is a wasting asset subject to erosion by ongoing defense costs," and settling provides certain, immediate returns that cannot be guaranteed by proceeding to trial or by relying on the speculative prospect of recovery in other litigation. The Settlement Agreement may deplete the potential of ancillary claims to draw down against the same policy, but it nonetheless delivers a real, guaranteed return for FirstEnergy shareholders. The district court did not abuse its discretion in assessing the benefit of the settlement at $180 million and the parties' characterization of it as providing $180 million in value is not circumstantial evidence of collusion.

Augenbaum also contends that the parties cut short discovery that could have bolstered claims against the individual defendants and produced more serious consequences for the implicated executives. The district court's summary of the discovery taken in this case catalogued that "Plaintiffs served 10 sets of discovery requests, with 32 sets of responses and objections; obtained over 500,000 pages of document discovery, including all documents produced to the DOJ

-10-

No. 23-3512, *Emps. Ret. Sys. of City of St. Louis v. Jones*

and SEC; and subpoenaed 11 third parties." It acknowledged that the Plaintiffs had taken no depositions and that "more discovery would have been desirable," but concluded that the "document discovery" enabled the Plaintiffs to weigh "the strengths and weaknesses of their case" against the "tradeoff of rising litigation costs and depletion of recoverable insurance."

Augenbaum counters that additional discovery would have served "the public interest" by exposing the culpability of individual executives and would have benefitted the company by determining the extent to which its executives engaged in "wrongful conduct." But shareholder derivative actions serve fiduciary, not public, interests. *Owen*, 643 F.2d at 444. And Augenbaum identifies no evidence that would have been revealed to shareholders through depositions that had not already been uncovered through document discovery. The Plaintiffs had no duty to exhaust every possible source of discovery without regard to litigation expense on the theory that continued discovery could theoretically yield new, material evidence. The district court properly accorded only "modest" weight to this factor, and did not abuse its discretion in concluding that the parties conducted sufficient discovery to make an informed settlement decision that served their fiduciary interests.

### D. New Evidence

Augenbaum argues next that even if the initial approval was valid, two subsequent developments have since undermined it. He contends first that the Plaintiffs' dismissal with prejudice in the Northern District undermines the premise relied upon by the district court that "a second major recovery source—the compensation paid to Defendants Jones, Dowling, and Chack—remains available for the Company to pursue via salary clawback claims." As discussed, however, the Company *is* pursuing salary clawbacks under the Recoupment Policy and has retained its ability to do so through other mechanisms. This is consistent with the district court's

-11-

No. 23-3512, *Emps. Ret. Sys. of City of St. Louis v. Jones*

expectations and the assumptions underlying the Agreement, which did not state the specific forum or sequencing through which the Company would pursue recoupment.

Augenbaum asserts second that newly discovered emails incriminating former FirstEnergy CFO and CEO Steven E. Strah are so "damning" that the district court's previous characterization of the Plaintiffs' claims as difficult to prove can no longer stand. The emails Augenbaum identifies may be new to him, but the district court explained that they "were already in the record" and available to the parties at the time of the settlement. Augenbaum does not dispute this and, as the district court emphasized, does not show how they "are material and non-cumulative of the information contained in the 500,000 pages of discovery present in the record."

Augenbaum has not identified any new development that undermines the Settlement Agreement.

### E. The Northern District of Ohio Action

As a final attack on the settlement order, Augenbaum contends that because the first shareholder derivative action against FirstEnergy was filed and actively litigated in the Northern District of Ohio, Federal Rule of Civil Procedure 23.1(c) and the "first-to-file" doctrine "required that the action be presented" to the Northern District for approval.

Under the first-to-file principle, "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should *generally* proceed to judgment." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (internal quotation marks omitted) (quoting *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001)). The rule is a "well-established doctrine that encourages comity among federal courts of equal rank." *Id.* (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004)). It "is not a strict rule,"

No. 23-3512, *Emps. Ret. Sys. of City of St. Louis v. Jones*

however, and "district courts have the discretion to dispense with" it "where equity so demands." *Id.* (first quoting *AmSouth Bank*, 386 F.3d at 791 n.8; and then quoting *Zide Sport Shop*, 16 F. App'x at 437).

The district court acknowledged that the first federal derivative shareholder action was filed in the Northern District, but exercised jurisdiction over the consolidated suit all the same. It identified numerous reasons for litigating the suit in the Southern District: the court was already managing the seven consolidated cases; the Southern District was the forum for both a related class action suit against FirstEnergy and the criminal prosecution of Householder; the Northern District case was not destined to completely resolve the Southern District claims given the more extensive complaint filed in the Southern District; appearing in the Southern District imposed no identifiable hardship on the Defendants; the Northern District plaintiff would have transferred that case to the Southern District but for the Defendants' objection; and the court saw no indicia of improper forum shopping.

Augenbaum provides no basis for concluding that the district court abused its discretion in declining to stay the Southern District litigation under the ordinary first-to-file doctrine, and identifies no authority suggesting that a shareholder derivative settlement reached in one district requires approval in every other district hosting concurrent litigation, particularly when no other plaintiff has objected, nor does he offer any reason to believe the first-to-file rule is mandatory in shareholder derivative actions. As a result, Augenbaum has failed to show that the existence of the Northern District action undermines the validity of the Southern District settlement.[1]

---

[1] The district court's proper exercise of jurisdiction over the consolidated cases before it dispels Augenbaum's unsupported argument that the existence of ongoing litigation in a second district warrants reviewing the decision of the district court here de novo.

-13-

No. 23-3512, *Emps. Ret. Sys. of City of St. Louis v. Jones*

### F. Attorney's Fees

Augenbaum closes by arguing that even if the district court properly approved the Settlement Agreement, it improperly awarded excessive attorney's fees. As part of the initial settlement proposal, the Plaintiffs sought $48.6 million in fees and expenses, or 27% of the $180 million recovery. The Defendants countered that no more than $24.3 million, 13.5% of the fund, should be awarded. The district court arrived at the middle ground of $36 million, or 20%.

On appeal, Augenbaum does not object to the district court's 20% multiplier but argues that the court should have applied it to what he contends is the settlement's real value: $72.28 million. This would produce a fee award of $14.5 million. We have already rejected Augenbaum's characterization of the settlement value, however, concluding that the district court acted within its discretion in assessing the value at $180 million. Given that Augenbaum does not dispute the 20% multiplier, the attorney's fee award was an equally proper exercise of discretion.

### III. CONCLUSION

For the reasons discussed above, Augenbaum's objections are forfeited and without merit. The judgment of the district court is **AFFIRMED.**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-3512

EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS (20-cv-4813), ELECTRICAL WORKERS PENSION FUND, LOCAL 103, I.B.E.W. (20-cv-5128), and MASSACHUSETTS LABORERS PENSION FUND, (20-cv-5237), derivatively on behalf of FirstEnergy Corp.,

    Plaintiffs - Appellees,

TODD AUGENBAUM,

    Objector - Appellant,

v.

CHARLES E. JONES, et al.,

    Defendants - Appellees,

FIRSTENERGY CORPORATION,

    Nominal Defendant - Appellee.

**FILED**
Feb 16, 2024
KELLY L. STEPHENS, Clerk

Before:  BATCHELDER, STRANCH, and DAVIS, Circuit Judges.

## JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

    THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

    IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

                                **ENTERED BY ORDER OF THE COURT**

                                    Kelly L. Stephens, Clerk